UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

PETER B. MAPES,                                   )
                                                  )
                                                  )
                 Plaintiff,                       )
                                                  )        Civil Action No. 1:20-cv-00223-JEB
         v.                                       )
                                                  )
SENATOR JACK REED, *et al.*,                      )
                                                  )
                 Defendants.                      )
_____         )

**DEFENDANT SENATOR JACK REED'S MOTION TO DISMISS**

Defendant Senator Jack Reed, through undersigned counsel, hereby respectfully moves

the Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss

Plaintiff's Complaint against him.  In support of the motion, Defendant Senator Reed respectfully

refers the Court to the accompanying Memorandum of Points and Authorities.

Respectfully submitted,

 /s/ Patricia Mack Bryan
Patricia Mack Bryan, Bar #335463
Senate Legal Counsel

Morgan J. Frankel, Bar #342022
Deputy Senate Legal Counsel

Grant R. Vinik, Bar #459848
Assistant Senate Legal Counsel

Thomas E. Caballero
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250

(202) 224-4435 (tel)
(202) 224-3391 (fax)

Dated: March 13, 2020                    Attorneys for Defendant Senator Jack Reed

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

|  |  |
|---|---|
| PETER B. MAPES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 1:20-cv-00223-JEB |
| v. | ) |
| | ) |
| SENATOR JACK REED, *et al.*, | ) |
| | ) |
| Defendants. | ) |

---

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SENATOR JACK REED'S MOTION TO DISMISS

Patricia Mack Bryan, Bar #335463
Senate Legal Counsel

Morgan J. Frankel, Bar #342022
Deputy Senate Legal Counsel

Grant R. Vinik, Bar #459848
Assistant Senate Legal Counsel

Thomas E. Caballero
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250

(202) 224-4435 (tel)
(202) 224-3391 (fax)

Dated: March 13, 2020                Attorneys for Defendant Senator Jack Reed

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     A.    National Commission on Military Aviation Safety . . . . . . . . . . . . . . . . . . . . . . . . 2

     B.    Plaintiff's Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.     THE COURT LACKS JURISDICTION OVER PLAINTIFF'S SUIT
       AGAINST SENATOR REED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     A.    Plaintiff's Suit Is Precluded By The Civil Service Reform Act . . . . . . . . . . . . . . 6

     B.    Senator Reed Is Protected From Plaintiff's Suit By Sovereign
          Immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     C.    Plaintiff Lacks Standing To Bring His Claim Against Senator Reed
          As His Injury Cannot Be Redressed Against The Senator . . . . . . . . . . . . . . . . . . 14

II.    PLAINTIFF FAILS TO STATE A CLAIM AS SENATOR REED HAS
      UNRESTRICTED AUTHORITY TO REMOVE PLAINTIFF FROM THE
      COMMISSION AND THAT REMOVAL DID NOT VIOLATE NDAA § 1087 . . . . . . 16

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

**Cases**

*Am. Federation of Gov't Employees v. Secretary of the Air Force*, 841 F. Supp. 2d
    233 (D.D.C. 2012), *aff'd*, 716 F.3d 633 (D.C. Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Am. Road and Transp. Builders Ass'n v. Environmental Protection Agency*,
    865 F. Supp. 2d 72 (D.D.C. 2012), *aff'd*, No. 12-5244, 2013 WL 599474
    (D.C. Cir. Jan. 28, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Barth v. United States,* 737 F. App'x 540 (Fed. Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Buckley v. Valeo*, 424 U.S. 1 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23

*Carlucci v. Doe*, 488 U.S. 93 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Davis v. Billington*, 681 F.3d 377 (D.C. Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Dotson v. Griesa*, 398 F.3d 156 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ekwem v. Fenty*, 666 F. Supp. 2d 71 (D.D.C. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

\* *Elgin v. Department of the Treasury*, 567 U.S. 1 (2012) . . . . . . . . . . . . . . . . . 6, 7, 9, 10

*FDIC v. Meyer*, 510 U.S. 471 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

\* *Filebark v. U.S. Department of Transportation*, 555 F.3d 1009 (D.C. Cir. 2009) . . . . . 7, 8, 10, 11

*Fisher v. United States*, 402 F.3d 1167 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Fornaro v. James*, 416 F.3d 63 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010). . . . . . . . . 16

*Graham v. Ashcroft,* 358 F.3d 931 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 10

\* *Grosdidier v. Chairman, Broadcasting Bd. of Governors,* 560 F.3d 495
    (D.C. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 10

*Hall v. Ford*, 856 F.2d 255 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Hearst v. Black*, 87 F.2d 68 (D.C. Cir. 1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Humphrey's Executor v. United States*, 295 U.S. 602 (1935) . . . . . . . . . . . . . . . . . . . . . . . . 19

*Ivey v. Fenty*, 789 F. Supp. 2d 65 (D.D.C. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Johnson v. Peterson,* 996 F.2d 397 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Kalaris v. Donovan*, 697 F.2d 376 (D.C. Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 28

*Keener v. Congress*, 467 F.2d 952 (5th Cir. 1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kentucky v. Graham*, 473 U.S. 159 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lacson v. U.S. Department of Homeland Security*, 726 F.3d 170 (D.C. Cir. 2013). . . . . . . . . . . . 8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Maarawi v. U.S. Congress*, 24 F. App'x 43 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*McKoy v. Spencer*, 271 F. Supp. 3d 25 (D.D.C. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*McLean v. United States*, 566 F.3d 391 (4th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mills v. District of Columbia Dept. of Mental Health, St. Elizabeth's Hosp. Managers*, 756 F. Supp. 2d 55 (D.D.C. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475 (1866) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Myers v. United States*, 272 U.S. 52 (1926) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

* *Nyunt v. Chairman, Broadcasting Bd. of Governors*, 589 F.3d 445 (D.C. Cir. 2009) . . . . . 6, 7, 10

*Orr v. IDAWY*, No. 4:11-CV-150, 2012 WL 1454988 (D. Idaho Apr. 26, 2012) . . . . . . . . . . . 13

*Parsons v. United States*, 167 U.S. 324 (1897) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Payne v. Meeks*, 200 F. Supp. 2d 200 (E.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Price v. Panetta*, 674 F.3d 1335 (Fed. Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Randall v. United States*, 95 F.3d 339 (4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Rivera v. United States*, 924 F.2d 948 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Rockefeller v. Bingaman*, 234 F. App'x 852 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Rodriguez v. District of Columbia*, 118 F. Supp. 3d 132 (D.D.C. 2015) . . . . . . . . . . . . . . . . . . 24

*Saints v. Winter*, No. 05-CV-0806, 2007 WL 2481514 (S.D. Cal. Aug. 29, 2007) . . . . . . . . . . 13

*Saunders v. District of Columbia,* 711 F. Supp. 2d 42 (D.D.C. 2010) . . . . . . . . . . . . . . . . . . . . 25

*Semper v. United States*, 694 F.3d 90 (Fed. Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15, 16, 22

*Tapp v. Washington Metro. Area Transit Auth.*, 306 F. Supp. 3d 383 (D.D.C. 2016) . . . . . . . . 24

