UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
PETER B. MAPES,                                     )
                                                    )
            Plaintiff,                              )
                                                    )
      V.                                            )
                                                    )      Civil Action No. 20-0223 (JEB)
SENATOR JACK REED,                                  )
RICHARD CODY, Chairman,                             )
National Commission on Military Aviation Safety     )
                                                    )
            Defendants.                              )
_____)

**DEFENDANT CHAIRMAN CODY'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or in the alternative

Federal Rule of Civil Procedure 56, Defendants, by and through undersigned counsel, respectfully

move this Court to dismiss Plaintiff's Complaint in the above-captioned civil action. Because grant

of this motion would be fully dispositive of the above-captioned civil action, the duty to confer

pursuant to Local Civil Rule 7(m) does not apply.  A memorandum of points and authorities,

exhibits and proposed order are submitted herewith.


Dated: March 16, 2020                Respectfully submitted,

                                     TIMOTHY J. SHEA, D.C. Bar No. 437437
                                     United States Attorney

                                     DANIEL F. VAN HORN, D.C. Bar No. 924092
                                     Chief, Civil Division

By:     */s/ John Moustakas*
        John Moustakas, D.C. Bar No. 442076
        Assistant United States Attorney
        555 Fourth Street, N.W.
        Washington, DC 20530
        (202) 252-2518

        *Counsel for Chairman Richard Cody*

        Stefan R. Wolfe
        General Counsel

        Cody Cheek
        Attorney
        National Commission on Military Aviation Safety
        2900 Crystal Drive
        Arlington, VA 22202

        *Of Counsel*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                      )
PETER B. MAPES,                                       )
                                                      )
         Plaintiff,                                   )
                                                      )
         V.                                           )
                                                      )      Civil Action No. 20-0223 (JEB)
SENATOR JACK REED,                                    )
RICHARD CODY, Chairman,                               )
National Commission on Military Aviation Safety       )
                                                      )
         Defendants.                                  )
_____)


**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT CHAIRMAN CODY'S MOTION TO DISMISS OR,
<u>IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

INTRODUCTION ………………………………………………………………..1

BACKGROUND………………………………………………………………….2

    I.      Plaintiff's Appointment to National Commission on Military Aviation Safety…..2

    II.     Plaintiff's Status as a Reemployed Annuitant………………….…………...3

    III.    Plaintiff's Removal from the Commission………..……………….…………3

    IV.    Plaintiff's Post-Removal claims for Pay……...………………….…………..4

    V.     Plaintiff's Complaint………………………………………………………5

LEGAL STANDARDS………………………………………………………...5

    I.      Dismissal Pursuant to Rule 12(b)(1):  Lack of Subject Matter Jurisdiction………5

    II.     Dismissal Pursuant to Rule 12(b)(6):  Failure to State a Claim ……………..……6

    III.    Dismissal Pursuant to Rule 56:  Indisputable Status as Reemployed Annuitant….7

ARGUMENT………………………………………………………….................9

    I.      This Court Lacks Subject-Matter Jurisdiction, as Plaintiff's Suit is Precluded by the CSRA……………………………………………..………………….…..9

          A.    Commission members of the Commission are federal employees in the excepted service……………………………………………..………9

          B.    As a federal employee, Plaintiff must pursue his grievance under the CSRA…..……………………………………………………….....10

    II.     Plaintiff Fails to State a Claim, as his Removal did not Violate NDAA §1087…12

          A.    Absent statutory guidance, an appointing officer may remove an appointee at-will…………..……………………………………...12

          B.    *Humphrey's Executor* and *Wiener* are distinguishable…………..……...13

    III.    Plaintiff Fails to State a Due Process claim…………….……….…………18

          A.    At-will employees have no property interest in continued employment...18

          B.    Plaintiff fails to allege that he received a lack of process……………..…19

IV.    As a Reemployed Annuitant, Plaintiff served at the Will of Senator Reed……...20

V.    Plaintiff's Claim under the Little Tucker Act should be Dismissed……………..21

CONCLUSION………………………………………………………………………………..23

## TABLE OF AUTHORITIES

**Cases**                                                                                       **Pages**

*Abhe & Svoboda, Inc. v. Chao,*
    508 F.3d 1052 (D.C. Cir. 2007)..................................................................................... 7

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ............................................................................................ 7, 8

*Ashbourne v. Hansberry,*
    245 F. Supp. 3d 99 (D.D.C. 2017).......................................................... 7, 19, 20

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................................ 6, 7

*Bame v. Dillard,*
    637 F.3d 380 (D.C. Cir. 2011)............................................................................. 22

*Barkley v. United States Marshals Serv. ex rel. Hylton,*
    766 F.3d 25 (D.C. Cir. 2014) ............................................................................... 18

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................ 6, 7

*Cafeteria & Restaurant Workers Union, Local 473 v. McElroy,*
    367 U.S. 886 (1961) ...................................................................................... 12, 17

*Carlucci v. Doe,*
    488 U.S. 93 (1988) .............................................................................................. 12

*Cleveland Bd. of Educ. v. Loudermill,*
    470 U.S. 532 (1985) ............................................................................................ 19

*Coleman v. Napolitano,*
    65 F. Supp. 3d 99 (D.D.C. 2014)........................................................................... 6

*Daniels v. United States,*
    947 F. Supp. 2d 11 (D.D.C. 2013)................................................................... 2, 22

*Delalat v. Dep't of the Air Force,*
    557 F.3d 1342 (Fed. Cir. 2009) ........................................................................... 21

*deLeon v. Wilkie,*
    2020 U.S. Dist. LEXIS 5908 (D.D.C. 2020) ....................................................... 11

*Eagle Trust Fund v. United States Postal Serv.,*
    365 F. Supp. 3d 57 (D.D.C. 2019)................................................................. 18, 19

*Elgin v. Department of the Treasury,*
    567 U.S. 1 (2012) ................................................................................................ 11

*Filebark v. U.S. Dep't of Transp.,*
    555 F.3d 1009 (D.C. Cir. 2009)...................................................................... 11, 18

*Fisher v. United States,*
    402 F.3d 1167 (Fed. Cir. 2005) ........................................................................... 22

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.,*
    561 U.S. 477 (2010) ............................................................................................ 12

