**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PETER B. MAPES ) | |
| ) | |
| *Petitioner*, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | Civil Action No. 20-0223 (JEB) |
| JACK REED, ) | |
| Senator, RI ) | |
| ) | |
| RICHARD CODY, ) | |
| Chairman of the National ) | |
| Commission on Military Aviation ) | |
| Safety ) | |
| ) | |
| *Respondents*. ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT CHAIRMAN CODY'S MOTION TO DISMISS**

Plaintiff, Dr. Peter B. Mapes, by and through his attorney, submits the following Memorandum of Points and Authorities in Opposition to Defendant Chairman Cody's Motion to Dismiss. Defendant's alternative Motion for Summary Judgment will be addressed in a separate pleading.

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT CHAIRMAN CODY'S MOTION TO DISMISS**

**INTRODUCTION**

**1.** In 2018, Congress created the National Commission on Military Aviation to review military aviation mishaps and provide a report to the President and Congress. The establishment of the Commission was codified in the John S. McCain National Defense Authorization Act for Fiscal Year 2019 § 1087. Under the statute, the Ranking Member of the

Senate Armed Services Committee was authorized to appoint one Commissioner. Under that authority, Senator Jack Reed appointed Dr. Peter B. Mapes. While exercising his role as a Commissioner, Dr. Mapes questioned the accuracy and scope of some of the analyses that had been done by the military services, apparently raising the ire of several military officers. Thereafter, Senator Reed sent Dr. Mapes a letter, informing Dr. Mapes that Senator Reed was terminating Dr. Mapes as a commissioner. Chairman Cody then took administrative action to remove Dr. Mapes from the payroll and terminate his employment. Plaintiff brought suit against Senator Reed and Chairman Cody, stating that Senator Reed did not have the authority to remove him as a Commissioner, asking the Court to order that he was never terminated as a Commissioner and is entitled to pay for the time he was not paid, but performed the work of a Commissioner.

2. Chairman Cody's Motion raises two grounds for dismissal: 1) lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and 2) failure to state a claim under Rule 12(b)(6). In the alternative, Defendant moves for Summary Judgment under Rule 56. This memorandum will address Defendant's Motion to dismiss. Defendant's Motion for Summary Judgment will be addressed in a separate pleading.

## STANDARD OF REVIEW

### I. MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)

3. Federal Rule of Civil Procedure 12(b)(1) requires the plaintiff to "bear the burden of establishing by a preponderance of the evidence that the court has jurisdiction to entertain her claims." *Hopkins v. Women's Div., Gen. Ed. of Global Ministries*, 238 F.Supp.2d 174, 177 (D.D.C. 2002). In reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court must accept as true all factual allegation contained in the complaint.

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). It is also well established that in deciding a 12(b)(l) motion, the court is not limited to the allegation in the complaint, but may consider material outside of the complaint in an effort to determine whether the court has jurisdiction in the case. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-625 (D.C. Cir. 1997).

## II. MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

4. A motion to dismiss for failure to state a claim should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Kilpatrick v. Riley*, 987 F. Supp. 2d 9, 13 (D.D.C. 2000) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Atchinson v. D.C.*, 73 F.3d 418, 421 (D.C. Cir. 1996); see also *Burlington Insur. Co. v. Okie Dokie, Inc.*, 329 F. Supp. 2d 45, 47 (D.D.C. 2004) ("[T]he accepted rule in every type of case is that the court should not dismiss a complaint for failure to state a claim unless the defendant can show beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.") (citations and internal quotation marks omitted). In deciding a motion to dismiss, "the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Id.* (citing *Malijack Prods. v. Motion Picture Ass'n.*, 52 F.3d 373, 375 (D.C. Cir. 1995).

5. Also, the plaintiff "need not plead all elements of a prima facie case in the complaint." *Nwachukukwu v. Karl*, 223 F. Supp. 2d 60, 69 (D.D.C. 2002). "The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests." *Burlington*, 329 F. Supp. 2d at 47 (citing *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Moreover, "the Federal Rules of Civil Procedure do not require a claimant to . . .

plead the legal theories upon which he or she bases [a] claim." *Grogan v. General Maintenance Serv. Co.*, 763 F.2d 444, 449 (D.C. Cir. 1985) (reversing decision where lower court had dismissed crossclaim as a tort claim that had already been litigated, but had failed to interpret crossclaim as also stating a contractual cause of action).

