## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PETER B. MAPES | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | Civil Action No. 20-0223 (JEB) |
| JACK REED, | ) | |
| Senator, RI | ) | |
| | ) | |
| RICHARD CODY, | ) | |
| Chairman of the National | ) | |
| Commission on Military Aviation | ) | |
| Safety | ) | |
| | ) | |
| *Respondents*. | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT SENATOR JACK REED'S MOTION TO DISMISS

Plaintiff, Dr. Peter B. Mapes, by and through his attorney, submits the following

Memorandum of Points and Authorities in Opposition to Defendant Senator Jack Reed's Motion

to Dismiss.

## INTRODUCTION

1.      In 2018, Congress created the National Commission on Military Aviation to

review military aviation mishaps and provide a report to the President and Congress.  The

establishment of the Commission was codified in the John S. McCain National Defense

Authorization Act for Fiscal Year 2019 § 1087.  Under the statute, the Ranking Member of the

Senate Armed Services Committee was authorized to appoint one Commissioner.  Under that

authority, Senator Jack Reed appointed Dr. Peter B. Mapes.  While exercising his role as a

Commissioner, Dr. Mapes questioned the accuracy and scope of some of the analyses that had been done by the military services, apparently raising the ire of several senior military officers. Thereafter, Senator Reed sent Dr. Mapes a letter, informing Dr. Mapes that Senator Reed was terminating Dr. Mapes as a commissioner.  Chairman Cody then took administrative action to remove Dr. Mapes from the payroll and terminate his employment.   Plaintiff brought suit against Senator Reed and Chairman Cody, stating that Senator Reed did not have the authority to remove him as a Commissioner, asking the Court to order that he remains a Commissioner and is entitled to pay for the time he was not paid, but performed the work of a Commissioner.

2.      Senator Reed's Motion raises two grounds for dismissal: 1) lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and 2) failure to state a claim under Rule 12(b)(6).  This memorandum will address each of the claims in the order presented in the motion.

STANDARD OF REVIEW

## I.      MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)

3.      Federal Rule of Civil Procedure 12(b)(1) requires the plaintiff to "bear the burden of establishing by a preponderance of the evidence that the court has jurisdiction to entertain her claims." *Hopkins v. Women's Div., Gen. Ed. of Global Ministries*, 238 F.Supp.2d 174, 177 (D.D.C. 2002). In reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court must accept as true all factual allegation contained in the complaint. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). It is also well established that in deciding a 12(b)(l) motion, the court is not limited to the allegation in the complaint, but may consider material outside of the complaint in an effort to determine whether the court has jurisdiction in the case. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621,624-625 (D.C. Cir. 1997).

## II.    MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

4.    A motion to dismiss for failure to state a claim should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Kilpatrick v. Riley*, 987 F. Supp. 2d 9, 13 (D.D.C. 2000) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Atchinson v. D.C.*, 73 F.3d 418, 421 (D.C. Cir. 1996); see also *Burlington Insur. Co. v. Okie Dokie, Inc.*, 329 F. Supp. 2d 45, 47 (D.D.C. 2004) ("[T]he accepted rule in every type of case is that the court should not dismiss a complaint for failure to state a claim unless the defendant can show beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.") (citations and internal quotation marks omitted) (emphasis added). In deciding a motion to dismiss, "the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." Id. (citing *Malijack Prods. V. Motion Picture Ass'n*, 52 F.3d 373, 375 (D.C. Cir. 1995).

Also, the plaintiff "need not plead all elements of a prima facie case in the complaint." *Nwachukukwu v. Karl*, 223 F. Supp. 2d 60, 69 (D.D.C. 2002). "The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests." *Burlington*, 329 F. Supp. 2d at 47 (citing *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Moreover, "the Federal Rules of Civil Procedure do not require a claimant to . . . plead the legal theories upon which he or she bases [a] claim." *Grogan v. General Maintenance Serv. Co.*, 763 F.2d 444, 449 (D.C. Cir. 1985) (reversing decision where lower court had dismissed crossclaim as a tort claim that had already been litigated, but had failed to interpret crossclaim as also stating a contractual cause of action).

## ARGUMENT

**I.      Senator Reed's Unconstitutional Action Against Dr. Mapes is not Covered by the Civil Service Reform Act.**

5.      In claiming that this Court lacks jurisdiction over this matter, Defendant first

states that the suit is precluded by the Civil Service Reform Act.  The Defendant is incorrect.

This subject of this suit does not fall within the auspices of the Civil Service Reform Act.

6.      "The Civil Service Reform Act, by its terms, does not cover every adverse action

against a federal employee."  *Worthington v. United States*, 168 F.3d 24, 26 (Fed. Cir. 1999).