*United States v. Bormes*, 568 U.S. 6 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

* *United States v. Fausto,* 484 U.S. 439 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 10

*United States v. Sherwood*, 312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. White Mountain Apache Tribe*, 537 U.S. 465 (2003) . . . . . . . . . . . . . . . . . . . . 14

*Wiener v. United States*, 357 U.S. 349 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 19, 20, 21, 22


**Constitution and Federal Statutes**

U.S. Const. art. II, § 2, cl. 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Civil Service Reform Act of 1978, Pub. L. No. 95-454, as amended,
    codified at 5 U.S.C. §§ 1101 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Congressional Accountability Act of 1995, 2 U.S.C. § 1413 . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

* John S. McCain National Defense Authorization Act for Fiscal Year 2019,
    Pub. L. No. 115-232, Div. A, Title X, Subtitle F, § 1087,
    132 Stat. 1636, 1992-96 (2018) ["NDAA § 1087"]
        § 1087(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        § 1087(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 4, 15, 17, 21
        § 1087(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 23

National Defense Authorization Act for Fiscal Year 2020, Pub. L. No. 116-92,
    Div. A, Title XVII, Subtitle B, § 1738, 133 Stat. 1198, 1820 (2019). . . . . . . . . . . . . . . . 4

War Claims Act of 1948, Pub. L. No. 80-896, § 2(a), 62 Stat. 1240-41 . . . . . . . . . . . . . . . . 20, 22

5 U.S.C. § 551(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

5 U.S.C. § 702. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

28 U.S.C. § 1346(a)(2) ("Little Tucker Act"). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

## Congressional Material

164 Cong. Rec. S6929 (daily ed. Nov. 13, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## Miscellaneous

*Removal of Members of the Commission on the Federal Laws for the
    Northern Mariana Islands*, 7 Op. O.L.C. 95 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Power of the President to Remove Presidential Appointees from the
    Nat'l Capital Planning Comm'n*, 6 Op. O.L.C. 191 (1982) . . . . . . . . . . . . . . . . . . . 17, 18

*Applicability of 18 U.S.C. § 208 to National Gambling Impact Study
    Comm'n*, 23 Op. O.L.C. 29 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 23

## INTRODUCTION

In 2018, Congress created a study commission, the National Commission on Military Aviation Safety (the "Commission"), to conduct a comprehensive review of recent military aviation mishaps and report its findings to the Congress and the President along with recommendations for improving military aviation safety. The Commission is composed of eight members – four appointed by the President and four by the leadership of the Congressional armed services committees. In November 2018, Defendant Senator Jack Reed, the Ranking Member of the Senate Armed Services Committee, appointed Plaintiff Peter B. Mapes to the Commission. On January 7, 2020, Senator Reed sent a letter to plaintiff informing plaintiff that the Senator was accepting the unanimous recommendation of the other seven members of the Commission and terminating plaintiff's status as a member of the Commission.

Plaintiff brings this action to challenge his removal from the Commission. Plaintiff claims that his removal was invalid because the statute that created the Commission provided that his appointment would be for the life of the Commission and, by implication, did not permit his removal absent some claim of malfeasance on his part. Plaintiff asks the Court to order that he be reinstated as a member of the Commission and that he receive payment for any work he has performed subsequent to his termination.

Plaintiff's complaint against Senator Reed should be dismissed because the Court lacks jurisdiction over his claim against Senator Reed and because plaintiff's complaint does not state a claim as his removal did not violate the law. The Court lacks jurisdiction because plaintiff, as a federal employee, *see* Pub. L. No. 115-232, Div. A, Title X, Subtitle F, § 1807(b)(7), 132 Stat. 1636, 1993 (2018) ("the members of the Commission shall be deemed to be federal employees"), is precluded by the Civil Service Reform Act from challenging his dismissal from the

1

Commission before this Court.  It is well established that federal employees may not challenge adverse employment actions in the federal district courts, but may pursue remedies only under the procedures established by the Civil Service Reform Act, regardless of whether that statutory scheme grants them any relief.  The Court also lacks jurisdiction over plaintiff's claim against Senator Reed because the Senator is protected from plaintiff's suit by sovereign immunity, and because plaintiff lacks standing to sue the Senator because his alleged injury is not redressable against Senator Reed as a court cannot order the Senator to reappoint plaintiff.

On the merits, plaintiff's complaint fails to state a claim for relief because Senator Reed, as the official who appointed plaintiff, had authority to remove plaintiff pursuant to the statute creating the Commission, and nothing in that statute limits the Senator's removal authority. Plaintiff's reliance on *Wiener v. United States*, 357 U.S. 349 (1958), is wholly unavailing, as Congress did not task the Commission with any quasi-judicial or quasi-legislative power, unlike the commission involved in *Wiener*, that could provide any basis for finding that the members of the Commission are protected from removal without cause.  Rather, Congress structured the Commission, which serves a purely advisory function, so that its members would have the full confidence of the House and Senate Armed Services Committees and the President to study and report on the serious matter of military aviation safety.  Senator Reed's termination of plaintiff was consistent with law.

Accordingly, the Court should grant Senator Reed's motion and dismiss plaintiff's complaint against him.

## BACKGROUND

### A.       National Commission on Military Aviation Safety

Section 1087 of the John S. McCain National Defense Authorization Act for Fiscal Year

2019, Pub. L. No. 115-232, Div. A, Title X, Subtitle F, 132 Stat. 1636, 1992-96 (2018)

[hereinafter "NDAA § 1087"], established a National Commission on Military Aviation Safety

"to examine and make recommendations with respect to certain United States military aviation

mishaps."  NDAA § 1087(a)(2).  The Commission is composed of eight members, four appointed

by the President and four by Members of Congress.  NDAA § 1087(b)(1).  Of the congressionally

appointed members, one is appointed by the Chairman of the Committee on Armed Services of

the Senate, one by that Committee's Ranking Member, and one each by the Chairman and

Ranking Member of the House Armed Services Committee.  NDAA § 1087(b)(1)(B)-(E).[1]  The

Commissioners "shall be appointed for the life of the Commission," and any vacancy "shall be

filled in the same manner as the original appointment."  NDAA § 1087(b)(5).  Section

1087(b)(7) provides that "[n]otwithstanding the requirements of section 2105 of title 5, United

States Code, . . .  the members of the Commission shall be deemed to be Federal employees."

No provision was made related to or otherwise restricting the removal of commissioners.

The Commission's duties are to "undertake a comprehensive study of United States

military aviation mishaps that occurred between fiscal years 2013 and 2018," including:

> (A) to assess the rates of military aviation mishaps between fiscal years 2013 and 2018 compared to historic aviation mishap rates;
>
> (B) to make an assessment of the underlying causes contributing to the unexplained physiological effects;
>
> (C) to make an assessment of causes contributing to delays in aviation maintenance and limiting operational availability of aircraft;
>
> (D) to make an assessment of the causes contributing to military aviation mishaps; and

---

[1] Appointments were required to be made within 90 days after enactment of the NDAA. NDAA § 1087(b)(2).