*Grand Lodge of Fraternal Order of Police v. Ashcroft,*
    185 F. Supp. 2d 9 (D.D.C. 2001)........................................................................... 6

*Grosdidier v. Chairman, Broadcasting Bd. of Governors,*
    560 F.3d 495 (D.C. Cir. 2009)........................................................................ 10, 11

*Gunn v. Minton,*
    568 U.S. 251 (2013) ............................................................................................. 5

iii

*Hall v. Ford*,
  856 F.2d 255 (D.C. Cir. 1988)........................................................................................... 19

*Holcomb v. Powell*,
  433 F.3d 889 (D.C. Cir. 2006)............................................................................................. 8

*Humphrey's Executor v. United States*,
  295 U.S. 602 (1935) ........................................................................................... 13, 14, 15

*Jerome Stevens Pharms., Inc. v. FDA*,
  402 F.3d 1249 (D.C. Cir. 2005)........................................................................................... 6

*Johnson v. Lightfoot*,
  273 F. Supp. 3d 278 (D.D.C. 2017).................................................................................. 22

*Kalaris v. Donovan*,
  697 F.2d 376 (D.C. Cir. 1983)..................................................................................... 13, 16

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ............................................................................................................ 5

*Kowal v. MCI Communications Corp.*,
  16 F.3d 1271 (D.C. Cir. 1994)............................................................................................. 7

*Lewis v. Gov't of the D.C.*,
  161 F. Supp. 3d 15 (D.D.C. 2015)............................................................................... 18, 20

*Lucia v. SEC*,
  138 S. Ct. 2044 (2018)......................................................................................................... 9

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................................................................ 6

*Morrison v. Olson*,
  487 U.S. 654 ...................................................................................................................... 17

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) .......................................................................................................... 19

*Myers v. United States*,
  272 U.S. 52 (1926) ............................................................................................................ 16

*National Treasury Employees Union v. Reagan*,
  663 F.2d 239 (D.C. Cir. 1981)........................................................................................... 12

*Nyunt v. Chairman, Broadcasting Bd. of Governors*,
  589 F.3d 445 (D.C. Cir. 2009)..................................................................................... 10, 11

*Palacios v. Spencer*,
  906 F.3d. 124 (D.C. Cir. 2018).......................................................................................... 22

*Papasan v. Allain*,
  478 U.S. 265 (1986) ............................................................................................................ 7

*Parsons v. United States*,
  167 U.S. 324 ...................................................................................................................... 16

*PHH Corp. v. Consumer Financial Protection Bureau*,
  881 F.3d 75 (D.C. Cir. 2018)............................................................................................. 14

*Pievsky v. Ridge*,
  98 F.3d 730 (3d. Cir. 1996) ............................................................................................... 14

*Proctor v. District of Columbia*,
  74 F. Supp. 3d 436 (D.D.C. 2014)....................................................................................... 8

*Sagar v. Lew*,
  211 F. Supp. 3d 262 (D.D.C. 2016).................................................................................... 11

iv

*Steadman v. Governor*,
   918 F.2d 963 (D.C. Cir. 1990)..............................................................................11
*Talavera v. Shah*,
   638 F.3d 303 (D.C. Cir. 2011)..............................................................................8
*Terrill v. Merit Sys. Prot. Bd.*,
   610 Fed. Appx. 982 (Fed. Cir. 2015)..................................................................21
*United States v. Fausto*,
   484 U.S. 439 (1988) ......................................................................................10, 11
*Vesser v. Office of Personnel Management*,
   29 F.3d 600 (Fed. Cir. 1994) ..............................................................................21
*Ward v. D.C. Dep't of Youth Rehab Servs.*,
   768 F. Supp. 2d 117 (D.D.C. 2011) ......................................................................7
*Wiener v. United States*,
   357 U.S. 349 (1958) ......................................................................13, 15, 16, 17

## Statutes

5 U.S.C. 3323 .............................................................................................................3, 20
5 U.S.C. 3323(b)(1) .................................................................................................*passim*
5 U.S.C. § 3161(b)(3) ........................................................................................................9
5 U.S.C. § 7511-13 ..........................................................................................................10
5 U.S.C. § 7511(b)(4) ......................................................................................................11
5 U.S.C. § 7703(a)(1) ......................................................................................................11
5 U.S.C. §§ 7512 ..............................................................................................................11
28 U.S.C. § 1295(a)(9).....................................................................................................11
28 U.S.C. § 1346 ..............................................................................................................21
28 U.S.C. § 1346(a)(2)................................................................................................2, 22
Pub. L. No. 115-232..........................................................................................................2

## Rules

Fed. R. Civ. P. 56(a) ..........................................................................................................7
Fed. R. Civ. P. 56(b) ..........................................................................................................8
Federal Rule of Civil Procedure 12(b)(1) ........................................................................1
Federal Rule of Civil Procedure 12(b)(6) ...........................................................1, 6, 7, 19
Federal Rule of Civil Procedure 56 ...................................................................................7

## Other Authorities

164 Cong. Rec. S6929 .......................................................................................................2
*Applicability of 18 U.S.C. § 208 to National Gambling Impact Study Comm'n*,
   23 Op. O.L.C. 29 (1999)....................................................................................16
*Removal of Members of the Commission on the Northern Mariana Islands*,
   7 Op. O.L.C. 95 (1983).......................................................................................16

Most federal employment cases do not involve a Senator and the President of the United States. This one does. However, despite its unusual cast, the script is the same. Plaintiff is a federal employee who lost his job and seeks redress, but does so in an improper forum and with an insufficient complaint. This Court should dismiss this lawsuit.

## INTRODUCTION

Plaintiff, formerly a member of the National Commission on Military Aviation Safety ("the Commission"), contends he was "illegally terminated" from the Commission. See Compl. ¶ 7. See also *id.* ¶ 23. But all of his claims depend on the erroneous assertion that he could only be removed from the Commission for "malfeasance or misfeasance." *Id.* ¶ 27. In actuality, Plaintiff served as an "at-will" employee, subject to removal by the appointing authority. For several reasons, this status is fatal to Plaintiff's complaint.