**ARGUMENT**

**I.      Dr. Mapes' Claim is not Covered by the Civil Service Reform Act.**

6.      In claiming this Court lacks subject matter jurisdiction over this case, Defendant states that this suit is precluded by the Civil Service Reform Act.  Defendant first claims that Dr. Mapes is a federal employee in the excepted service.  The Defendant is incorrect.

7.      Dr. Mapes is not a civil service employee; that is clear from the language that established the commission.  Section 1087(b)(7) of the John S. McCain National Defense Authorization Act for Fiscal Year 2019 discusses the status of members of the commission.  It states: "Notwithstanding the requirements of section 2105 of title 5, United States Code, including the required supervision under subsection (a)(3) of such section, the members of the Commission shall be deemed to be Federal employees."  Title 5 U.S.C. § 2105 states:

> a) For the purpose of this title, "employee", except as otherwise provided by this section or when specifically modified, means an officer and **an individual who is—**
> **(1) appointed in the civil service by one of the following** acting in an official capacity—
> (A) the President;
> (B) a Member or Members of Congress, or the Congress;
> (C) a member of a uniformed service;
> (D) an individual who is an employee under this section;
> (E) the head of a Government controlled corporation; or
> (F) an adjutant general designated by the Secretary concerned under section 709(c) of title 32;
> (2) engaged in the performance of a Federal function under authority of law or an Executive act; and
> (3) **subject to the supervision of an individual named by paragraph (1)** of this subsection while engaged in the performance of the duties of his position.

5 U.S.C. § 2105(a) (2020) (Emphasis added).

8. By using the term "notwithstanding", the NDAA acknowledged that Dr. Mapes and the other Commissioners do not fit the definition of an "employee" in 5 U.S.C. 2015, but the statute makes them federal employees. Thus, Dr. Mapes is not "appointed in the civil service" as stated in 5 U.S.C. 2105(a)(1). Nor is he subject to the supervision of the person who appointed him as defined in 5 U.S.C. 2105 (a)(3). Inasmuch as Dr. Mapes is not in appointed in the civil service, he is not subject to the Civil Service Reform Act.

9. The Defendant claims that because the NDAA language states that the Commission is a temporary organization under section 3161, that Dr. Mapes is in the excepted service. While 5 U.S.C. 3161(b)(3) states that the positions of employment in a temporary organization are in the excepted service, Dr. Mapes does not fit within that category. That is because the entire portion of 5 U.S.C. 3161(b) Employment Authority states:

> (b) Employment Authority.—
> (1) Notwithstanding the provisions of chapter 51 of this title [which refers to classification of positions], **the head of a temporary organization may appoint persons to positions of employment in a temporary organization** in such numbers and with such skills as are necessary for the performance of the functions required of a temporary organization.
> (2) The period of an appointment under paragraph (1) may not exceed three years, except that under regulations prescribed by the Office of Personnel Management the period of appointment may be extended for up to an additional two years.
> (3) **The positions of employment in a temporary organization are in the excepted service of the civil service.**

5 U.S.C. 3161(b) (2020) (emphasis added)

10. Thus, as the statute reads, persons appointed to a position of employment by the head of a temporary organization are in the excepted service. Dr. Mapes was not appointed by the head of the National Commission on Military Aviation Safety. Whomever that person may be, it is most assuredly not Senator Reed and Senator Reed is the person who appointed Dr.

Mapes.  Thus, Dr. Mapes, who was not "appointed by the head of a temporary organization" to a "position of employment" is not in the excepted service.