This was addressed clearly in *Bosco v. United States* where the court wrote:

> The government argues that *Fausto* has established that "the CSRA provides the exclusive avenues for judicial review of adverse personnel actions against federal employees," and that the Claims Court therefore has no jurisdiction to review a classification decision. The government's argument, however, misapprehends the holding of *Fausto*. The Supreme Court did not rule that the CSRA provided the only means of judicial review of any actions affecting federal employees, but rather that it was the only means of review as to the types of adverse personnel action specifically covered by the CSRA.

*Bosco v. United States*, 931 F.2d 879, 882 (Fed. Cir. 1991) (citations omitted).

Here, the government action taken against Dr. Mapes is not specifically covered by the CSRA.

7.      The CSRA discusses removals in two areas.  First, 5 U.S.C. Chapter 43 covers

removals based on performance.  It tasks an agency to establish one or more performance

appraisal systems.  5 U.S.C. 4301(1)(A) (2020).  It next directs that agencies "use the results of

the performance appraisals as a basis for…removing employees."  5 U.S.C. 4302(a)(3).  Dr.

Mapes, as a Commissioner, was never subject to any performance appraisal system.  Thus, 5

U.S.C. Chapter 43 does not cover the action taken against Dr. Mapes.

8.      A second chapter, 5 U.S.C. Chapter 75, also covers removals.   It states "an agency may take an action covered by this subchapter [which includes removal] only for such cause as may promote efficiency of service."  5 U.S.C. 7513 (2020).  In Dr. Mapes' case, the agency did not remove him.  His removal came from a person who was not authorized to order the removal of anyone from the National Commission on Military Aviation Safety.

9.      Because the CSRA does not, by its terms, cover the attempted removal of an employee by someone not within the agency and with no authority to do so, Dr. Mapes is entitled to judicial review in accordance with 5 U.S.C. 705 and 706.  This Court, then, has subject matter jurisdiction.

## II.      Senator Reed's Unconstitutional Act is not Excused by Sovereign Immunity

10.     Next, Defendant desires to avoid suit by claiming sovereign immunity.  However, courts have been clear that unconstitutional acts committed by federal officials are not excused by the concept of sovereign immunity.  In *Larson v. Domestic & Foreign Commerce Corp.*, a man sued the United States War Assets Administrator for failing to deliver surplus coal the man had purchased.  *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 684 (1949).  The Supreme Court held for the Administrator because the man did not allege the Administrator's actions were beyond the Administrator's authority.  *Id*. at 691.  In ruling, though, the Court held:

> …the action of an officer of the sovereign (be it holding, taking or otherwise legally affecting the plaintiff's property) can be regarded as so "illegal" as to permit a suit for specific relief against the officer as an individual only if it is not within the officer's statutory powers or, if within those powers, only if the powers, or their exercise in the particular case, are constitutionally void.

*Id*. at 701-702.

11.     That principle was restated by the Court in *Malone v. Bowdoin*, where the Court again ruled against a landholder who did not claim that a government employee was acting

outside the scope of his authority. *Malone v. Bowdoin*, 369 U.S. 643, 647 (1962). The Court, however, affirmed *Larson*, stating:

> Cutting through the tangle of previous decisions, the Court expressly postulated the rule that the action of a federal officer affecting property claimed by a plaintiff can be made the basis of a suit for specific relief against the officer as an individual only if the officer's action is "not within the officer's statutory powers or, if within those powers, only if the powers, or their exercise in the particular case, are constitutionally void."

*Id.* (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 702 (1949).

12.     Here, Senator Reed's action in removing a member of the executive branch from the position to which he was legally appointed and was entitled to remain, violated the doctrine of separation of powers and is constitutionally void. Thus, Senator Reed's claim of sovereign immunity is also void.

## III.     This Court Can Enjoin Senator Reed's Unconstitutional Act

13.     Defendant Reed next claims that Plaintiff's complaint is not redressable by the Defendant. Citing cases that purport to demonstrate that the judicial branch cannot order the legislative branch to take action, Defendant states that there is nothing the court can compel that Senator Reed must do. However, the cases cited by the Defendant all involve intra-branch activities. In *Hearst v. Black*, for example, the appellant was asking the Court rule that a Senate Committee could not use documents that may have been obtained in violation of the appellant's legal rights. *Hearst v. Black*, 87 F.2d 68, 68 (D.C. Cir. 1936) Of note is the fact that although the Court ruled that it could not direct how the legislative branch might use items in its possession, it could have ruled to prevent the senate committee from obtaining them in the first place if the acts were violative of appellants' rights:

> In principle, therefore, we think that a dragnet seizure of private telegraph messages as is alleged in the bill, whether made by persons professing to act under

color of authority from the government or by persons acting as individluals [sic], is
a trespass which a court of equity has power to enjoin.

*Hearst*, 87 F.2d at 71.

14.    Just as an illegal act by a Senate Committee could be enjoined by the court, so can

an unconstitutional act by a Senator.