(E) to make recommendations on the modifications, if any, of safety, training, maintenance, personnel, or other policies related to military aviation safety.

NDAA § 1087(h)(1).  At the conclusion of its study, the Commission is required to submit a report to the President and to the Senate and House Armed Services Committees that sets forth "a detailed statement of the findings and conclusions of the Commission . . . with recommendations . . . for such legislative and administrative actions as the Commission considers appropriate in light of the results of the study."  NDAA § 1087(h)(2).  That report is due December 1, 2020.[2]  The Commission terminates 90 days after submitting the report.  NDAA § 1087(k).

On November 13, 2018, Senator Reed, as the Ranking Member of the Senate Armed Services Committee, appointed plaintiff to the Commission.  *See* 164 Cong. Rec. S6929 (daily ed. Nov. 13, 2018).  On January 7, 2020, the Senator, acting on the unanimous recommendation of the other seven members of the Commission, sent plaintiff a letter terminating him from the Commission.  The President informed the Commission on January 10 that he concurred in the decision to terminate plaintiff's appointment.[3]

## B.    Plaintiff's Allegations

Plaintiff, Dr. Peter B. Mapes, was appointed to the National Commission on Military

---

[2]  Originally, the Commission was required to submit its report by March 1, 2020.  *See* NDAA § 1087(h)(2).  That provision was amended to extend the report's submission deadline to December 1, 2020.  *See* National Defense Authorization Act for Fiscal Year 2020, Pub. L. No. 116-92, Div. A, Title XVII, Subtitle B, § 1738, 133 Stat. 1198, 1820 (2019).  The amendment also provided that within 120 days of receiving the Commission's report, the Secretary of Defense shall submit a report to the Congressional armed services committees assessing the findings and conclusions of the Commission's report and detailing plans for implementing the Commission's recommendations and for taking other actions to improve military aviation safety.  *Id.*

[3]  The Senator's January 7, 2020 letter terminating plaintiff and the January 10 letter from the Director of Presidential Personnel to the Commission expressing the concurrence of the President with Senator Reed's decision are included as exhibits D and E to co-defendant Richard Cody's Motion to Dismiss or, in the Alternative, for Summary Judgment.

Aviation Safety by Senator Reed.  Compl. ¶ 7.  He alleges that during his service on the

Commission, he "made suggestions with regard to ensuring that statistical data was reliable and

properly analyzed."  *Id.* ¶ 15.  According to his allegations, on November 19, 2019, "the Air

Force Safety Center sent the Chairman of the Commission a letter with a non-specific complaint

about Dr. Mapes' interaction with Air Force personnel," *id.* ¶ 16, and on November 20, "the

Army Safety Center sent the Chairman an email with a similar non-specific complaint."  *Id.* ¶ 17.

Plaintiff claims that he "and the various military services' Safety Centers have been at odds over

aviation safety issues for several years."  *Id.* ¶ 18.

On January 7, 2020, Senator Reed sent plaintiff a letter terminating his service as a

commissioner, stating that "your service as a member of the National Commission on Military

Aviation Safety is no longer compatible with the service of the other members of the Commission."

Compl. ¶¶ 19-20.  Plaintiff alleges that "[t]here has been no indication that [Plaintiff] committed

malfeasance or misfeasance during his tenure as Commissioner."  *Id.* ¶ 21.  Accordingly, he

asserts, Senator Reed did not have the authority to remove him from the Commission, *id.* ¶ 22,

and he "is entitled to have his appointment reinstated and to resume his duties."  *Id.* ¶ 23.

On January 28, 2020, plaintiff filed this suit against Senator Reed and the Chairman of

the Commission, General Richard Cody.  ECF No. 1.  Plaintiff claims that Senator Reed "illegally

terminated" his service on the Commission, Compl. ¶ 7, and that General Cody "directed the

administrative actions that removed Dr. Mapes from the Commission's records."  *Id.* ¶ 6.  Plaintiff

requests that the Court "order that he be reinstated to his position" on the Commission, *id.* ¶ 29, and

"order payment for work he performed for the Commission after January 7, 2020."  *Id.* ¶ 30.[4]

---

[4]  At the same time plaintiff filed suit, he also filed motions for a temporary restraining

(continued...)

## ARGUMENT

Plaintiff's complaint against Senator Reed should be dismissed because the Court lacks

jurisdiction over his claim against Senator Reed, and because his complaint fails to state a claim

on which relief may be granted.

## I.   THE COURT LACKS JURISDICTION OVER PLAINTIFF'S SUIT AGAINST SENATOR REED.

### A.   Plaintiff's Suit Is Precluded By The Civil Service Reform Act.

Plaintiff's challenge to his termination is subject to dismissal for lack of jurisdiction

because it is precluded by the Civil Service Reform Act of 1978 ("CSRA").  In the CSRA,

Congress created an "integrated scheme of administrative and judicial review" for aggrieved

federal employees to replace an "outdated patchwork of statutes and rules" that afforded

employees the right to challenge employing agency actions in district courts across the country.

*United States v. Fausto,* 484 U.S. 439, 444-45 (1988) (internal citation omitted).  "Congress'

purpose in enacting the CSRA was to channel grievances and disputes arising out of government

employment into a single system of administrative procedures and remedies, subject to judicial

review."  *Rivera v. United States*, 924 F.2d 948, 951 (9th Cir. 1991); *see also Elgin v.*

*Department of the Treasury*, 567 U.S. 1, 13-14 (2012).  The CSRA "regulates virtually every

aspect of federal employment," *Nyunt v. Chairman, Broadcasting Bd. of Governors*, 589 F.3d

445, 448 (D.C. Cir. 2009), and "prescribes in great detail the protections and remedies"

---

[4](...continued)
order and for a preliminary injunction to bar Senator Reed from appointing, and the Commission
from seating, any replacement for plaintiff's seat on the Commission.  ECF Nos. 2, 3.  As
Senator Reed has committed to making no such appointment during the pendency of this
litigation, those motions were denied without prejudice after a conference call with the parties
and the Court.  Minute Order, Feb. 11, 2020.

applicable to adverse personnel actions, "including the availability of administrative and judicial review." *Fausto,* 484 U.S. at 443.

The Supreme Court has explained that, "[g]iven the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court." *Elgin,* 567 U.S. at 11-12.  As this Circuit repeatedly has made clear, the CSRA is "*exclusive*: It constitutes *the* remedial regime for federal employment and personnel complaints." *Nyunt,* 589 F.3d at 448 (first emphasis added); *see also Grosdidier v. Chairman, Broadcasting Bd. of Governors,* 560 F.3d 495, 497 (D.C. Cir. 2009) ("As our Court has emphasized, the CSRA is comprehensive and exclusive."); *Filebark v. U.S. Department of Transportation*, 555 F.3d 1009, 1010 (D.C. Cir. 2009); *Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005); *Graham v. Ashcroft,* 358 F.3d 931, 933–35 (D.C. Cir. 2004).  Indeed, "the statutory review scheme is exclusive," the Supreme Court has explained, "even for employees who bring constitutional challenges to federal statutes." *Elgin*, 567 U.S. at 13.