First, if Plaintiff has an employment right to assert, it is not here. More specifically, as a federal employee in the excepted service, Plaintiff is precluded by the Civil Service Reform Act ("CSRA") from challenging his dismissal before this Court. Accordingly, this Court should dismiss Plaintiff's complaint for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

Second, Plaintiff's complaint fails to state a proper claim for relief because Senator Reed, who appointed him to the Commission, also had the authority to remove him. The statute that gave the power of appointment neither limited this power nor prohibited its revocation. As such, this Court should dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Third, Plaintiff's at-will employment defeats the due process claim that he, in any case, fails to adequately plead. It, too, fails under Rule 12(b)(6).

Fourth, Plaintiff's complaint fails for yet another reason that mandates dismissal.  He was a reemployed annuitant who, under 5 U.S.C. 3323(b)(1), "serve[d] at the will of [his] appointing authority," Senator Reed.  *Id.*  As such, summary judgment is appropriate under Rule 56.

Finally, having submitted money claims in excess of this Court's jurisdictional ceiling under the so-called Little Tucker Act, 28 U.S.C. § 1346(a)(2), Plaintiff must look elsewhere to prosecute his claim for monetary relief.  *See*, *e.g.*, *Daniels v. United States*, 947 F. Supp. 2d 11, 18 (D.D.C. 2013) (citation omitted).

## BACKGROUND

### I.  Plaintiff's Appointment to National Commission on Military Aviation Safety

Congress created the National Commission on Military Aviation Safety in the John S. McCain National Defense Authorization Act for Fiscal Year 2019 ("NDAA").  *See* Pub. L. No. 115-232, § 1087, 132 Stat. 1636, 1992-96 (2018).  The Commission mandate is "to examine and make recommendations with respect to certain United States military aviation mishaps."  *Id*. § 1087(a)(2).  The Commission is required to submit a report "to the President and the congressional defense committees."  *Id*. § 1087(h)(2).

The Commission is comprised of eight members, all of whom are federal employees.  *Id*. § 1087(b)(1), (b)(7).  Four members are appointed by the President and four by specific members of Congress serving enumerated roles.  *Id*. § 1087(b)(1).  One appointment is made by the Ranking Member of the Senate Armed Services Committee.  *Id*. § 1087(b)(1)(C).  In this capacity, Senator Jack Reed appointed Plaintiff to the Commission on November 13, 2018.  *See* 164 Cong. Rec. S6929 (daily ed. Nov. 13, 2018).

## II.   Plaintiff's Status as a Reemployed Annuitant

Although the Commission previously met and selected a Chairman, all Commission members were sworn into their positions on April 22, 2019.  Declaration of Gregory Feest (Mar. 10, 2020) ¶ 3 (attached hereto as Exhibit A).  That same day, they were enrolled into the pay system.  *Id.*  Based on their annuity payments for prior civil service, four Commission members, including Plaintiff, were subject to a salary offset.  Declaration of Jamie Hammon (Mar. 10, 2020) ¶ 3 (attached hereto as Exhibit F).

On April 29, 2019, the Commission Budget Analyst contacted these four Commission members to request their annuity numbers.  *Id.*  The Budget Analyst explained this information would help "complete waivers so your federal service annuity payments will not be offset by your [Commission] employment."  *Id.*; Emails between Hammon and Plaintiff (attached hereto as Exhibit G).  In response, Plaintiff submitted his annuity number.  *Id.*

On June 20, 2019, OPM approved the Commission's "request to waive the dual compensation reduction (salary off-set)" for the four Commission members.  Letter, Office of Professional Management (June 20, 2019) (attached hereto as Exhibit I).  In approving the request, OPM noted that "[r]eemployed annuitants *serve at the will of the appointing official*, per 5 U.S.C. 3323."  *Id.* (emphasis added).  A copy of OPM's approval letter was sent to Plaintiff on June 26, 2019.  Declaration of Stefan Wolfe (Mar. 10, 2020) ¶ 5 (attached hereto as Exhibit H); Emails between Wolfe and Plaintiff (attached hereto as Exhibit J).

## III.   Plaintiff's Removal from the Commission

On October 22, 2019, the Commission held a meeting attended by multiple military services.  In November 2019, the Commission received complaints from the U.S. Army and U.S. Air Force regarding Plaintiff's conduct during this meeting.  Email, U.S. Army Director of

3

Safety (Nov. 20, 2019) (attached hereto as Exhibit B); Letter, U.S. Air Force Chief of Safety (Nov. 19, 2019) (attached hereto as Exhibit C).

More specifically, the Director of Army Safety said he received "multiple" reports of Plaintiff's "disrespectful" and "badgering" conduct towards one of the Army's senior officers. Exhibit B.  The Director noted this officer "reported Dr. Mapes' behavior to me, as did multiple other participants present at the 22 October meeting."  *Id*.  The Director added that such behavior "tarnish[es] the reputation of the commission."  *Id*.  Based on Plaintiff's actions, the Director said, "I feel it is in the best interest of [the Commission]and the Army that Dr. Mapes not visit Army units and cease further interaction with my staff."  *Id*.

The Air Force Chief of Safety expressed similar sentiments, describing Plaintiff as "extremely unprofessional in his interactions to the point that communications in the forum were impacted."  Exhibit C.  He also stated his concern "about the impact [Plaintiff] might have at an installation if he were to continue to display similar behavior while interacting with local personnel."  *Id*.

Following these complaints, the Commission formally recommended to remove Plaintiff from the Commission; on January 7, 2020, Senator Reed agreed.  Letter, Senator Jack Reed (Jan. 7, 2020) (attached hereto as Exhibit D).  Three days later, President Trump concurred with Senator Reed's decision.  Letter, Director of Presidential Personnel (Jan. 10, 2020) (attached hereto as Exhibit E).

### IV.    Plaintiff's Post-Removal Claims for Pay

Notwithstanding his removal, Plaintiff continued submitting claims for pay.  Declaration of Jamie Hammon (Mar. 10, 2020) ¶¶ 6, 8, 9 (attached hereto as Exhibit K).  Members of the Commission determine their own hours, and submit claims to the Commission Budget Analyst to

receive pay.  *Id*. ¶ 4.  In January 2020, Plaintiff claimed he worked 16 days for the Commission

after his removal.  *Id*. ¶¶ 6, 8.  In February 2020, Plaintiff claimed an additional 10 days of work.

*Id*. ¶ 9.  As Plaintiff is paid at the rate of $638.24 per day, his post-removal pay claims currently

exceed $16,000.  *Id*. ¶ 10.