11. Even if Dr. Mapes were to be considered a civil service employee, this suit does not fall within the auspices of the Civil Service Reform Act.  "The Civil Service Reform Act, by its terms, does not cover every adverse action against a federal employee." *Worthington v. United States*, 168 F.3d 24, 26 (Fed. Cir. 1999).  This was addressed clearly in *Bosco v. United States* where the court wrote:

> The government argues that *Fausto* has established that "the CSRA provides the exclusive avenues for judicial review of adverse personnel actions against federal employees," and that the Claims Court therefore has no jurisdiction to review a classification decision. The government's argument, however, misapprehends the holding of *Fausto*. The Supreme Court did not rule that the CSRA provided the only means of judicial review of any actions affecting federal employees, but rather that it was the only means of review as to the types of adverse personnel action specifically covered by the CSRA.

*Bosco v. United States*, 931 F.2d 879, 882 (Fed. Cir. 1991) (citations omitted).

Here, the government action taken against Dr. Mapes is not specifically covered by the CSRA.

12. The CSRA discusses removals in two areas.  First, 5 U.S.C. Chapter 43 covers removals based on performance.  It tasks an agency to establish one or more performance appraisal systems.  5 U.S.C. 4301(1)(A) (2020).  It next directs that agencies "use the results of the performance appraisals as a basis for…removing employees."  5 U.S.C. 4302(a)(3).  Dr. Mapes, as a Commissioner, was never subject to any performance appraisal system.  Thus, 5 U.S.C. Chapter 43 does not cover the action taken against Dr. Mapes.

13. A second chapter, 5 U.S.C. Chapter 75, also covers removals.   It states "an agency may take an action covered by this subchapter [which includes removal] only for such cause as may promote efficiency of service."  5 U.S.C. 7513 (2020).  In Dr. Mapes' case, an

Executive Branch agency did not remove him.  His removal came because a United States Senator ordered him removed.

14.     Because the CSRA does not, by its terms, cover the attempted removal of an Executive branch employee by someone not within an Executive branch agency and, therefore has no authority to do so, Dr. Mapes is entitled to judicial review in accordance with 5 U.S.C. 705 and 706.  This Court, then, has subject matter jurisdiction.

15.     The CSRA simply does not encompass this situation.  The CSRA, enacted as P.L. 95-454 in October of 1978, stated as a purpose: "Federal personnel management should be implemented consistent with merit system principles and free from prohibited personnel practices."  P.L. 95-454 § 3 (1978).  The Act established merit system principles, defined a set of prohibited personnel practices, and established the Merit Systems Protection Board as the vehicle by which accusations that an agency committed a prohibited personnel practice are adjudicated.  The current prohibited personnel practices are listed in 5 U.S.C. § 2302(b).

16.     Plaintiff does not allege a prohibited personnel practice took place.  This is because what was done to Dr. Mapes is not covered within those practices.  As 5 U.S.C. § 2302(b) states, a prohibited personnel practice must be undertaken by an "employee who has authority to take, direct others to take, recommend, or approve any personnel action."  5 U.S.C. § 2302(b) (2020).  As this suit states, neither Senator Reed nor Chairman Cody had the authority to take the personnel action to remove Dr. Mapes from his position as a Commissioner.  This is a constitutional issue and beyond the purview of the remedies created by the CSRA. What happened to Dr. Mapes is the functional equivalent of an ordinary citizen walking into a federal office, telling an employee that he or she is fired, and that office processing the paperwork to affect that firing.  There are no merit system principles at issue here.  There are no prohibited

personnel practices at issue here.  The action that was taken against Dr. Mapes is not covered by the Civil Service Reform Act and Dr. Mapes is therefore not restricted by it.

17. In *Bell v. Hood*, the Supreme Court explained the jurisdiction of district courts and the standing of plaintiffs regarding constitutional issues.  In that case, the plaintiff sought to recover damages from the Federal Bureau of Investigation for the FBI's violation of the plaintiff's constitutional rights.  *Bell v. Hood*, 327 U.S. 678, 679 (1946).  In vacating a lower court decision to dismiss, the Court said:

> And it is also well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done. Whether the petitioners are entitled to recover depends upon an interpretation of 28 U. S. C. § 41 (1) and on a determination of the scope of the Fourth and Fifth Amendments' protection from unreasonable searches and deprivations of liberty without due process of law. Thus, the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another. For this reason the District Court has jurisdiction.

*Id*. at 684-685.