## IV.    Senator Reed Does Not Have the Authority to Reach Into the Executive Branch and Remove an Individual

15.    The Defendant next states that Plaintiff has failed to state a claim because Senator

Reed has "unrestricted authority to remove Plaintiff from the Commission".   Def's. Mot to

Dismiss 16.  In making their point, Defendant lists a long litany of cases purporting to show that

the power of removal is inherent in the power of appointment.  However, all of these cases are

distinguishable from the Plaintiff's claim.

16.    Plaintiff's claim is, in fact, an apparent issue of first impression.  All of the cases

cited by the Defendant in his motion, involve the removal of an executive branch employee by a

member of the executive branch.  Here, we have a member of the legislative branch reaching into

the executive branch in order to remove an executive branch employee.  There appears to be

little case law on the subject, but what there is goes against the Defendant's position.

17.    In *Bowsher v. Synar*, the Supreme Court ruled that the powers assigned to the

Comptroller General under the Balanced Budget and Emergency Deficit Control Act of 1985

were executive in nature.  *Bowsher v. Synar*, 478 U.S. 714, 733 (1986).  Because the Comptroller

General was removable only by the legislature, Congress thus placed the responsibility for

executing the law in its own hands and that was a violation of the separation of powers doctrine.

*Id*. at 735.  Recounting the congressional testimony of a previous Comptroller General who

stated that as such he was heading a legislative agency and was an agent of the Congress, the

Court stated: "Against this backdrop, we see no escape from the conclusion that because Congress has retained removal authority over the Comptroller General, he may not be entrusted with executive powers."  *Id.* at 732.

18.     Additionally, in *PHH Corp v. Consumer Financial Protection Bureau*, the court upheld a for-cause restriction on the removal powers of the President regarding the Director of the Consumer Financial Protection Bureau.  *PHH Corp. v. Consumer Financial Protection Bureau*, 81 F.3d 75, 137 (D.C. Cir. 2018).  The court also note:"…Congress may value and deploy a degree of independence on the part of certain executive officials.  At least so long as Congress does not disturb the congressional balance by arrogating to itself a role in removing the relevant executive officials…the Constitution admits of modest removal constraints…"*Id.* at 88.

19.     Taken together, these cases point out that Congress cannot have a role in the actual removal of an executive official.  Here, there is no doubt that Dr. Mapes is an executive official.  In establishing the Commission, the legislation stated: "The Commission shall be considered an independent establishment of the Federal Government as defined by section 104 of title 5, United States Code…" P.L. 115-232, § 1087(a)(1).  An independent establishment means "an establishment in the executive branch…which is not an Executive department, military department, Government corporation…or part of an independent establishment."  5 U.S.C. § 104 (2020).  Thus, as an executive branch employee, Dr. Mapes is no longer under the control or authority of Senator Reed.

20.     Granted, none of the cases cited by Plaintiff or Defendant are exactly on point. These cases primarily involve officers and inferior officers of the United States and, as the Defendant pointed out, Dr. Mapes is a "mere employee."  The cases involve the power to restrict

the executive from removing officers he or she has appointed.  Here, the issue is not the removal

by the executive, but by a member of another branch of government.

21.     However, the principle is still the same.  Congress cannot reach into the executive

branch to remove members.  If Senator Reed wanted to maintain control over Dr. Mapes'

appointment, he could have written the legislation to state that the Commissioners were members

of the branch from which they were appointed.  While that may have made things

administratively cumbersome, nothing prevented him from doing that.  When he appointed Dr.

Mapes into the executive branch, though, Senator Reed lost his ability to control the removal.

Just because the Commissioners are not officers or inferior officers does not mean the principle

of separation of powers disappears.  As the Supreme Court stated in *Bowsher*:

> No one can doubt that Congress and the President are confronted with fiscal
> and economic problems of unprecedented magnitude, but "the fact that a
> given law or procedure is efficient, convenient, and useful in facilitating
> functions of government, standing alone, will not save it if it is contrary to
> the Constitution. Convenience and efficiency are not the primary objectives
> -- or the hallmarks -- of democratic government. . . ."

*Bowsher*, 478 U.S. at 736 (quoting *INS v. Chadha*, 462 U.S. 919, 944 (1983)).

## CONCLUSION

22.     Plaintiff has demonstrated that Senator Reed's Motion to Dismiss is

inappropriate.  This Court does have jurisdiction over the matter.  The Plaintiff has stated a claim

for which relief can be granted.  For the foregoing reasons, Plaintiff respectfully requests that

this Court deny Defendant Reed's Motion to Dismiss.

May 4, 2020                              Respectfully submitted,

                                         */s/ Davis P. Sheldon*
                                         DAVID P. SHELDON
                                         D.C. Bar No. 446039
                                         Law Offices of David P. Sheldon PLLC
                                         100 M St. NE; Ste 600
                                         Washington, DC 20003
                                         Telephone No.  202-546-9575
                                         Fax No.  202-546-0135
                                         Email: davidsheldon@militarydefense.com