Furthermore, this Circuit has "consistently read the CSRA narrowly, refusing to imply remedies that cannot be found in the language of the statute[,]" because "[p]ersonnel management is peculiarly within the ken and concern of Congress." *Johnson v. Peterson,* 996 F.2d 397, 401 (D.C. Cir. 1993) (internal quotation marks and citation omitted).  "Congress, through the [CSRA] and related employment statutes, has carefully constructed a system for review and resolution of federal employment disputes, intentionally providing – and intentionally not providing – particular forums and procedures for particular kinds of claims." *Filebark,* 555 F.3d at 1010. "When Congress intends to preserve remedies for federal employees outside the CSRA, 'it does so expressly; for example, the CSRA maintains federal employees' rights to

7

bring suit under Title VII and other antidiscrimination laws.'" *Am. Federation of Gov't Employees v. Secretary of the Air Force*, 841 F. Supp. 2d 233, 237 (D.D.C. 2012) (quoting *Nyunt*, 589 F.3d at 448), *aff'd*, 716 F.3d 633 (D.C. Cir. 2013).  Accordingly, federal employees are able to challenge adverse employment actions only through the remedies and procedures provided by the CSRA, unless some separate, express statutory remedy is provided (*e.g.*, Title VII's antidiscrimination protections).  Courts may not entertain attempts to use other general causes of action (such as the APA) to challenge personnel actions.  *See Filebark*, 555 F.3d at 1013 (citing *Fausto*, 484 U.S. at 448-49); *Grosdidier,* 560 F.3d at 497 ("Federal employees may not circumvent the [CSRA]'s requirements and limitations by resorting to the catchall [Administrative Procedure Act] to challenge agency employment actions."); *Lacson v. U.S. Department of Homeland Security*, 726 F.3d 170, 175 (D.C. Cir. 2013).

Employees in all three branches of government are subject to CSRA preclusion, even if the law affords them little or no remedy.  *See, e.g.*, *Semper v. United States*, 694 F.3d 90, 95-96 (Fed. Cir. 2012) ("Several other circuits have reached the same conclusion that we reach here: that Congress's withholding of CSRA review rights was not inadvertent, and that Congress did not intend for Judicial Branch employees who were not entitled to review under the CSRA to have alternative routes to judicial review for adverse agency actions such as termination.") (collecting cases); *Davis v. Billington*, 681 F.3d 377, 384 (D.C. Cir. 2012) (holding that plaintiff, who was appointed to his position as Library of Congress employee, was civil service employee precluded by CSRA from bringing a *Bivens* claim challenging his termination, stating "the CSRA defines the 'civil service' as 'all appointive positions' in all three branches of government, 5 U.S.C. § 2101," and plaintiff was an "excepted service" employee not afforded the remedy

plaintiff sought).[5]  The fact that many of these employees have no remedial protections under the CSRA does not remove them from its preclusive effect.  This Circuit explained:

> A review of the CSRA's remedial scheme as it relates to [plaintiff employee in the Congressional Research Service of the Library of Congress] and most other civil-service members not employed by an agency under the executive branch for purposes of the CSRA makes it clear that their general excision from the remedial protections available through that scheme was in fact conscious and "not inadvertent."

*Davis*, 681 F.3d at 384.

NDAA § 1087(b)(7) clearly provides that members of the Commission, such as plaintiff was, are "Federal employees."[6]  Section 2101 of title 5 of the United States Code expressly provides that "all appointive positions in the executive, judicial, and legislative branches of the Government of the United States, except positions in the uniformed services[,]" make up the "civil service."  Members of the Commission are thus federal employees within the civil service and subject to the provisions of the CSRA, including the exclusive nature of its remedies for adverse personnel actions.  As the courts have made clear, such remedies do not include bringing suit before the district courts to challenge a removal.  *See Elgin*, 567 U.S. at 9-15; *Graham*, 358

---

[5]  *See also Dotson v. Griesa*, 398 F.3d 156, 173 n.10 (2d Cir. 2005) (stating that "Congressional employees, like their counterparts in the judicial branch, qualify as members of the excepted service under the CSRA.  Thus, absent a special statutory grant, legislative employees, like judicial employees, do not possess administrative or judicial review rights under the CSRA."); *see id*. at 173 n.11 (identifying the Congressional Accountability Act as one such "special statutory grant" of rights to specified Congressional employees and recognizing potential for judicial review); *Payne v. Meeks*, 200 F. Supp. 2d 200, 205-06 (E.D.N.Y. 2002) (holding *Bivens* action by employee of a Member of Congress precluded and stating that, although plaintiff "qualifies as an 'employee' and as a member of the 'excepted service' under the CSRA," Congressional Accountability Act did not afford congressional employees a general right "to review of adverse personnel actions taken in violation of their constitutional rights")  (citing 5 U.S.C. §§ 2103(a), 2105(a)(1)(B)).

[6]  As explained *infra* at 21, plaintiff, who was appointed by a Member of Congress, is not an officer of the United States under the Constitution, but an employee.

9

F.3d at 935 (CSRA precluded review of personnel action and "district court therefore had no subject matter jurisdiction" over plaintiff's claim). Rather, the CSRA provides for review of personnel actions strictly before the Merit Systems Protection Board, with review in the Federal Circuit. *See Fausto*, 484 U.S. at 446-47. Accordingly, this Court lacks jurisdiction to hear plaintiff's suit.

Plaintiff may complain that the CSRA provides no remedy to persons in his position. Such a complaint, whether correct or not, has no bearing on the exclusiveness of the CSRA's remedial provisions. The Supreme Court has made clear that CSRA precluson applies even where the CSRA scheme would provide no relief. *See Elgin*, 567 U.S. at 10-16; *Fausto*, 484 U.S. at 443-455. As this Circuit has "repeatedly said, 'what you get under the CSRA is what you get.'" *Nyunt*, 589 F.3d at 449 (quoting *Filebark*, 555 F.3d at 1010); *Grosdidier*, 560 F.3d at 497 (D.C. Circuit "ha[s] emphasized . . . that the CSRA is the exclusive avenue for suit even if the plaintiff cannot prevail in a claim under the CSRA"). That is the case because, "allowing direct judicial review of employment claims for employees with no rights under the CSRA would provide them a more substantial right to review than was available to personnel granted a right to judicial review under the CSRA," as such personnel "had to first seek administrative review by the MSPB before gaining judicial review in the Federal Circuit." *Graham*, 358 F.3d at 934 (citing *Fausto*, 484 U.S. at 448-50); *Grosdidier*, 560 F.3d at 497 ("As we have explained, Congress designed the CSRA's remedial scheme with care, 'intentionally providing – and intentionally not providing – particular forums and procedures for particular kinds of claims.'") (quoting *Filebark*, 555 F.3d at 1010).