### V.      **Plaintiff's Complaint**

On January 28, 2020, Plaintiff filed this suit against Senator Reed and the Chairman of

the Commission, Richard Cody.[1]  ECF No. 1.  In his complaint, Plaintiff asserts that Senator

Reed "illegally removed" him from the Commission, Compl. ¶ 23, and Chairman Cody "directed

the administrative actions that removed [Plaintiff] from the Commission's records."  *Id.* ¶ 6.  In

arguing that he was illegally removed, Plaintiff asserts Senator Reed did not have the authority to

remove him from the Commission because "[t]here has been no indication that [Plaintiff]

committed malfeasance or misfeasance during his tenure as Commissioner."  *Id.* ¶ 21-22.

Plaintiff asks this Court to "order that he be reinstated to his position," *id.* ¶ 29, and "order

payment for the work he performed for the Commission after January 7, 2020."  *Id.* ¶ 30.

### **LEGAL STANDARDS**

### I.      **Dismissal Pursuant to Rule 12(b)(1):  Lack of Subject Matter Jurisdiction**

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power

authorized by Constitution and statute.'"  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  A court has an

"affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."

---

[1] At the same time Plaintiff filed suit, he also filed motions for a temporary restraining order and
for a preliminary injunction to bar Senator Reed from appointing, and the Commission from
seating, a replacement member.  ECF Nos. 2, 3.  As Senator Reed has committed to making no
such appointment during the pendency of this litigation, these motions were dismissed without
prejudice after a conference call with the parties and the Court.  Minute Order, Feb. 11, 2020.

*Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).

Simply put, "[a]bsent subject matter jurisdiction over a case, the court must dismiss it."

*Coleman v. Napolitano*, 65 F. Supp. 3d 99, 102 (D.D.C. 2014) (citation omitted).

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of proving that the court has subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). As such, "'the plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police*, 185 F. Supp. 2d at 13-14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)). In determining jurisdiction, "the district court may consider materials outside the pleadings." *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## II.     Dismissal Pursuant to Rule 12(b)(6):  Failure to State a Claim

On a Rule 12(b)(6) motion, the court must dismiss a claim if plaintiff's complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). The focus is on the language in the complaint, and the requirement that the plain statement possess "enough heft" to show that the pleader is entitled to relief. *Twombly*, 550 U.S. at 557.

"[A] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court need not, however, "accept

6

inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Iqbal*, 556 U.S. at 678-79 (legal conclusions are "not entitled to the assumption of truth").

In other words, a pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Moreover, for a plaintiff to survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

For a Rule 12(b)(6) motion, a district court "may consider 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint,' or 'documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss.'" *Ashbourne v. Hansberry*, 245 F. Supp. 3d 99, 103 (D.D.C. 2017), *aff'd*, 894 F.3d 298 (D.C. Cir. 2018) (quoting *Ward v. D.C. Dep't of Youth Rehab Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011)) (internal quotation marks omitted). "The court may also consider documents in the public record of which the court may take judicial notice." *Id.* (citing *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007)).

### III.     Dismissal Pursuant to Rule 56: Indisputable Status as Reemployed Annuitant

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986);

*Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).  A dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.  A fact is "material" if it is capable of affecting the substantive outcome of the litigation.  *Id.*; *Holcomb*, 433 F.3d at 895.

When ruling on a motion for summary judgment, "the evidence is to be viewed in the light most favorable to the nonmoving party and the court must draw all reasonable inferences in favor of the nonmoving party." *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011).  But "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Liberty Lobby*, 477 U.S. at 248.

Although dismissal is warranted under both Rule 12(b)(1) for lack of subject-matter jurisdiction and under Rule 12(b)(6) for failure to state a claim, this Court may also rule in the alternative for summary judgment, if the Court must resort to undisputed facts outside the four corners of the complaint.  *See Proctor v. District of Columbia*, 74 F. Supp. 3d 436, 448 (D.D.C. 2014).  A party may move for summary judgment at any time, from the pre-discovery stage until 30 days after the close of discovery, unless a local rule or court order provides otherwise.  Fed. R. Civ. P. 56(b).

Here, based on conclusive evidence that Plaintiff is a reemployed annuitant, and because 5 U.S.C. §3323(b)(1) codifies that reemployed annuitants serve at the will of the person who appointed them, and because Plaintiff will have the opportunity to respond to this motion, this Court can convert this motion to summary judgment without further notice.  *Proctor*, 74 F. Supp. 3d at 448.

## ARGUMENT

Because Plaintiff's removal was an adverse action governed by the CSRA, this Court lacks jurisdiction to hear it.  Moreover, because Plaintiff was an at-will federal employee, subject to removal without cause, he fails to state a claim.  Likewise, because Plaintiff was a reemployed annuitant, who therefore served "at the will of [his] appointing authority," the complaint is also subject to dismissal on summary judgment.  *See* 5 U.S.C. § 3323(b)(1).

### I.      **This Court Lacks Subject-Matter Jurisdiction, as Plaintiff's Suit is Precluded by CRSA**

As a federal employee in the excepted service, Plaintiff's challenge to his termination is subject to dismissal on jurisdictional grounds because it is precluded by the CSRA.

### A.      **Commission members are federal employees in the excepted service**

Plaintiff is a former member of the Commission.  Although Plaintiff ignores it, the threshold question governing resolution of his complaint is whether members of the Commission are either "'Officers of the United States' or simply employees of the Federal Government." *Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018) (quoting Art. II, § 2, cl. 2).  It is beyond dispute that the NDAA, which created the Commission, deems "members of the Commission" to be "Federal employees."  *See* § 1087(b)(7).

Having established that Plaintiff was a federal employee, the next question is what *type* of employee.  Here, again, the NDAA supplies the answer: members of the Commission are federal employees in the excepted service.  Specifically, the Commission is "a temporary organization under section 3161 of [title 5]."  § 1087(a)(1).  Employees of temporary organizations "are in the excepted service of the civil service."  5 U.S.C. § 3161(b)(3).

As such, during his time on the Commission, Plaintiff served as a federal employee in the excepted service.

9

B.      **As a federal employee, Plaintiff must pursue his grievance under the CSRA**

In his complaint, Plaintiff does not address his status as an employee in the excepted service, nor address whether he is entitled to certain remedies under the CSRA.  *See* 5 U.S.C. § 7511-7513.