18. Here, Dr. Mapes's removal was directed by someone without authority to do so. A federal statute, the 2018 NDAA, gave Dr. Mapes, as an appointed Commissioner, an appointment for the life of the Commission and an entitlement to be paid for the work he performed.  This also provides this Court with subject matter jurisdiction.

## II. Senator Reed Had No Authority to Order the Removal of Dr. Mapes as a Commissioner.

19. Defendant next states that Senator Reed's action to remove Dr. Mapes was lawful and that Dr. Mapes has failed to state a claim for which relief can be granted.  Defendant bases this on two factors.  First, absent any statutory guidance, an appointing officer may remove an appointee at will.  Second, Defendant says the cases Plaintiff used to support his original complaint are distinguishable.  In making his point, Defendant lists a long litany of cases

purporting to show that the power of removal is inherent in the power of appointment.  However, all of these cases are distinguishable from the Plaintiff's claim.

20. Plaintiff's claim is, in fact, an apparent issue of first impression.  All of the cases cited by the Defendant in his motion involve the removal of an executive branch employee by a member of the executive branch.  Here, we have a member of the legislative branch reaching into the executive branch in order to remove an executive branch employee.  There appears to be little case law on the subject, but what there is goes against the Defendant's position.

21. In *Bowsher v. Synar*, the Supreme Court ruled that the powers assigned to the Comptroller General under the Balanced Budget and Emergency Deficit Control Act of 1985 were executive in nature.  *Bowsher v. Synar*, 478 U.S. 714, 733 (1986).  Because the Comptroller General was removable only by the legislature, Congress thus placed the responsibility for executing the law in its own hands and that was a violation of the separation of powers doctrine. *Id*. at 735.  Recounting the congressional testimony of a previous Comptroller General who stated that as such he was heading a legislative agency and was an agent of the Congress, the Court stated: "Against this backdrop, we see no escape from the conclusion that because Congress has retained removal authority over the Comptroller General, he may not be entrusted with executive powers."  *Id*. at 732.

22. Additionally, in *PHH Corp v. Consumer Financial Protection Bureau*, the court upheld a for-cause restriction on the removal powers of the President regarding the Director of the Consumer Financial Protection Bureau.  *PHH Corp. v. Consumer Financial Protection Bureau*, 81 F.3d 75, 137 (D.C. Cir. 2018).  The court also noted: "…Congress may value and deploy a degree of independence on the part of certain executive officials.  At least so long as

9

Congress does not disturb the congressional balance by arrogating to itself a role in removing the relevant executive officials…the Constitution admits of modest removal constraints…"*Id*. at 88.

23. Taken together, these cases stand for the fact that Congress cannot have a role in the actual removal of an executive official. Here, there is no doubt that Dr. Mapes is an executive official. In establishing the Commission, the legislation stated: "The Commission shall be considered an independent establishment of the Federal Government as defined by section 104 of title 5, United States Code…" P.L. 115-232, § 1087(a)(1). An independent establishment means "an establishment in the executive branch…which is not an Executive department, military department, Government corporation…or part of an independent establishment." 5 U.S.C. § 104 (2020). The Commission is, then an organization in the executive branch. As a Commissioner, Dr. Mapes is an executive branch employee no longer under the control or authority of Senator Reed.

24. Granted, none of the cases cited by Plaintiff or Defendant are exactly on point. These cases primarily involve officers and inferior officers of the United States and, as the Defendant pointed out, Dr. Mapes is a "mere employee." Def's. Mot to Dismiss or for Summ. J. 13. The cases involve the power to restrict the executive from removing officers he or she has appointed. Here, the issue is not the removal by the executive, but by a member of another branch of government.

25. However, the principle is still the same. Congress cannot reach into the executive branch to remove members. If Senator Reed wanted to maintain control over Dr. Mapes' appointment, he could have written the legislation to state that the Commissioners were members of the branch from which they were appointed. While that may have made things administratively cumbersome, nothing prevented him from doing that. When he appointed Dr.