Indeed, the CSRA precludes suit even when the claim concerns "a type of personnel action" the Act does not cover. *See Filebark*, 555 F.3d at 1013 (stating that "the lack of any

10

entitlement to judicial review in the CSRA precluded litigation of an employment matter under the APA even where the complaint did not concern 'a type of personnel action covered by the CSRA'") (quoting *Graham*, 358 F.3d at 934).  That is because, as this Circuit has explained, "[w]e treat the CSRA and Congress's related employment statutes as covering the field of federal employee claims, and so our cases expressly teach that those left out of this scheme are left out on purpose." *Filebark*, 555 F.3d at 1014.

In this case, plaintiff's complaint fails to identify any statutory cause of action that would allow him to circumvent the CSRA's exclusive remedial scheme and obtain judicial review of his removal from the Commission before this Court.  As a federal employee, he is therefore required to pursue his grievance and seek remedies, if any, under the CSRA.  He may not seek review of his termination before this Court.  Accordingly, this Court lacks subject matter jurisdiction over plaintiff's challenge to his removal from the Commission.

### B.     Senator Reed Is Protected From Plaintiff's Suit By Sovereign Immunity.

Even were it not precluded by the CSRA, plaintiff's suit for reinstatement to the Commission and back pay cannot be maintained against Senator Reed because he is protected by sovereign immunity and plaintiff identifies no waiver of that immunity.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  This immunity protects government officials sued in their official capacity as "an official-capacity suit is, in all respects other than name, to be treated as a suit against the [government] entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Senator Reed, as a Member of Congress sued in his official capacity, is covered by sovereign immunity. *See Rockefeller v. Bingaman*, 234 F. App'x 852, 855 (10th Cir. 2007)

(affirming dismissal of suit against Senator and Representative in their official capacities on sovereign immunity grounds); *see also McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009) (holding that "sovereign immunity extends to the United States Congress when it is sued as a branch of the government"); *Maarawi v. U.S. Congress*, 24 F. App'x 43, 44 (2d Cir. 2001) (holding Congress protected by sovereign immunity from suit claiming that Members made derogatory remarks); *Keener v. Congress*, 467 F.2d 952, 953 (5th Cir. 1972) (per curiam) (affirming dismissal because Congress "is protected from suit by sovereign immunity").  Because "[s]overeign immunity is jurisdictional in nature," *Meyer*, 510 U.S. at 475, a plaintiff bears the burden to establish affirmatively a waiver of that immunity to bring his claim.  *See Am. Road and Transp. Builders Ass'n v. Environmental Protection Agency*, 865 F. Supp. 2d 72, 80 (D.D.C. 2012) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) and *Tri–State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003)), *aff'd*, No. 12-5244, 2013 WL 599474 (D.C. Cir. Jan. 28, 2013).

　　　Plaintiff cites two statutes as the basis for asserting this Court's jurisdiction over his suit – the general federal question provision, 28 U.S.C. § 1331, and the Little Tucker Act, 28 U.S.C. § 1346(a)(2); neither allows him to bring his claims against Senator Reed.  First, section 1331 is not a waiver of sovereign immunity.  *See Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996); *Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996) ("[S]ection 1331 'is not a general waiver of sovereign immunity. It merely establishes a subject matter that is within the competence of federal courts to entertain.'" ) (quoting *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 4 (1st Cir. 1989)).

　　　Second, while the Little Tucker Act, § 1346(a)(2), under which this Court shares concurrent jurisdiction with the Court of Federal Claims for certain actions not exceeding $10,000, does waive

sovereign immunity for certain damages claims, it does so *only* for monetary claims against the United States and not against individual Members of Congress, who are not part of any Executive agency.  *See* 28 U.S.C. § 1346(a)(2) (limiting jurisdiction to an "action or claim *against the United States*") (emphasis added); *cf. Barth v. United States,* 737 F. App'x 540, 541 (Fed. Cir. 2018) ("Jurisdiction of the Claims Court is established by the Tucker Act, which contains no provision extending jurisdiction of that court to any individual or organization other than the United States[.]"); *United States v. Sherwood*, 312 U.S. 584, 588 (1941) ("[J]urisdiction [of the Court of Claims] is confined to the rendition of money judgments in suits brought for that relief against the United States[.]").  Plaintiff's claim for damages under the Little Tucker Act, therefore, may not be maintained against Senator Reed as he is not the proper defendant under that statute. *Cf. Sherwood*, 312 U.S. at 588 (stating, with regard to Tucker Act claim, that "if the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court"); *Saints v. Winter*, No. 05-CV-0806, 2007 WL 2481514, at *4 (S.D. Cal. Aug. 29, 2007) ("The Secretary of the Navy is not a proper defendant under the Tucker Act, or even the Little Tucker Act, 28 U.S.C. § 1346(a)(2), which give the district courts original jurisdiction concurrent with the United States Court of Federal Claims to render judgments against the United States," as suits under those acts "are permitted only against the United States, not its agencies."); *Orr v. IDAWY*, No. 4:11-CV-150, 2012 WL 1454988, at *1 (D. Idaho Apr. 26, 2012) ("Under the Tucker Act, the only proper defendant is the United States; employees and specific government agencies are not proper defendants.").[7]

---

[7]  While not relied on by plaintiff, the general waiver of sovereign immunity for injunctive relief in the Administrative Procedure Act, 5 U.S.C. § 702, cannot supply a waiver applicable to suing Senator Reed both because he and the Senate are outside the coverage of the

(continued...)

Moreover, plaintiff cannot use the Little Tucker Act as a basis for finding a waiver of sovereign immunity against Senator Reed, because "[c]omplaints by civil service employees regarding personnel actions covered by the Civil Service Reform Act are subject to the jurisdiction of the Merit Systems Protection Board and do not give rise to actions under the Tucker Act or the Little Tucker Act." *Price v. Panetta*, 674 F.3d 1335, 1339 (Fed. Cir. 2012) (citing *Fausto*, 484 U.S. at 449, 455, and *Worthington v. United States*, 168 F.3d 24, 26-27 (Fed. Cir. 1999). Accordingly, as plaintiff does not have a claim subject to Little Tucker Act jurisdiction, that provision cannot supply the necessary waiver of sovereign immunity for his suit.[8]

### C.   Plaintiff Lacks Standing To Bring His Claim Against Senator Reed As His Injury Cannot Be Redressed Against The Senator.

Plaintiff cannot establish Article III standing to sue Senator Reed because his alleged injury is not redressable by relief against the Senator.  The party seeking to invoke a federal court's jurisdiction bears the burden of establishing standing to sue.  *See Lujan v. Defenders of*

---

[7](...continued)
APA, *see* 5 U.S.C. § 551(1)(A) (agency for purposes of APA does not include Congress), and because that waiver does not cover claims for monetary relief, such as the back pay claim plaintiff asserts here.  *See McKoy v. Spencer*, 271 F. Supp. 3d 25, 33-34 (D.D.C. 2017) (claim for back pay is claim for "money damages" outside of APA's waiver of sovereign immunity for equitable relief claims against an agency).