The CSRA provides "a comprehensive system for reviewing personnel action taken against federal employees."  *United States v. Fausto*, 484 U.S. 439, 455 (1988).  The CSRA "replaced the patchwork system with an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of various categories of federal employees with the needs of sound and efficient administration."  *Id.* at 445.  The law "protects covered federal employees against a broad range of personnel practices, and it supplies a variety of causes of action and remedies to employees when their rights under the statute are violated."  *Grosdidier v. Chairman*, *Broadcasting Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009).  Essentially, the CSRA "prescribes in great detail the protections and remedies applicable to [adverse employment] action[s], including the availability of administrative and judicial review."  *Fausto*, 484 U.S. at 443.

Plaintiff's complaint is no different than any other federal employee's demand for review of the propriety of his termination.  As this Circuit has made clear, the path for review through the CSRA is "*exclusive*: It constitutes *the* remedial regime for federal employment and personnel complaints."  *Nyunt v. Chairman, Broadcasting Bd. of Governors*, 589 F.3d 445, 448 (D.C. Cir. 2009) (first emphasis added); *Grosdidier,* 560 F.3d at 497.  "Given the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions, it is fairly discernible that Congress intended to deny such employees an

10

additional avenue of review in district court." *Elgin v. Department of the Treasury*, 567 U.S. 1, 11-12 (2012).

Like all other federal employees, Plaintiff must seek review of his termination at the MSPB unless some separate, express statutory remedy is provided. *See, e.g.*, 5 U.S.C. §§ 7512, 7513(d). *See also Steadman v. Governor*, 918 F.2d 963, 965 (D.C. Cir. 1990); *deLeon v. Wilkie*, 2020 U.S. Dist. LEXIS 5908, *8-12 (D.D.C. 2020) ("Plaintiff, moreover, cannot escape this requirement by characterizing his disputes as constitutional.") (citation omitted)). And, if the MSPB rules against him, he may then seek judicial review in the Federal Circuit. *See* 5 U.S.C. § 7703(a)(1), (b)(1); 28 U.S.C. § 1295(a)(9).[2]

In sum, Plaintiff's complaint is subject to the CSRA's exclusive remedial scheme for obtaining judicial review of his removal from this Court. Accordingly, this Court lacks subject matter jurisdiction over Plaintiff's claims.[3]

---

[2] As explained *infra* in Section IV, Plaintiff is a reemployed annuitant, and such employees are categorically excluded from certain protections and provisions. *See* 5 U.S.C. § 7511(b)(4) (stating "[t]his subchapter does not apply" to reemployed annuitants). Even if the CSRA provides no remedy, that does not alter Congress' choice to make the CSRA the exclusive means of judicial review of terminations like Plaintiff's. The Supreme Court has made clear that CSRA preclusion applies even where the CSRA would provide no relief. *See Elgin*, 567 U.S. at 11-15. *See also Fausto*, 484 U.S. at 443, 454. And, as this Circuit has "repeatedly said, 'what you get under the CSRA is what you get.'" *Nyunt*, 589 F.3d at 449 (quoting *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1010 (D.C. Cir. 2009)); *Grosdidier*, 560 F.3d at 497 ("[T]he CSRA is the exclusive avenue for suit even if the plaintiff cannot prevail in a claim under the CSRA"); *Sagar v. Lew*, 211 F. Supp. 3d 262, 268-69 (D.D.C. 2016) (acknowledging that "relief may not have been available" under the CSRA, but "this fact does not affect the Court's analysis").

[3] As discussed below, even if this Court reaches Plaintiff's constitutional claims, no such claim is properly pled. *See infra* Section III.

II.     **Plaintiff Fails to State a Claim, as his Removal did not Violate NDAA § 1087**

Plaintiff seeks reinstatement to his position on the Commission, claiming he was "illegally removed." Compl. ¶¶ 23, 29.  He was not.  As Plaintiff served at the will of Senator Reed, his removal was lawful, and this Court should dismiss his claim pursuant to Rule 12(b)(6).

A.     **Absent statutory guidance, an appointing officer may remove an appointee at-will**

Plaintiff does not assert that anyone other than Senator Reed was the proper removal authority.  Nor could he.  "[T]he power to remove is held by the appointing authority, and only by the appointing authority.  Absent relevant legislation, this continues to be the rule to the present day." *National Treasury Employees Union v. Reagan*, 663 F.2d 239, 247 (D.C. Cir. 1981) (citation omitted).

Plaintiff's assertion that Senator Reed could remove him only for "malfeasance or misfeasance" does not withstand scrutiny.  Compl. ¶ 27.  Nowhere in the NDAA does such a standard appear.  To the contrary, as Plaintiff twice concedes, the NDAA is silent as to the terms under which a member can be removed.[4]  Consequently, Senator Reed could remove Plaintiff at-will.

This is hardly surprising.  "It has become a settled principle that government employment, in the absence of legislation, can be revoked at the will of the appointing officer." *Cafeteria & Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 896 (1961) (citations omitted); *see also Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 509 (2010) ("Under the traditional default rule, removal is incident to the power of

---

[4] Compl. ¶ 13 ("No provision was made in [the NDAA] for the removal of a commissioner."); ¶ 27 ("[T]he statute that formed the [Commission] provided no basis for the removal of a commissioner.").

appointment"); *Carlucci v. Doe*, 488 U.S. 93, 99 (1988) ("[A]bsent a specific provision to the contrary, the power of removal from office is incident to the power of appointment.") (citations and internal quotation marks omitted); *Kalaris v. Donovan*, 697 F.2d 376, 389 (D.C. Cir. 1983).

This case follows the general rule.  Given the power to appoint one of Congress' four slots on the Commission, Senator Reed also enjoyed the power to remove this appointee.  The NDAA expresses no contrary limitation – neither by the statute's express terms, nor its legislative history – a point that Plaintiff twice concedes.  Compl. ¶¶ 13, 27.  These concessions negate Plaintiff's claim that he was "illegally removed" from the Commission.  *Id.* ¶ 23.  As such, the powerful presumption in favor of an unfettered power to remove applies.[5]

**B.    *Humphrey's Executor* and *Wiener* are legally and factually distinguishable**

Despite acknowledging the NDAA's silence about the removal of Commission members, Plaintiff asserts that "malfeasance or misfeasance" was required before Senator Reed could lawfully remove him.  Compl. ¶ 27.  To support this proposition, Plaintiff, a mere *employee*, cites to two cases involving *officers* of the United States who were nominated by the President and confirmed by the Senate: *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), and *Wiener v. United States*, 357 U.S. 349 (1958).  See *id.* ¶¶ 24-26.  Such a comparison is constitutionally inapt.