Mapes into the executive branch, though, Senator Reed lost his ability to control the removal. Just because the Commissioners are not officers or inferior officers does not mean the principle of separation of powers disappears. As the Supreme Court stated in *Bowsher*:

> No one can doubt that Congress and the President are confronted with fiscal and economic problems of unprecedented magnitude, but "the fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution. Convenience and efficiency are not the primary objectives -- or the hallmarks -- of democratic government. . . ."

*Bowsher*, 478 U.S. at 736 (quoting *INS v. Chadha*, 462 U.S. 919, 944 (1983)).

26. The Defendant also claims that, in Dr. Mapes' case, "the legislative and executive branches are in harmony, as President Trump concurred with Senator Reed's decision." Def's. Mot to Dismiss or for Summ. J. 17. However, facts matter and the fact is that President Trump could not concur with Senator Reed's decision because it was not Senator Reed's decision to make. Once Senator Reed appointed Dr. Mapes into the executive branch, Senator Reed, as a member of the legislative branch, lost the ability to control the appointment.

### III. Dr. Mapes has a Protected Interest in His Employment

27. Defendant next claims that Dr. Mapes does not have a due process issue because he was an "at-will" employee and did not have a property interest in his continued employment. The Defendant also states that Dr. Mapes failed to allege a lack of process.

28. As demonstrated in Argument Section I and II, *supra*, Dr. Mapes was not an at-will employee. The statute establishing the Commission specifically exempted Commissioners from the supervision of the official who appointed them. Thus, Senator Reed had no supervisory authority over Dr. Mapes. Secondly, the separation of powers doctrine, as outlined in *Bowsher* and *PHH Corp.*, prohibits Senator Reed from interfering in the employment of a member of the executive branch. The statute that established the Commission stated the terms of employment

for Dr. Mapes – he was "appointed for the life of the Commission." McCain NDAA § 1087 (a)(5). Dr. Mapes had a property interest in his employment because he was, by law, entitled to that employment for the life of the Commission.

29. In addition, Dr. Mapes has a protected interest in his reputation. The Supreme Court recognized that "a liberty interest may be implicated when an attack is made upon an individual's 'good name, reputation, honor, or integrity'." *Lyons v. Barrett*, 851 F.2d 406, 410 (D.C. Cir. 1988) (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)). While the court also said that a reputation injury alone may not be a liberty interest, "combined with dismissal from a government job, however, injury to reputation can rise to the level of a liberty deprivation." *Lyons*, 851 F.2d at 410. *See also Doe v. Department of Justice*, 753 F.2d 1092, 1110 (D.C. Cir. 1985). This Court "that when a nontenured government employee is deprived of this particular liberty interest the appropriate remedy is a hearing in which the dismissed employee is given an opportunity to refute the charges and clear his name." *Lyons*, 851 F.2d. at 410.

30. Dr. Mapes was selected as a Commissioner due to his expertise in aviation. The need for Commissioners to have specific expertise was stated in the NDAA. For Dr. Mapes to be dismissed from his employment as a Commissioner would damage his reputation – especially in light of the fact that the attempt to illegally dismiss him came as a result of unwarranted complaints about him from the within the military aviation community, the very community in which his reputation would suffer. Clearly, Dr. Mapes has a reputational interest that would be damaged were this unconstitutional action allowed to stand.

31. Next, Defendant states that because Dr. Mapes did not state the process he received or did not receive, he has no due process claim. Dr. Mapes has made a due process

claim. That claim is that the process used to remove him must be legal. The process by which he was removed was not legal. He was removed based on a letter from an individual who had no authority to remove him from the position. That letter was acted upon by the Defendant, who had no authority to respond to the unlawful and unconstitutional letter.

## CONCLUSION

32. Dr. Mapes has demonstrated that this Court has jurisdiction over this case and that he does state a claim upon which relief can be granted. For the foregoing reasons, Plaintiff respectfully requests this Court deny Defendant's Motions to Dismiss.

May 4, 2020                                        Respectfully submitted,

*/s/ David P. Sheldon*
DAVID P. SHELDON
D.C. Bar No. 446039
Law Offices of David P. Sheldon PLLC
100 M St. NE; Ste 600
Washington, DC 20003
Telephone No. 202-546-9575
Fax No. 202-546-0135
Email: davidsheldon@militarydefense.com