[8]  In addition, the Little Tucker Act cannot supply the waiver for plaintiff's claim because its provisions are like the Tucker Act, and "in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages.  In the parlance of Tucker Act cases, that source must be 'money-mandating.'"  *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (internal citations omitted); *see also United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) ("[A] statute creates a right capable of grounding a claim within the waiver of sovereign immunity [of the Tucker Act] if, but only if, it 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'") (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983)); *United States v. Bormes*, 568 U.S. 6, 10, 15-16 (2012). Plaintiff fails to identify any such separate statutory cause of action that would afford him the limited waiver of sovereign immunity provided by the Little Tucker Act.

*Wildlife*, 504 U.S. 555, 561 (1992); *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).  To meet

this burden, a plaintiff must satisfy the three elements that form the "irreducible constitutional

minimum of standing" under Article III: (1) that the plaintiff "ha[s] suffered an injury in fact – an

invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual

or imminent, not conjectural or hypothetical;" (2) that the injury was caused by, or is "fairly . . .

trace[able] to the challenged action of the defendant"; and (3) that it is "likely, as opposed to

merely speculative, that the injury will be redressed by a favorable decision."  *Lujan*, 504 U.S. at

560-61 (internal quotation marks and citations omitted); *accord Arpaio*, 797 F.3d at 19.

Plaintiff's suit against Senator Reed fails to satisfy the last prong – redressability.

Plaintiff can point to no authority for a court to enter an order requiring a Member of Congress to

perform a discretionary act as part of his official duties – here, the appointment of a member of

the Commission as provided for by statute.  *See* NDAA § 1087(b)(1)(C).  Such relief would raise

serious separation of powers concerns.  *See Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 500

(1866) ("The Congress is the legislative department of the government; the President is the

executive department.  Neither can be restrained in its action by the judicial department. . . .");

*Hearst v. Black*, 87 F.2d 68, 71 (D.C. Cir. 1936) ("[T]he universal rule, so far as we know it, is

that the legislative discretion in discharge of its constitutional functions, whether rightfully or

wrongfully exercised, is not a subject for judicial interference."); *see also Swan*, 100 F.3d at 978

(explaining with regards to lawsuit seeking to require President to reinstate plaintiff to National

Credit Union Administration Board: "The reasons why courts should be hesitant to grant such relief

are painfully obvious; the President, like Congress, is a coequal branch of government, and for the

President to 'be ordered to perform particular executive . . . acts at the behest of the Judiciary,' at

best creates an unseemly appearance of constitutional tension and at worst risks a violation of the

constitutional separation of powers.") (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 827

(1992) (Scalia, J., concurring in part and concurring in the judgment)).  Accordingly, the Court

should dismiss plaintiff's claim against Senator Reed for lack of standing.

## II.   PLAINTIFF FAILS TO STATE A CLAIM AS SENATOR REED HAS UNRESTRICTED AUTHORITY TO REMOVE PLAINTIFF FROM THE COMMISSION AND THAT REMOVAL DID NOT VIOLATE NDAA § 1087.

It is the long-standing rule with regard to federal service that, "absent a specific provision

to the contrary, the power of removal from office is incident to the power of appointment."

*Carlucci v. Doe*, 488 U.S. 93, 99 (1988) (internal quotation marks omitted); *see also Free*

*Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 509 (2010) ("Under the

traditional default rule, removal is incident to the power of appointment."); *Parsons v. United*

*States*, 167 U.S. 324, 331 (1897) ("In the absence of all constitutional provision or statutory

regulation, it would seem to be a sound and necessary rule to consider the power of removal as

incident to the power of appointment.") (quoting *Ex parte Hennen*, 38 U.S. (13 Pet.) 230, 259

(1839)); *Swan*, 100 F.3d at 979.  When considering whether to depart from the standard rule and

impose a restriction on removal authority, courts look to the statute that established the office

involved, and "in the face of statutory silence," the general and long-standing rule that "the

power of removal presumptively is incident to the power of appointment" controls.  *Kalaris v.*

*Donovan*, 697 F.2d 376, 389 (D.C. Cir. 1983).  Accordingly, as the power to appoint Dr. Mapes

to the Commission was vested in Senator Reed, as the Ranking Member of the Senate Armed

Services Committee, Senator Reed has the plenary authority to remove him unless specifically

limited by the statute.

Plaintiff can point to no limitation on the Senator's power to remove him in NDAA

§ 1087, *i.e.*, there is no limitation to removal for cause or otherwise.  The only language

regarding the service of commissioners is that they shall be "appointed for the life of the Commission." NDAA § 1087(b)(5). The mere existence of a term of office (to the extent appointment for the "life of the Commission" constitutes a "term"), however, is not sufficient to infer a limitation on removal. *See Parsons*, 167 U.S. at 327-28, 339-43 (finding no limit on President's removal power of U.S. Attorney despite statute providing for four-year term); *Myers v. United States*, 272 U.S. 52 (1926) (finding President had power to remove postmaster, who was appointed for a four-year term, at his discretion, and Congress could not constitutionally require consent of Senate); *see also Removal of Members of the Commission on the Federal Laws for the Northern Mariana Islands*, 7 Op. O.L.C. 95, 100 (1983) (noting that "mere presence of a statutory provision for a specific term of service has not been deemed sufficient basis on which to infer a legislative purpose of restricting Presidential removal authority"). Indeed, the provision for appointment for life of the Commission does not establish a limit on removal but merely establishes that an appointee may continue to serve to the conclusion of the Commission without reappointment, unless removed. *See Removal of Members of the Commission on the Federal Laws for the Northern Mariana Islands*, 7 Op. O.L.C. at 100 n.7 (noting that term of office is not a limit on removal but is "interpreted as providing a limit on the period for which an appointee can serve without reappointment"); *Power of the President to Remove Presidential Appointees from the National Capital Planning Comm'n*, 6 Op. O.L.C. 191, 193 (1982) (" It has been established, since *Parsons v. United States*, 167 U.S. 324, 338 (1897), that a provision for a term merely means that the officer shall not serve beyond his term without a reappointment which would subject him to the scrutiny of the appointing authority. A term of office in itself therefore does not create a right to serve for its maximum duration; it constitutes a limitation on, rather than a grant of, the officer's tenure.").

17

The Office of Legal Counsel of the Department of Justice has specifically concluded that a statute similarly providing for appointment of members of a commission for the life of the commission did not create any tenure protection for the commissioners. *See Applicability of 18 U.S.C. § 208 to National Gambling Impact Study Comm'n*, 23 Op. O.L.C. 29, 35-38 (1999) (concluding that members of study commission appointed by President and by Congress "for the life of the commission" (Pub. L. No. 104-169, § 3(b)(1) (1996)) did not have removal protection: "Nothing in the Act creating the Commission states or implies that Commissioners are to enjoy any form of tenure protection."); *cf. Power of the President to Remove Presidential Appointees from the National Capital Planning Comm'n*, 6 Op. O.L.C. at 193-96 (statutory provision for six-year term for commission members did not indicate congressional intent to restrict President's removal authority). Hence, that NDAA § 1087 provides that commissioners are appointed for the life of the Commission is not sufficient to establish congressional intent to limit the power to remove commissioners. Rather, plaintiff must point to some affirmative demonstration that Congress intended to limit the removal authority of the appointing officials to establish that the Senator was restricted in removing him.