---

[5] The complaint's assertion (¶ 11) that Commission members were to be appointed "for the life of the Commission" does not alter the conclusion that the NDAA is silent about removal. Neither logic, nor the non-existent legislative history, supports the conclusion that Congress intended to limit its own members' removal authority.  Here, where the appointment was given to a member of Congress itself, such an inference would be even more strained.  In any case, as further discussed below, *infra*, at 16-17, a reference to appointment "for the life of the Commission" does not create a limitation on removal.  Rather, it merely establishes that an appointee may continue to serve to the conclusion of the Commission without reappointment, unless removed.  As such, it has no bearing on Senator Reed's removal power.

Indeed, as Plaintiff was appointed by Senator Reed, he *cannot* be an officer of the United States. *See* U.S. Const. art. II, § 2, cl. 2. This, by itself, is a critical distinction. Simply put, these two cases, involving the removal of officers of the United States, are wholly inapplicable to whether Plaintiff, a federal employee, can be terminated from the Commission. Plaintiff's case is instead governed by the statutes, authorities, and precedent related to federal employees. However, even apart from the officer/employee distinction, both *Humphrey's Executor* and *Wiener* are readily distinguishable on additional grounds.

For example, in *Humphrey's Executor*, the statute at issue provided that an appointed member of the Federal Trade Commission could only be terminated for "inefficiency, neglect of duty, or malfeasance in office." 295 U.S. at 620 (citing 15 U.S.C. § 41). In other words, *Humphrey's Executor* was a case where the statute was *not* silent on the appointing authority's removal power; Congress enumerated specific limits on the President's removal powers, and the President's termination of Humphrey violated those limits. *Id*. at 626; *see also Pievsky v. Ridge*, 98 F.3d 730, 735 (3d. Cir. 1996) ("The statute at issue in *Humphrey's Executor* contained clear language limiting the removal authority of the President."). By contrast, in this case (and as Plaintiff acknowledges), the NDAA is silent as to removal. Compl. ¶¶ 13, 27. Consequently, Plaintiff's reliance on *Humphrey's Executor* is significantly misplaced.

Furthermore, while *Humphrey's Executor* addressed the constitutionality of statutory limits on the President's removal power, its holding was limited. The Court upheld the restriction on removal because the Federal Trade Commission exercised "quasi-judicial" and "quasi-legislative" powers that supported its need to act "free of executive control." *Id.* at 628. This is a key limitation. As this Circuit recently noted, "courts have uniformly understood *Humphrey's Executor* to support the constitutionality of for-cause removal protection for the

14

current FTC and certain other agencies with rulemaking and enforcement powers." *PHH Corp. v. Consumer Financial Protection Bureau*, 881 F.3d 75, 94 (D.C. Cir. 2018) (citation omitted). Here, the Commission has no such powers. The difference in the respective powers between the Federal Trade Commission and this Commission is a difference in kind, not merely degree. Plaintiff's reliance on *Humphrey's Executor* is again misplaced.

*Wiener* is also readily distinguishable. Although the Court did not find an express limitation on the President's removal right – as was found in *Humphrey's Executor* – it found a strong basis for an implied limitation on the President's removal power for members of the War Claims Commission. 357 U.S. at 353-56. In reaching that conclusion, the *Wiener* Court relied on numerous factors not present here.

First, the *Wiener* Court focused on "the most reliable factor for drawing an inference regarding the president's power of removal," namely, "the nature of the function that Congress vested in the [Commission]." *Id.* at 353. In its analysis, the Court explained that the War Claims Commission was a quasi-judicial body exercising a mix of executive and judicial functions, and needed to be "'entirely free from the control or coercive influence' of either the Executive or the Congress." *Id.* at 355-56 (quoting *Humphrey's Executor*, 295 U.S. at 629). By contrast, in this case, the Commission has the sole task of writing a report to the President and Congress.

Second, the *Wiener* Court heavily relied on the legislative history of the relevant statute to infer a limitation on removal power. *Id.* at 354-55. At one point, the Court even wrote "[t]he history of this legislation ***emphatically*** underlines" the intent of Congress regarding the War Claims Commission. *Id.* at 354 (emphasis added). In this case, there is no such legislative history – emphatic or otherwise – and Plaintiff points to none.

15

Third, in *Wiener*, the Court's analysis focused on whether Congress intended to bind the President (*i.e.*, the lone removal authority), despite its statutory silence.  In this case, several members of Congress themselves are removal authorities.  Under such circumstances, and "in the face of statutory silence," Senator Reed had the authority to remove Plaintiff at his discretion. *Kalaris*, 697 F.2d at 389.  To find otherwise would invert the long-standing rule that the power to appoint is the power to remove, and impose a limitation on Members of Congress that Congress itself never clearly intended.  See *supra* at 12-13.

Each of these points stand alone, but they also collectively spotlight a more fundamental point about *Wiener's* insufficiency in supporting Plaintiff's claim.  While the statute at issue in *Wiener* stated each commissioner's tenure was limited by "the Commission's life," *id*. at 350, this language was barely a factor in the Court's analysis.  *Id.*  If such language was not sufficient to establish a removal limitation in *Wiener*, then Plaintiff cannot rely on that language here.  Rather, as in *Wiener*, Plaintiff must point to affirmative demonstrations that Congress intended to limit the removal authority of the appointing officials.  Any other result would collapse the analytical weight of the Court's decision into irrelevancy.

In context, the provision for appointment for life of the Commission does not establish a limit on removal, but merely establishes that an appointee may serve to the conclusion of the Commission without reappointment, unless removed.  *See, e.g.*, *Parsons v. United States*, 167 U.S. 324, 337-43 (finding no limit on President's removal power of U.S. Attorney despite four-year statutory term); *Myers v. United States*, 272 U.S. 52 (1926) (finding President had power to remove postmaster, who was appointed for a four-year term, at his discretion); *see also Removal of Members of the Commission on the Northern Mariana Islands*, 7 Op. O.L.C. 95, 100 n.7 (1983) (noting that a term of office is not a limit on removal but is "interpreted as providing a

16

limit on the period for which an appointee can serve without reappointment"); *Applicability of 18 U.S.C. § 208 to National Gambling Impact Study Comm'n*, 23 Op. O.L.C. 29, 35-38 (1999) (concluding that members of a study commission appointed by President and by Congress "for the life of the commission" did not have removal protection).