No such affirmative intent can be demonstrated either from the statute's terms or from its legislative history. Accordingly, "in the face of statutory silence," *Kalaris*, 697 F.2d at 389, as here, the long-standing rule applies, and the appointing official, Senator Reed, had the authority to remove plaintiff at his discretion. To find otherwise would be to impose a limitation on removal of appointees by Members of Congress that Congress itself never intended when establishing this Commission to study and advise it on an important matter of public policy.

Plaintiff cites two Supreme Court decisions in support of his argument that Senator Reed lacked authority to remove him from the Commission without cause. *See* Compl. ¶¶ 24-25

18

(citing *Humphrey's Executor v. United States*, 295 U.S. 602 (1935) and *Wiener v. United States*, 357 U.S. 349 (1958)).  Neither case supports his argument.  *Humphrey's Executor* involved a claim by a member of the Federal Trade Commission challenging his removal by President Franklin D. Roosevelt on the ground that the President wanted to appoint his own person.  *See Humphrey's Executor*, 295 U.S. at 619.  Not long before Humphrey's removal, the Supreme Court had overturned limitations on the President's power to remove a postmaster who had been appointed with the advice and consent of the Senate.  *See Myers v. United States*, 272 U.S. 52 (1926).  The statute creating the postmaster's office required that the Senate consent to the removal of the postmaster, *id.* at 107, and the Supreme Court held that restriction was an unconstitutional intrusion on the President's power under Article II.  *See id.* at 163-64, 176.

In *Humphrey's Executor*, the Federal Trade Commission Act expressly limited the removal of commissioners to "inefficiency, neglect of duty, or malfeasance in office."  295 U.S. at 620; *see also id.* at 623 ("The words of the Act are definite and unambiguous.").  The Court distinguished *Myers* and upheld the restriction on removal in the Act because, unlike the postmaster in *Myers*, who was "an executive officer restricted to the performance of executive functions," *Humphrey's Executor*, 295 U.S. at 627, the FTC exercised "quasi-judicial" and "quasi-legislative" powers that supported the need for it to act "free from executive control."  *Id.* at 628.  Accordingly, the Court found the statutory limitation on removal constitutional, and the President's removal of Humphrey without cause was not permitted by the Act.

Two decades later the Court decided *Wiener v. United States*.  That case involved a challenge to the removal of a commissioner from the War Claims Commission, which had been established by Congress to adjudicate claims for compensation from "internees, prisoners of war, and religious organizations, . . . who suffered personal injury or property damage at the hands of

19

the enemy in connection with World War II." *Wiener*, 357 U.S. at 349-50.  President Truman nominated Wiener to the commission, and he was confirmed by the Senate and took office in 1950.  Subsequently, President Eisenhower removed Wiener from the commission, because he considered it "in the national interest to complete the administration" of compensation claims "with personnel of my own selection." *Id.* at 350.  Wiener sued the United States for back pay in the Court of Claims asserting that he was unlawfully removed.

On review, the Supreme Court held that Wiener was not validly removed from the commission.  The Court observed that "the Congress provided for a tenure defined by" the period the War Claims Commission was to operate, but "nothing was said in the Act about removal" of commissioners. *Id.* at 352.[9]  Noting "the congressional failure of explicitness," *id.* at 352, the Court considered whether the tenure of a member of the War Claims Commission was more like that in *Myers v. United States*, which required the unfettered authority of the President to remove officers performing solely executive functions, or that in *Humphrey's Executor*, which held that Congress can statutorily limit the President's ability to remove officers carrying out quasi-judicial and quasi-legislative duties intended to function with independence from the President. In deciding the question, the Court in *Wiener* focused on "the most reliable factor for drawing an inference regarding the President's power of removal," namely, "the nature of the function that Congress vested in the War Claims Commission." *Id.* at 353.  Given the "intrinsic judicial character of the task with which the Commission was charged" and the need for it to adjudicate claims "'entirely free from the control or coercive influence, direct or indirect,' of either the Executive or the Congress," *id.* at 355-56 (quoting *Humphrey's Executor*, 295 U.S. at 629), the

---

[9]  Specifically, the War Claims Act of 1948 provided: "The terms of office of the members of the Commission shall expire at the time fixed in subsection (d) for the winding up of the affairs of the Commission."  Pub. L. No. 80-896, § 2(a), 62 Stat. 1240-41.

Court concluded that the commission resembled the FTC, as in *Humphrey's Executor*, and not a purely executive officer, as in *Myers*.  *See id.* at 352-55.  Accordingly, the Court held that the statute prohibited the President's removal of members of the War Claims Commission "merely because he wanted his own appointees."  *Id.* at 353-56.

Neither *Wiener* nor *Humphrey's Executor* imposes any restriction on Senator Reed's removal authority over plaintiff.  Plaintiff mistakenly claims that "these two cases stand for the proposition that an appointee who is not a direct executive branch member can only be removed based on the removal tenants of a statute, not simply based on the whim of the appointing official."  Compl. ¶ 26.  Rather, *Humphrey's Executor* and *Wiener* concerned the separation of powers between the Congress and the President regarding the removal of *officers* of the United States appointed pursuant to the Appointments Clause of the Constitution.  As the Court in *Wiener* recognized, the question of Congress's power to control the President's removal authority over officers is long-standing: "Controversy pertaining to the scope and limits of the President's power of removal fills a thick chapter of our political and judicial history."  357 U.S. at 351.

Such constitutional concerns are wholly absent here.  Plaintiff is neither a principal nor inferior officer of the United States – indeed, he cannot be as he was appointed by a Member of Congress and not by the President, a head of a department, or a court of law.  *See* U.S. Const. art. II, § 2, cl. 2; *Buckley v. Valeo*, 424 U.S. 1, 135 (1976) ("[Congress may not] vest in itself, or in its officers, the authority to appoint officers of the United States when the Appointments Clause by clear implication prohibits it from doing so.").  As the NDAA makes clear, "the members of the Commission shall be deemed to be Federal employees."  NDAA § 1087(b)(7).  They do not "exercise[] significant authority pursuant to the laws of the United States."  *Buckley*, 424 U.S. at 126.  As such, *Humphrey's Executor*'s and *Wiener*'s discussion of the power of Congress under

the Constitution to impose restrictions on the President's authority to remove officers he has

appointed pursuant to the Appointments Clause is wholly inapposite to the question of whether a

federal employee like plaintiff can be terminated from a study commission.

Yet, even applying the reasoning of *Humphrey's Executor* and *Wiener*, plaintiff presents

no basis to conclude that Congress restricted the power to remove members of the Commission.