Lastly, in addition to being individually distinguishable from this case, *Humphrey's Executor* and *Wiener* are also jointly distinguishable for two additional reasons.

First, both cases must be read in light of the more recent Supreme Court proclamation that, "It has become a settled principle that government employment, in the absence of legislation, can be revoked at the will of the appointing officer." *Cafeteria Workers*, 367 U.S. at 896 (citations omitted).

Second, both cases involve separation of powers issues regarding the removal of Officers. As *Wiener* recognized, the question of Congress's power to control the President's removal authority is long-standing: "[c]ontroversy pertaining to the scope and limits of the President's power of removal fills a thick chapter of our political and judicial history," and "[f]ew contests between Congress and the President have so recurringly had the attention of Congress as that pertaining to the power of removal." 357 U.S. at 351, 353. Whether this limit was explicit (*Humphrey's Executor*) or implicit (*Wiener*), both cases involved a battle over the powers of the legislative and executive branches. By contrast, in this case, the legislative and executive branches are in harmony, as President Trump concurred with Senator Reed's decision. Exhibit E. In other words, *both* branches agreed that Plaintiff needed to be removed from the Commission.[6]

---

[6] Justice Scalia famously noted that certain cases are tussles for power between the legislative and executive branches, which come to the Court as a wolf dressed in sheep's clothing. *Morrison v. Olson*, 487 U.S. 654, 697-99 (1988) (dissenting). This case, however, is *not* a case

In sum, Plaintiff identifies nothing in the statute that would be a basis for departing from the long-standing rule that the power to appoint includes the power to remove, and neither *Humphrey's Executor* nor *Wiener* provides any legal ground for creating such a limitation.

### III.   Plaintiff Fails to State a Due Process Claim

Plaintiff alleges that he "was never provided due process before his illegal removal," Compl. at 1 (Introduction), but does not provide fair notice over what he means. *See Lewis v. Gov't of the D.C.*, 161 F. Supp. 3d 15, 30 (D.D.C. 2015) ("[Plaintiff] never provides fair notice of what she means when she invokes 'due process' in her complaint. And, as a consequence, she offers no plausible basis for stating a [due process] claim."). Assuming this phrase invokes procedural due process, Plaintiff fails to state a proper claim for relief under Rule 12(b)(6).

To assess the sufficiency of a Fifth Amendment procedural due process claim, "this Court must 'apply a familiar two-part inquiry': it must determine whether the facts alleged, if true, would establish (1) that 'plaintiffs were deprived of a protected interest, and, if so,' (2) that they failed to 'receive[] the process they were due.'" *Eagle Trust Fund v. United States Postal Serv.*, 365 F. Supp. 3d 57, 69 (D.D.C. 2019) (quoting *Barkley v. United States Marshals Serv. ex rel. Hylton*, 766 F.3d 25, 31 (D.C. Cir. 2014) (internal quotation marks and citation omitted).

In this case, Plaintiff's complaint fails to state a due process claim because: (1) Plaintiff has no property interest in his continued employment, and (2) Plaintiff alleges no lack of process.

### A.   At-will employees have no property interest in their continued employment

As explained in Section II, *supra*, Plaintiff could be removed at the will of Senator Reed.[7] In this Circuit, such employees have no property interest in their continued employment:

---

where the judiciary is being asked to resolve a dispute between the political branches of government. This sheep comes as a sheep.

[7] Section IV, *infra*, also explains that Plaintiff was an at-will employee because of his status as a reemployed annuitant.

> Most cases involving government employees fall into one of two categories: terminable at will or terminable only for cause.  Those who are terminable at will have no property interest because there is no objective basis for believing that they will continue to be employed indefinitely.

*Hall v. Ford*, 856 F.2d 255, 265 (D.C. Cir. 1988).

As Plaintiff had no property interest in his continued employment with the Commission, he fails to state a proper claim regarding a lack of procedural due process.

### B.  <u>Plaintiff fails to allege that he received a lack of process</u>

Even assuming that Plaintiff had a property interest in his continued employment, his complaint does not address whether he received notice or an opportunity to be heard prior to his removal.  "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).

In *Eagle Trust Fund,* the court was asked to determine whether the plaintiff received due process regarding a change of address by the Post Office.  365 F. Supp. 3d at 69.  Dismissal was warranted because, even assuming that the Post Office had deprived the plaintiff of a property interest, the complaint "allege[d] no facts supporting their contention that they did not receive the process they were due."  *Id.* (internal quotations and citations omitted).

Here, Plaintiff's complaint incorporates three documents: (1) the email from the Director of Army Safety on November 18, 2019; (2) the letter from by the Air Force Chief of Safety on November 19, 2019; and (3) the letter from Senator Reed on January 7, 2020.[8]  Plaintiff's complaint, however, is silent on what process he received before his removal.

---

[8] As these documents are squarely referenced in Plaintiff's complaint, they may properly be considered by this court under a Rule 12(b)(6) motion.  *See, e.g.*, *Ashbourne*, 245 F. Supp 3d at

For example, the complaint fails to allege whether, in the period between the military services' complaints and his removal, Plaintiff received notice or an opportunity to be heard. Notably, Senator Reed's letter said he "accept[s] the recommendation of the other Commissioners."  Exhibit D.  Plaintiff fails to allege any lack of notice that he was being recommended for removal, or that he lacked an opportunity to be heard before this recommendation was accepted.

In other words, it is not that Plaintiff's facts are conclusory, or that they are legal conclusions dressed up as factual conclusions.  Instead, Plaintiff simply makes *no* claim as to the process he received, one way or the other.  As this Court has previously held, under Rule 12(b)(6), this is a fatal omission.  *See Lewis*, 161 F. Supp. 3d at 31 ("Because it is devoid of allegations as to the actual process purportedly denied [Plaintiff], the Amended Complaint does not raise [her] procedural due process claim above the speculative level to the realm of plausibility.") (citations and internal quotation marks omitted).