In *Wiener*, the key factor in deciding whether a statute imposes a restriction on removal was "'the

nature of the function that Congress vested' in the body" at issue, *Swan*, 100 F.3d at 983 (quoting

*Wiener*, 357 U.S. at 353), specifically, whether the commission undertook quasi-adjudicative or

quasi-legislative duties necessitating independence from the President.  *Wiener*, 357 U.S. at 352-

56; *see also Swan*, 100 F.3d at 983 ("If this function [of the body] is one that 'require[s] absolute

freedom from Executive interference,' then a court may infer that Congress provided the officials

with removal protection as a means of 'prevent[ing] the President from exercising coercive

influence over them.'") (first quoting *Wiener*, 357 U.S. at 353, and then *Mistretta v. United

States*, 488 U.S. 361, 411 (1989)).[10]

Unlike in *Wiener*, the Commission here performs no such quasi-judicial or quasi-

legislative functions – the Commission neither conducts any adjudications nor promulgates

regulations – nor exercises authority of any kind.  Rather, the Commission's sole duty is to

conduct a study of military aviation safety and to report to the Congress and the President on this

---

[10]  It is telling that the Supreme Court in *Wiener* engaged in a review of the function of
the War Claims Commission and the legislative history behind its creation, *Wiener*, 357 U.S. at
354-55, even though the War Claims Act specified that the appointments were for a term lasting
until the commission completed its duties, *i.e.*, for the life of the commission.  Pub. L. No. 80-
896, § 2(a), 62 Stat. 1240-41.  That alone demonstrates that the mere fact that an appointment is
for the "life of the Commission" does not itself limit the removal power of the appointing
authority.  Here, that language is all plaintiff points to, and, as in *Wiener*, it alone is insufficient
to establish any limit on the Senator's authority to remove him.

subject.  Far from needing any independence from these entities, the Commission is meant to

serve in the nature of staff to these two branches – studying a problem in depth to assist both the

President and the Congress in understanding the scope of military aviation safety problems and

the potential causes of such problems, and to recommend legislative and administrative actions to

address any problems the Commission identifies.  NDAA § 1087(h).[11]  Thus, the Commission

here does not engage in any of the governmental functions that *Wiener* relied on in finding a

restriction on the President's removal authority.[12]

In sum, plaintiff identifies nothing in the statute that would be a basis for departing from

the long-standing rule that the power to appoint includes the power to remove, and neither

*Humphrey's Executor* nor *Wiener* provides any legal ground for creating such a limitation on the

removal authority.  Accordingly, as the official with the authority to appoint plaintiff to the

Commission, Senator Reed also had the authority to remove him at his discretion, and nothing in

NDAA § 1087 restricted his authority in doing so.

---

[11]  Such activities do not constitute "exercising significant authority pursuant to the laws of the United States," *Buckley*, 424 U.S. at 126, and, therefore, do not have to be undertaken by presidentially appointed officers.  *See id.* at 137 ("Insofar as the powers confided in the Commission are essentially of an investigative and informative nature, falling in the same general category as those powers which Congress might delegate to one of its own committees, there can be no question that the Commission as presently constituted may exercise them.").

[12]  Indeed, it would be anomalous for Congress to provide for judicially enforceable restrictions on removal of the commissioners it appoints, who perform purely advisory functions "falling in the same general category as those powers which Congress might delegate to one of its own committees." *Applicability of 18 U.S.C. § 208 to National Gambling Impact Study Comm'n*, 23 Op. O.L.C. at 35 (quoting *Buckley*, 424 U.S. at 137).  When Congress intends to limit authority to take employment actions regarding its own employees, or to provide judicial review of such actions, it does so expressly and with careful consideration of the separation of powers and legislative immunity implications of doing so.  *See* Congressional Accountability Act of 1995, 2 U.S.C. § 1413 (authorization to bring judicial proceedings in this Act "shall not constitute a waiver" of sovereign immunity, Speech or Debate Clause immunity, or "any power of either the Senate or the House of Representatives under the Constitution").

Finally, plaintiff's attempt to state a claim is not aided by his perfunctory assertion that he "was never provided due process before his illegal removal." Compl. at 1 (Introduction).  First, plaintiff's complaint does not contain any allegations detailing what process he was due or otherwise explaining this assertion.[13]  More importantly, as a matter of law, plaintiff cannot state a due process claim as his service on the Commission was "at will."

In order to state a claim for denial of constitutional due process, "a plaintiff must allege a deprivation of interests protected by the Fifth Amendment," *Ivey v. Fenty*, 789 F. Supp. 2d 65, 69 (D.D.C. 2011), here, presumably, a property interest in his employment.  Plaintiff cannot demonstrate any such property interest, because, as explained in detail above, he served in his position "at will," subject to removal at the Senator's discretion.  It is well established that, "[a]t-will employees (as opposed to those terminable only for cause) have no property interest in their employment because there is no objective basis for believing that they will continue to be employed indefinitely."  *Rodriguez v. District of Columbia*, 118 F. Supp. 3d 132, 140 (D.D.C. 2015) (internal quotation marks and citation omitted); *see also Hall v. Ford*, 856 F.2d 255, 265 (D.C. Cir. 1988) ("Those who are terminable at will have no property interest because there is no objective basis for believing that they will continue to be employed indefinitely."); *Tapp v. Washington Metro. Area Transit Auth.*, 306 F. Supp. 3d 383, 393 (D.D.C. 2016) (plaintiff's at-will employment "did not constitute a property right that triggers the procedural protections of the Due Process Clause"); *Ivey*, 789 F. Supp. 2d at 69 (same); *Mills v. District of Columbia Dept. of Mental Health, St. Elizabeth's Hosp. Managers*, 756 F. Supp. 2d 55, 59 (D.D.C. 2010) ("As a general rule, an at-will employee 'may be discharged at any time and for any reason, or for no

---

[13]  Nor has plaintiff attempted to pursue any process he may have before the Merit Systems Protection Board as provided by the CSRA.

reason at all,' and hence has no protected property interest triggering due process concerns.")

(quoting *Liberatore v. Melville Corp.*, 168 F.3d 1326, 1329 (D.C. Cir. 1999) and citations omitted);

*Saunders v. District of Columbia,* 711 F. Supp. 2d 42, 57 (D.D.C. 2010) (at-will employee cannot

succeed on claim that dismissal deprived her of due process as she has no property interest in

continued employment); *Ekwem v. Fenty*, 666 F. Supp. 2d 71, 78 (D.D.C. 2009) ("government

employees who are terminable at will have no property interest" for due process purposes)

(internal quotation marks and citation omitted).  Accordingly, plaintiff cannot state a due process

claim arising from his termination.

## CONCLUSION

For the reasons set forth, the Court should dismiss plaintiff's complaint against Senator

Reed with prejudice.

<div style="margin-left:40%">

Respectfully submitted,

 /s/ Patricia Mack Bryan
Patricia Mack Bryan, Bar #335463
Senate Legal Counsel

Morgan J. Frankel, Bar #342022
Deputy Senate Legal Counsel

Grant R. Vinik, Bar #459848
Assistant Senate Legal Counsel

Thomas E. Caballero
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250
(202) 224-4435 (tel)
(202) 224-3391 (fax)

</div>

Dated: March 13, 2020               Attorneys for Defendant Senator Jack Reed