## IV.   As a Reemployed Annuitant, Plaintiff served at the will of Senator Reed

Plaintiff's status as a "reemployed annuitant" who "serve[d] at the will of the appointing official, per 5 U.S.C. 3323" is also fatal to his complaint.  *See* Exhibit I.

This language used by OPM in its letter granting Plaintiff's offset waiver was not loose or imprecise – in fact, it was lifted directly from the statute.  *See* 5 U.S.C. § 3323(b)(1) (stating that re-employed annuitants, with one exception related to administrative law judges, serve "at the will of the appointing authority").  "[W]hether or not a reemployed annuitant falls within §

---

103.  In apparent scrivener's errors, Plaintiff dates the Air Force letter as being sent on "November 19, 2020," and the Army email as being sent on "November 20, 202 [sic]."  Compl. ¶¶ 16, 17.  Plaintiff describes the correspondence as having "non-specific" complaints about him. *Id.*  While the Defendant would disagree with that characterization, it is not necessary for the Court to resolve that dispute to rule on this motion.

3323(b)(1) turns on whether the individual continues to receive an annuity upon reemployment."

*Terrill v. Merit Sys. Prot. Bd.*, 610 Fed. Appx. 982, 983 (Fed. Cir. 2015) (per curiam) (citing

*Vesser v. Office of Personnel Management,* 29 F.3d 600, 604 (Fed. Cir. 1994)).  This simple test

accounts for the "plain words of the statute," and covers all employees who "continued

'receiving annuity' upon [their] reemployment."  *Id*. at 984 (citing 5 U.S.C. § 3323(b)(1));

*Vesser*, 29 F.3d at 604).

　　　In analyzing 5 U.S.C. § 3323(b)(1), the Federal Circuit has firmly and consistently

affirmed that employees receiving an annuity are removable "at will."  *See, e.g.*, *Terrill*, 610 Fed.

Appx. at 983-84; *Vesser*, 29 F.3d at 604-05; *Delalat v. Dep't of the Air Force*, 557 F.3d 1342,

1345 (Fed. Cir. 2009) ("By the express language of § 3323, a reemployed annuitant is an at-will

employee—that is, the reemployed annuitant may be terminated with or without cause.").

　　　In this case, Plaintiff: (1) was identified as an annuitant, (2) learned that the Commission

would be seeking a waiver from OPM to avoid a salary offset, (3) provided his annuity account

number to the Commission Budget Analyst, and (4) received an OPM letter that precisely

described his status as  a "reemployed annuitant" who "serve[d] at the will of the appointing

official."

　　　In sum, based on his "at-will" status, Plaintiff's contention that "Senator Reed did not

have the authority . . . to terminate Dr. Mapes' status as a commissioner" is legally incorrect.

Compl. ¶ 22.  As such, it must fail.

### V.　　**Plaintiff's Claim under the Little Tucker Act should be Dismissed**

　　　For his pay claim, Plaintiff asserts this court "has jurisdiction pursuant to 28 U.S.C. §

1346 (the 'Little Tucker Act')" and "requests that this Court order payment for work he

performed for the Commission after January 7, 2020."  Compl. ¶¶ 6, 30.  This Court should

dismiss this claim for two separate reasons.

First, Plaintiff has already submitted claims that exceed $10,000.  *See* Exhibit K ¶ 10.

Doing so deprives this Court of jurisdiction.  28 U.S.C. § 1346(a)(2); *see also Johnson v.*

*Lightfoot*, 273 F. Supp. 3d 278, 287 (D.D.C. 2017); *Palacios v. Spencer*, 906 F.3d 124, 126-27

(D.C. Cir. 2018) (explaining the Court of Federal Claims has "exclusive jurisdiction" over claims

for back pay exceeding $10,000).

Second, "[s]ince the Tucker Act is solely a jurisdictional statute, 'a plaintiff must identify

a separate source of substantive law that creates the right to money damages.'"  *Daniels*, 947 F.

Supp. 2d at 18  (quoting  *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)).  He has

not done so.  Members of the Commission are paid when "the member is engaged in the actual

performance of duties vested in the Commission."  NDAA § 1087(b)(8).  As Plaintiff is no

longer "engaged in the actual performance of duties vested in the Commission," there is no

mandate to pay him.  *Id*.

In his complaint, Plaintiff does not explain *why* he has continued to work after being

removed from the Commission, or what work he has performed.  Similarly, there is no claim that

Plaintiff was asked to continue working after his removal.  Instead, it appears that Plaintiff seeks

judicial enforcement – in an amount beyond this court's jurisdiction – of a personal decision to

continue to work after being removed from the Commission.[9]

---

[9] To the extent that Plaintiff's complaint could potentially be construed as alleging suit against
Defendant Cody in his personal capacity, he is immune from suit because of qualified immunity.
*Bame v. Dillard*, 637 F.3d 380, 384 (D.C. Cir. 2011).

## CONCLUSION

For the reasons set forth, this Court should dismiss Plaintiff's complaint against

Chairman Cody with prejudice.[10]

Dated: March 16, 2020                          Respectfully submitted,


                                               TIMOTHY J. SHEA, D.C. Bar No. 437437
                                               United States Attorney

                                               DANIEL F. VAN HORN, D.C. Bar No. 924092
                                               Chief, Civil Division

                                   By:         */s/ John Moustakas*
                                               John Moustakas, D.C. Bar No. 442076
                                               Assistant United States Attorney
                                               555 Fourth Street, N.W.
                                               Washington, DC 20530
                                               (202) 252-2518

                                               *Counsel for Chairman Richard Cody*

                                               Stefan R. Wolfe
                                               General Counsel

                                               Cody Cheek
                                               Attorney
                                               National Commission on Military Aviation Safety
                                               2900 Crystal Drive
                                               Arlington, VA 22202

                                               *Of Counsel*

---

[10] Plaintiff's complaint raises serious questions regarding separation of powers and the political question doctrine. In his motion to dismiss, Senator Reed argues that Plaintiff lacks standing to attack Senator Reed's decision to remove him from the Commission. ECF No. 12, at 14-16. While the Commission adopts Senator Reed's argument, such Constitutional questions can be avoided by the easier path of determining that Plaintiff was an at-will employee.