UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
PETER B. MAPES,                         )
                                        )
            Plaintiff,                  )
                                        )          Civil Action No. 1:20-cv-00223-JEB
            v.                          )
                                        )
SENATOR JACK REED, *et al.*,            )
                                        )
            Defendants.                 )
_____)


**DEFENDANT SENATOR REED'S REPLY MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF HIS MOTION TO DISMISS**

Patricia Mack Bryan, Bar #335463
Senate Legal Counsel

Morgan J. Frankel, Bar #342022
Deputy Senate Legal Counsel

Grant R. Vinik, Bar #459848
Assistant Senate Legal Counsel

Thomas E. Caballero
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250

(202) 224-4435 (tel)
(202) 224-3391 (fax)

Dated: May 29, 2020                     Attorneys for Defendant Senator Jack Reed

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.      Plaintiff Fails To Establish This Court's Jurisdiction Over
        His Claim Against Senator Reed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.      Plaintiff Cannot Evade The Civil Service Reform Act's
                Exclusive Remedial Scheme And Challenge His Removal
                Before This Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        B.      Sovereign Immunity Precludes Plaintiff's Claim Against
                Senator Reed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        C.      Plaintiff Lacks Standing To Bring His Claim Against
                Senator Reed As His Injury Cannot Be Redressed By
                Relief Against The Senator. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

II.     Plaintiff's Complaint Fails to State a Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        A.      Senator Reed's Removal of Plaintiff Did Not Violate
                the Separation of Powers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        B.      Plaintiff Has Not Alleged Facts Sufficient To State a
                Due Process Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

i

# TABLE OF AUTHORITIES

**Cases**

*Am. Federation of Gov't Employees v. Secretary of the Air Force*,
   841 F. Supp. 2d 233 (D.D.C. 2012), *aff'd*, 716 F.3d 633 (D.C. Cir. 2013) . . . . . . . . . . . 5

*Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bosco v. United States*, 931 F.2d 879 (Fed. Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Bowsher v. Synar*, 478 U.S. 714 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15, 16

*Buckley v. Valeo*, 424 U.S. 1 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4, 17, 18

*Carlucci v. Doe*, 488 U.S. 93 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Dave v. D.C. Metropolitan Police Department*, 926 F. Supp. 2d 247 (D.D.C. 2013) . . . . . . . . . 20

*deLeon v. Wilkie*, No. 19-1250 (JEB), 2020 WL 210089 (D.D.C. Jan. 14, 2020) . . . . . . . 9, 21, 22

*Department of Transportation v. Ass'n of Am. Railroads*, 575 U.S. 43 (2015) . . . . . . . . . . . . . 15

*DeSousa v. Department of State*, 840 F. Supp. 2d 92 (D.D.C. 2020). . . . . . . . . . . . . . . . . . . . . 20

*Doe v. Cheney*, 885 F.2d 898 (D.C. Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Evans v. District of Columbia*, 391 F. Supp. 2d 160 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . 20

* *Elgin v. Department of the Treasury*, 567 U.S. 1 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 8, 9

*FDIC v. Meyer*, 510 U.S. 471 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

* *Filebark v. U.S. Department of Transportation*, 555 F.3d 1009 (D.C. Cir. 2009) . . . . . . . . . . 5, 8

*Fornaro v. James*, 416 F.3d 63 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010). . . . . . . . . 14

*Graham v. Ashcroft*, 358 F.3d 931 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

* *Grosdidier v. Chairman, Broadcasting Bd. of Governors*,
   560 F.3d 495 (D.C. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 6, 8

*Hall v. Ford*, 856 F.2d 255 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 19

*Hearst v. Black*, 87 F.2d 68 (D.C. Cir. 1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Humphrey's Executor v. United States*, 295 U.S. 602 (1935) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Jefferson v. Harris*, 170 F. Supp. 3d 194 (D.D.C. 2016) . . . . . . . . . . . . . . . . . . . . 4, 19, 20, 21, 22

*Kalaris v. Donovan*, 697 F.2d 376 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Kartseva v. Department of State*, 37 F.3d 1524 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . 21

*Konah v. District of Columbia*, 815 F. Supp. 2d 61 (D.D.C. 2011) . . . . . . . . . . . . . . . . . . . . . . 22

*Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949) . . . . . . . . . . . . 2, 3, 10, 11

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*McCormick v. District of Columbia*, 752 F.3d 980 (D.C. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . 21

*McGinnis v. District of Columbia*, 65 F. Supp. 3d 203 (D.D.C. 2014) . . . . . . . . . . . . . . . . . . . 21

*Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82 (D.D.C. 2010) . . . . . . . . . . . . . . . . . . . . . 22

*Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475 (1866) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mistretta v. United States*, 488 U.S. 361 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

* *Nyunt v. Chairman, Broadcasting Bd. of Governors*,
     589 F.3d 445 (D.C. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 6, 7

*Orange v. District of Columbia*, 59 F.3d 1267 (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . 4, 20

*Painter v. Shalala*, 97 F.3d 1351 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Parsons v. United States*, 167 U.S. 324 (1897) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Perkins v. Vance-Cooks*, 886 F. Supp. 2d 22 (D.D.C. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*State of Hawaii v. Gordon*, 373 U.S. 57 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

*Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12, 14

*Tapp v. Washington Metro. Area Transit Auth.*,
     306 F. Supp. 3d 383 (D.D.C. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

\* *United States v. Fausto*, 484 U.S. 439 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

*Wiener v. United States*, 357 U.S. 349 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Worthington v. United States*, 168 F.3d 24 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Vann v. Kempthorne*, 534 F.3d 741 (D.C. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Federal Statutes**

Alyce Spotted Bear and Walter Soboleff Commission on Native Children,
    Pub. L. No. 114-244, § 3, 130 Stat. 981-82 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Evidence-Based Policy-making Commission,
    Pub. L. No. 114-140, 130 Stat. 317-20 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Federal Election Campaign Act Amendments,
    Pub. L. No. 93-443, 88 Stat. 1281, § 310(a)(1) (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

\* John S. McCain National Defense Authorization Act for Fiscal Year 2019,
    Pub. L. No. 115-232, Div. A, Title X, Subtitle F, § 1087,
    132 Stat. 1636, 1992-96 (2018) ["NDAA § 1087"]
            § 1087(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 14
            § 1087(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 12, 14
            § 1087(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 16

National Commission on Military, National, and Public Service,
    Pub. L. No. 115-232, § 553, 132 Stat. 2134-37 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

National Security Commission on Artificial Intelligence,
    Pub. L. No. 115-232, § 1051, 132 Stat. 1962-65 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . 17

5 U.S.C. § 104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 14

5 U.S.C. § 551 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

5 U.S.C. § 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

5 U.S.C. § 705 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

5 U.S.C. § 706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

5 U.S.C. § 2101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

5 U.S.C. § 4301. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

5 U.S.C. § 7511. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 U.S.C. § 1346. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Federal Regulations**

5 C.F.R. § 432.102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Miscellaneous**

*Applicability of 18 U.S.C. § 208 to National Gambling Impact Study*
  *Comm'n*, 23 Op. O.L.C. 29 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

* Cases and authorities chiefly relied upon.

# INTRODUCTION

Plaintiff filed this suit claiming that he was "illegally removed" by Senator Reed from the National Commission on Military Aviation Safety (the "Commission"), Compl. ¶ 23, because, plaintiff asserted, members of the Commission are removable only for "malfeasance or misfeasance," and "no one . . . had accused [Plaintiff] of malfeasance or misfeasance during his tenure" on the Commission.  Compl. ¶ 27.  Senator Reed moved to dismiss plaintiff's suit for lack of subject matter jurisdiction and failure to state a claim.  *See* Memorandum of Points and Authorities in Support of Defendant Senator Jack Reed's Motion to Dismiss, ECF No. 12 ["Def. Sen. Reed's MTD"].  The Court lacks jurisdiction because (a) plaintiff, as a federal employee, is precluded by the Civil Service Reform Act ("CSRA") from challenging his dismissal before this Court; (b) Senator Reed is protected from plaintiff's suit by sovereign immunity; and (c) plaintiff's alleged injury is not redressable against Senator Reed because a court cannot order the Senator to reappoint plaintiff.  Plaintiff's complaint fails to state a claim because (a) Senator Reed, as the official who appointed plaintiff, had authority to remove plaintiff, and nothing in the statute creating the Commission, or in caselaw cited by plaintiff, limits the Senator's removal authority; and (b) plaintiff, as an at-will employee, has no property interest that could be the basis of a due process claim.

Plaintiff's opposition asserts that the Court has jurisdiction and proffers a new claim – namely, he now argues that his removal violated the Constitution's separation of powers. Plaintiff's Opposition to Defendant Senator Jack Reed's Motion to Dismiss ["Pl's Opp. to Sen. Reed's MTD"], ECF No. 17.  On jurisdiction, plaintiff argues that the CSRA does not preclude his suit because his removal is not covered by the CSRA and because his claim (as he now states it) raises a constitutional challenge that falls outside the CSRA's remedial scheme.  Both

1

arguments are incorrect.  Members of the Commission are clearly defined to be federal

employees, *see* John S. McCain National Defense Authorization Act for FY 2019, Pub. L. No.

115-232, Div. A, Title X, Subtitle F, § 1087(b)(7), 132 Stat. 1636, 1992-96 (2018) [hereinafter

"NDAA § 1087"], and thus, actions challenging their termination fall squarely within the

coverage of the CSRA.  Both the Supreme Court and this Circuit have held that federal

employees must pursue any challenge to their discharge, except where expressly excepted, under

the procedures and remedies established by the CSRA, and they may not file suit in the district

courts.  *See United States v. Fausto,* 484 U.S. 439, 443-49, 455 (1988); *Nyunt v. Chairman,*

*Broadcasting Bd. of Governors*, 589 F.3d 445, 448 (D.C. Cir. 2009) (stating that CSRA is

"exclusive: It constitutes *the* remedial regime for federal employment and personnel

complaints"); *Grosdidier v. Chairman, Broadcasting Bd. of Governors,* 560 F.3d 495, 497 (D.C.

Cir. 2009) ("As our Court has emphasized, the CSRA is comprehensive and exclusive.").  This

exclusive route for seeking review applies even for claims challenging the constitutionality of the

basis for the discharge.  *See Elgin v. Department of the Treasury*, 567 U.S. 1, 13 (2012) ("[T]he

[CSRA] statutory review scheme is exclusive, even for employees who bring constitutional

challenges to federal statutes.").

Next, plaintiff asserts that his claim against Senator Reed qualifies for the exception to

sovereign immunity recognized by the Supreme Court in *Larson v. Domestic & Foreign*

*Commerce Corp.*, 337 U.S. 682 (1949), where the Court found that suits seeking to enjoin

government officers from acting beyond their statutory power, or from acting pursuant to

statutory power that violates the Constitution, are not barred by sovereign immunity.  Plaintiff's

claim, however, asks this Court to order Senator Reed to reappoint plaintiff to the Commission,

and the *Larson* exception does not extend to claims that seek not merely to enjoin an official

2

from taking an action, but to require a government official to take an "affirmative action" on behalf of the sovereign. *See Larson*, 337 U.S. at 691 n.11; *State of Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (per curiam). Similarly, plaintiff's opposition fails to establish that his claim is redressable for standing purposes, as he offers no legal authority that would permit courts to order a Senator to take an official act – here, reappointing plaintiff – that falls within the Senator's discretion.

On the merits, plaintiff's new claim fares no better than his old one. Plaintiff now argues that his removal from the Commission violated the Constitution's separation of powers because the NDAA establishes the Commission as an independent establishment in the executive branch, pursuant to 5 U.S.C. § 104, *see* NDAA § 1087(a)(1), and a Member of Congress may not "reach[] into the executive branch in order to remove an executive branch employee." Pl's Opp. to Sen. Reed's MTD at 7. This argument misconceives the separation of powers inquiry as a simplistic examination of statutory labels. As the Supreme Court's analysis in *Bowsher v. Synar*, 478 U.S. 714 (1986), demonstrates, the constitutional question depends not on administrative designations but on the particular functions assigned to the official. Thus, congressional authority to remove a government official intrudes upon the executive branch only if the duties assigned to the official are "executive powers" that entail "execution of the law." *See id.* at 732-33.

The Commission's sole duty under the NDAA is to "undertake a comprehensive study of United States military aviation mishaps that occurred between fiscal years 2013 and 2018," NDAA § 1087(h)(1), and to submit a report to the President and to the Senate and House Armed Services Committees with findings and recommendations. *See* NDAA § 1087(h)(2). The Commission neither administers or executes any laws of the United States nor promulgates any regulations. Its duties, therefore, do not involve "execution of the law," *see Buckley v. Valeo*,

3

424 U.S. 1, 137 (1976) (per curiam) (stating that "powers . . . of an investigative and informative nature, fall[] in the same general category as those powers which Congress might delegate to one of its own committees," and so can be done by officials appointed by Members of Congress), and Senator Reed's termination of a member of that Commission did not violate the separation of powers.

Plaintiff's opposition also fails to show that his complaint's allegations state a due process claim as a matter of law.  First, plaintiff's opposition provides no legal basis for concluding that he is anything but an at-will employee; thus, he lacks a property interest in his employment that would be subject to due process protections.  *See Hall v. Ford*, 856 F.2d 255, 265 (D.C. Cir. 1988).  Second, plaintiff's attempt to establish an injury to a constitutionally protected liberty interest in his reputation fails under both the reputation-plus and stigma-plus theories recognized by this Court.  He does not allege that Senator Reed made any defamatory public statements related to his termination that could support a reputation-plus due process claim.  *See Orange v. District of Columbia*, 59 F.3d 1267, 1274 (D.C. Cir. 1995) ("As we have held, injury to reputation cannot occur in the absence of public disclosure of the allegedly damaging statements.").  Nor has he made any specific allegations that are even remotely sufficient to demonstrate that he has been broadly precluded from continuing his career as required to make out a stigma-plus due process claim.  *See Jefferson v. Harris*, 170 F. Supp. 3d 194, 205 (D.D.C. 2016).  Thus, plaintiff fails to establish an injury to either a protected property or liberty interest necessary to state a due process claim.

Accordingly, the Court should grant Senator Reed's motion and dismiss plaintiff's complaint against him.

**ARGUMENT**

I.     **Plaintiff Fails To Establish This Court's Jurisdiction Over His Claim Against Senator Reed.**

     A.     **Plaintiff Cannot Evade The Civil Service Reform Act's Exclusive Remedial Scheme And Challenge His Removal Before This Court.**

As explained in Senator Reed's opening memorandum, plaintiff's challenge to his termination is subject to dismissal for lack of jurisdiction because it is precluded by the CSRA. As the Supreme Court has emphasized, *see Elgin*, 567 U.S. at 11-12; *Fausto*, 484 U.S. at 443-455, and this Circuit has affirmed repeatedly, the CSRA is "*exclusive*: It constitutes *the* remedial regime for federal employment and personnel complaints." *Nyunt*, 589 F.3d at 448 (first emphasis added); *see also Grosdidier*, 560 F.3d at 497 ("As our Court has emphasized, the CSRA is comprehensive and exclusive."); *Filebark v. U.S. Department of Transportation*, 555 F.3d 1009, 1010 (D.C. Cir. 2009); *Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005); *Graham v. Ashcroft,* 358 F.3d 931, 933–35 (D.C. Cir. 2004).  The courts have made clear that the CSRA's comprehensive scheme does not include bringing suit before the district courts to challenge an employee's discharge.  *See Elgin*, 567 U.S. at 9-15; *Graham*, 358 F.3d at 935 (CSRA precluded review of personnel action and "district court therefore had no subject matter jurisdiction" over plaintiff's claim). Rather, the CSRA provides for review of personnel actions solely before the Merit Systems Protection Board, with review in the Federal Circuit.  *See Fausto*, 484 U.S. at 446-47.[1]  Indeed, even where that route offers little or no relief, the CSRA still precludes resort to suits before the district courts.  *See Elgin*, 567 U.S. at 10-16; *Fausto*, 484 U.S. at 443-455.  As

---

[1] In those few circumstances where Congress "intends to preserve remedies for federal employees outside the CSRA, it does so expressly."  *Am. Federation of Gov't Employees v. Secretary of the Air Force*, 841 F. Supp. 2d 233, 237 (D.D.C. 2012) (quoting *Nyunt*, 589 F.3d at 448), *aff'd*, 716 F.3d 633 (D.C. Cir. 2013).  Plaintiff points to no express statutory provision that permits him to challenge his removal outside the CSRA.

this Circuit has "repeatedly said, 'what you get under the CSRA is what you get.'" *Nyunt*, 589

F.3d at 449 (quoting *Filebark*, 555 F.3d at 1010); *Grosdidier*, 560 F.3d at 497 (D.C. Circuit

"ha[s] emphasized . . . that the CSRA is the exclusive avenue for suit even if the plaintiff cannot

prevail in a claim under the CSRA").

       As NDAA § 1087(b)(7) clearly provides that members of the Commission are "Federal

employees," those members are subject to the provisions of the CSRA, including the exclusive

nature of its remedies for adverse personnel actions.[2]  Therefore, plaintiff may not challenge his

removal by bringing suit in district court, and, accordingly, the Court lacks subject matter

jurisdiction over this case.

       In his opposition, plaintiff asserts that the CSRA does not preclude him from challenging

his removal before this Court because the "subject of this suit does not fall within the auspices of

the [CSRA]."  Pl.'s Opp to Sen. Reed's MTD at 4.  He argues that the CSRA does not cover

"[e]very adverse action against a federal employee," *id.* (citing *Worthington v. United States*, 168

F.3d 24, 26 (Fed. Cir. 1999) and *Bosco v. United States*, 931 F.2d 879, 882 (Fed. Cir. 1991)), and

that "the government action taken against [plaintiff] is not specifically covered by the CSRA."

*Id.*  Plaintiff's argument is incorrect, and the cases he cites do not support his assertion.  Neither

*Worthington*, which involved a claim for overtime pay by an employee forced to work a

---

       [2]  In responding to Chairman Cody's motion to dismiss, plaintiff argues that he was not
an employee in the civil service, and thus is not subject to the CSRA.  Plaintiff's Opposition to
Chairman Cody's Motion to Dismiss at 4-5, ECF No. 16 ["Pl.'s Opp. to Chairman Cody's
MTD"].  However, the CSRA expressly defines the "Civil Service" to "consist[] of all appointive
positions in the executive, judicial, and legislative branches of the Government of the United
States, except positions in the uniformed services."  5 U.S.C. § 2101(1).  Plaintiff was appointed
to his position by Senator Reed, and NDAA § 1087(b)(7) clearly provides that members of the
Commission are "Federal employees."  Accordingly, plaintiff was an appointed employee "in the
executive, judicial, and legislative branches of the Government of the United States," and thus
part of the Civil Service and subject to the CSRA.

compressed schedule, nor *Bosco*, where IRS employees challenged the reclassification of their positions, involved a removal such as in this case.  In fact, in both of those cases, the Federal Circuit contrasted the personnel actions at issue from others, such as removal, that *are* covered by the CSRA.  *See Worthington*, 168 F.3d at 27 ("Being forced to work a compressed work schedule does not, for example, constitute a removal, a suspension, a reduction in grade or pay, a furlough, or a reduction-in-force. . . ."); *Bosco*, 931 F.2d at 883.  Moreover, the D.C. Circuit has expressly disagreed with the Federal Circuit's position on the breadth of the exclusivity of the CSRA remedial scheme.  *See Nyunt*, 589 F.3d at 448 and n.1 (stating that "[t]he CSRA is also exclusive: It constitutes *the* remedial regime for federal employment and personnel complaints[,]" and citing other courts of appeals that have ruled the same way but noting the exception of the Federal Circuit in *Worthington*).  In short, plaintiff's removal from the Commission *is* covered by the CSRA, and he has not offered any legal basis for a contrary conclusion.[3]

---

[3]  Plaintiff also suggests that his termination falls outside the CSRA as he was not removed in accordance with CSRA provisions that address certain employee removals – chapters 43 and 75 of title 5 of the United States Code.  *See* Pl.'s Opp. to Sen. Reed's MTD at 4-5.  Yet, those provisions are not exhaustive of all employee removals, so the alleged failure of plaintiff's removal to follow those procedures does not demonstrate that his removal falls outside the CSRA.  In fact, those CSRA provisions expressly do not apply to certain types of federal employees, including reemployed annuitants like plaintiff.  *See* 5 U.S.C. § 7511(b)(4) (chapter 75's subchapter on removal does not apply to employees receiving a civil service annuity); 5 U.S.C. § 4301(2)(G) (employee for chapter 43 purposes does not include "an individual occupying a position not in the competitive service excluded from coverage of this subchapter by regulations of the Office of Personnel Management"); 5 C.F.R. § 432.102(f)(11) (OPM regulation excluding reemployed annuitants from chapter 43 provisions on performance based removals); *see also* Exhibits F, G, H, and I, attached to Chairman Cody's Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 13-2 (plaintiff is a reemployed annuitant receiving civil service annuity).  Federal employees excluded from the removal provisions of chapters 43 and 75 are still employees for CSRA purposes more broadly (otherwise there would be no need for expressly excluding them from these chapters' provisions), and removals of such employees are subject to the CSRA's exclusive remedial procedures.

Plaintiff also argues that he is not precluded by the CSRA because he "is entitled to judicial review in accordance with [the Administrative Procedure Act,] 5 U.S.C. [§§] 705 and 706." Pl.'s Opp to Sen. Reed's MTD at 5.  Yet, the D.C. Circuit has expressly rejected this argument, making clear that "Federal employees may not circumvent the [CSRA]'s requirements and limitations by resorting to the catchall [Administrative Procedure Act] to challenge agency employment actions." *Grosdidier*, 560 F.3d at 497.  This is true, even where a complaint concerns a matter not specifically covered by the CSRA.  *See Filebark*, 555 F.3d at 1013 ("In *Graham v. Ashcroft*, [358 F.3d at 934,] we held that the lack of any entitlement to judicial review in the CSRA precluded litigation of an employment matter under the APA even where the complaint did not concern 'a *type* of personnel action covered by the CSRA.'").  Furthermore, APA review under 5 U.S.C. §§ 705, 706, like the APA's waiver of sovereign immunity under 5 U.S.C. § 702, applies only to agencies and does not apply to Senator Reed, as Members of the Senate are outside the coverage of the APA.  *See* 5 U.S.C. § 551(1)(A) (agency for purposes of APA does not include Congress).

Finally, plaintiff asserts that he is entitled to seek review of his removal before this Court because the Senator's authority to terminate him under NDAA § 1087 violates the Constitution's separation of powers.  Pl.'s Opp. to Sen. Reed's MTD at 5.  Characterizing this newly-asserted challenge to his termination as a constitutional claim against the Senator's authority in NDAA § 1087, however, does not allow him to evade the CSRA's remedial scheme.  The Supreme Court has found that the CSRA's comprehensive and exclusive scheme precludes federal employees from bringing suit in district courts to challenge their removals "*even for employees who bring constitutional challenges to federal statutes.*" *Elgin*, 567 U.S. at 13 (emphasis added). As the Court in *Elgin* explained, the CSRA's express recognition of an alternate judicial forum

for employee claims based on discrimination (*e.g.*, Title VII and the Age Discrimination in

Employment Act) indicates "that Congress knew how to provide alternative forums for judicial

review based on the nature of an employee's claim," and its declining to do so "for challenges to

a statute's constitutionality indicates that Congress intended no such exception." *Elgin*, 567 U.S.

at 13-14.  The Court found that the CSRA's purpose supports this conclusion:

> The CSRA's objective of creating an integrated scheme of review would be
> seriously undermined if, as petitioners would have it, a covered employee could
> challenge a covered employment action first in a district court, and then again in
> one of the courts of appeals, simply by alleging that the statutory authorization for
> such action is unconstitutional. Such suits would reintroduce the very potential for
> inconsistent decisionmaking and duplicative judicial review that the CSRA was
> designed to avoid.

*Id.* at 14.  *See also deLeon v. Wilkie*, No. 19-1250 (JEB), 2020 WL 210089, at *4 (D.D.C. Jan.

14, 2020) ("[T]he public interest in upholding the statutory scheme created by Congress for

addressing personnel-related matters is so strong that federal employees 'may not circumvent that

structure even if their claim is based . . . on the Constitution.'" (quoting *Steadman v. Governor*,

918 F.2d 963, 967 (D.C. Cir. 1990)).  Hence, plaintiff's argument that his removal under NDAA

§ 1087 violates the separation of powers does not allow him to evade CSRA preclusion.

In sum, under consistent Supreme Court and D.C. Circuit precedent, plaintiff's challenge

to his removal from the Commission falls squarely within the exclusivity of the CSRA.

Plaintiff's opposition fails to identify any statutory cause of action that would allow him to

circumvent the CSRA's exclusive remedial scheme and obtain judicial review of his removal

before this Court.  Accordingly, this Court lacks subject matter jurisdiction over plaintiff's suit.

## B.    Sovereign Immunity Precludes Plaintiff's Claim Against Senator Reed.

The Court also lacks jurisdiction because plaintiff's suit against Senator Reed in his

official capacity as the Ranking Member of the Senate Armed Services Committee is barred by

sovereign immunity.  *See* Def. Sen. Reed's MTD at 11-12 (citing cases on sovereign immunity

and application to Congress and its Members).  In order for plaintiff to maintain a suit against the

Senator, he must demonstrate an affirmative waiver of that immunity to establish the Court's

jurisdiction to hear his claims.  *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign

immunity is jurisdictional in nature," and "[a]bsent a waiver, sovereign immunity shields the

Federal Government and its agencies from suit.").  Neither of the two statutes cited in plaintiff's

complaint as a basis for this Court's jurisdiction – the general federal question provision, 28

U.S.C. § 1331, and the Little Tucker Act, 28 U.S.C. § 1346(a)(2) – provides a waiver of

sovereign immunity for claims against a Member of Congress.  *See Swan v. Clinton*, 100 F.3d

973, 981 (D.C. Cir. 1996) (federal question statute not general waiver of sovereign immunity);

28 U.S.C. § 1346(a)(2) (jurisdiction of Little Tucker Act limited to an "action or claim *against*

*the United States*") (emphasis added).  Plaintiff's opposition does not contest that conclusion.

Rather, plaintiff argues that his claim falls under the exception to sovereign immunity

recognized in *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949).  The

Supreme Court in *Larson* found that suits seeking specific relief from federal officials are not

precluded by sovereign immunity in two situations: (1) "where the officer's powers are limited

by statute," and the officer acts "beyond those limitations," those actions "are considered

individual and not sovereign actions," and so are "ultra vires . . . and therefore may be made the

object of specific relief," *id.* at 689; and (2) where "the statute or order conferring power upon

the officer to take action in the sovereign's name is claimed to be unconstitutional . . . .  Here,

too, the conduct against which specific relief is sought is beyond the officer's powers and is,

therefore, not the conduct of the sovereign."  *Id.* at 690.

The Supreme Court explained, though, that this exception was not unlimited, and relief

from such suits could not intrude unduly on the sovereign's authority, such as by requiring

affirmative actions by officers that are within the sovereign's discretion.

> Of course, a suit may fail, as one against the sovereign, even if it is claimed that
> the officer being sued has acted unconstitutionally or beyond his statutory powers,
> if the relief requested cannot be granted by merely ordering the cessation of the
> conduct complained of but will require *affirmative action* by the sovereign or the
> disposition of unquestionably sovereign property.  *North Carolina v. Temple*,
> 1890, 134 U.S. 22.

*Larson*, 337 U.S. at 691 n.11 (emphasis added).  Relief that mandates such affirmative action

falls outside of the *Larson* exception.  *See State of Hawaii*, 373 U.S. at 58 (dismissing on

sovereign immunity grounds a state's suit seeking injunctive relief against Director of the Bureau

of the Budget, explaining that "[h]ere the order requested would require the Director's official

affirmative action, affect the public administration of government agencies and cause as well the

disposition of property admittedly belonging to the United States."); *Painter v. Shalala*, 97 F.3d

1351, 1359 (10th Cir. 1996) (affirming dismissal of suit and noting that "the requested relief

would require us to go well beyond ordering the Secretary to cease doing something.

Specifically, it would require us to order the Secretary to take various forms of affirmative action,

and would require an outlay of federal funds to satisfy the supplemental payments requested by

plaintiff."); *but see Vann v. Kempthorne*, 534 F.3d 741, 752 (D.C. Cir. 2008) (noting that

"continuing force of *Larson*'s footnote 11 is not free from doubt").

Plaintiff's claim seeks just such an "affirmative action" from Senator Reed, requiring

him, in his capacity as the Ranking Member of the Senate Armed Services Committee, to

reinstate plaintiff to the Commission.  Compl. ¶ 29.  A claim seeking such relief is beyond the

scope of the *Larson* exception.  Accordingly, plaintiff's claim against Senator Reed cannot evade

the bar of sovereign immunity and should be dismissed.

**C.      Plaintiff Lacks Standing To Bring His Claim Against Senator Reed As His Injury Cannot Be Redressed By Relief Against The Senator.**

Plaintiff's opposition also fails to meet his burden to demonstrate that he has Article III standing to bring his claim against Senator Reed.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (stating that party seeking to invoke a federal court's jurisdiction bears the burden of establishing standing to sue).  As Senator Reed explained in his opening memorandum, *see* Def. Sen. Reed's MTD at 14-16, plaintiff's suit seeking to have the Court order the Senator to reappoint plaintiff to the Commission does not satisfy the redressability element of standing. *See Lujan*, 504 U.S. at 560-61 (third element of standing requires that plaintiff show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" against the defendant); *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (same). Plaintiff's opposition points to no legal authority for a court to enter an order requiring a Member of Congress to perform a discretionary act as part of his official duties – here, the appointment of a member of the Commission pursuant to statute.  *See* NDAA § 1087(b)(1)(C).  Such relief raises grave separation of powers concerns.  *See Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 500 (1866); *Hearst v. Black*, 87 F.2d 68, 71 (D.C. Cir. 1936); *see also Swan*, 100 F.3d at 978 ("The reasons why courts should be hesitant to grant such relief [seeking to require President to reinstate plaintiff to NCUA Board] are painfully obvious; the President, like Congress, is a coequal branch of government, and for the President to 'be ordered to perform particular executive . . . acts at the behest of the Judiciary,' at best creates an unseemly appearance of constitutional tension and at worst risks a violation of the constitutional separation of powers.") (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 827 (1992) (Scalia, J., concurring in part and concurring in the judgment)).

Plaintiff's only response is to assert that the cases cited deal with "intra-branch activities."  Pl.'s Opp. to Sen. Reed's MTD at 6.  Specifically addressing only *Hearst v. Black*, 87 F.2d 68, plaintiff claims that, while the D.C. Circuit in *Hearst* recognized that the court "could not direct how [the Senate committee] might use items in its possession, it could have ruled to prevent the [S]enate committee from obtaining them in the first place," thus showing that "a Senate Committee could be enjoined by the court" in its actions.  Pl.'s Opp. to Sen. Reed's MTD at 6-7.  However, plaintiff does not seek merely to enjoin Senator Reed from taking an action, but to have the Court order the Senator to reappoint plaintiff to the Commission.  Under *Hearst*, and the other cases cited, such relief is not available.  *See Hearst*, 87 F.2d at 71 ("[T]he universal rule, so far as we know it, is that the legislative discretion in discharge of its constitutional functions, whether rightfully or wrongfully exercised, is not a subject for judicial interference.").

Contrary to plaintiff's assertion, the courts do not have the power to order a Senator to make an appointment that is placed by law completely at his discretion.  Accordingly, plaintiff cannot show that it is likely that his alleged injury will be redressed by a favorable decision against Senator Reed, and therefore, he has no standing to bring his claim against the Senator.[4]

## II.   Plaintiff's Complaint Fails to State a Claim.

### A.   Senator Reed's Removal of Plaintiff Did Not Violate the Separation of Powers.

In his complaint, plaintiff claimed that his removal was unlawful because removal of commissioners under the NDAA could only be "for cause."  Compl. ¶¶ 24-28.  Plaintiff argued

---

[4]  To the extent plaintiff suggests in other filings that the Court need only order the Commission to treat the termination by Senator Reed as unauthorized, to consider plaintiff never to have been removed from the Commission, and to pay him accordingly, Plaintiff's Motion for Summary Judgment at 2, ECF No. 18, such an argument asserts no claim for relief against Senator Reed, and would provide no basis for his being a defendant in this suit.

13

that because the NDAA provided that commissioners are "appointed for the life of the

Commission," NDAA § 1087(b)(5), "only malfeasance or misfeasance would form the basis for

removal," Compl. ¶ 27, citing in support of this argument the Supreme Court's opinions in

*Humphrey's Executor v. United States*, 295 U.S. 602 (1935), and *Wiener v. United States*, 357

U.S. 349 (1958).  Senator Reed refuted this claim in his motion to dismiss, demonstrating that

the right to remove was implicit in the right to appoint, *see* Def. Sen. Reed's MTD at 16-25,[5] that

nothing in the NDAA imposed any restriction on removal, and that neither *Humphrey's*

*Executor*, *Wiener*, nor other authority presents any legal ground for imposing a limitation on his

removal authority.  *See id.* at 16-23.

Apparently conceding these points, plaintiff shifts to a new claim in his opposition and

asserts not that Senator Reed lacks statutory authority to remove plaintiff except for

"malfeasance or misfeasance," but, rather, that the Senator's authority to remove him on any

basis violates the separation of powers.  *See* Pl.'s Opp. to Sen. Reed's MTD at 7-9.[6]  Plaintiff

now argues that, because NDAA § 1087(a)(1) provides that "[t]he Commission shall be

considered an independent establishment of the Federal Government as defined by section 104 of

title 5, United States Code," and 5 U.S.C. § 104(1) provides that such independent

---

[5]  *Carlucci v. Doe*, 488 U.S. 93, 99 (1988) (noting long-standing rule with regard to federal service that, "absent a specific provision to the contrary, the power of removal from office is incident to the power of appointment") (internal quotation marks omitted); *see also Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 509 (2010) ("Under the traditional default rule, removal is incident to the power of appointment."); *Parsons v. United States*, 167 U.S. 324, 331 (1897); *Swan v. Clinton*, 100 F.3d at 979 (D.C. Cir. 1999); *Kalaris v. Donovan*, 697 F.2d 376, 389 (D.C. Cir. 1983).

[6]  Indeed, plaintiff no longer argues that NDAA § 1087 provides any "for cause" restriction on his removal from the Commission, or that one should be implied based on *Humphrey's Executor* or *Wiener*.  In fact, in neither his oppositions to Senator Reed's or Chairman Cody's motions to dismiss nor his two motions for summary judgment does plaintiff cite either case.

establishments are "in the executive branch," plaintiff is an executive branch employee.  Pl.'s

Opp. to Sen. Reed's MTD at 8.  Therefore, plaintiff argues, Senator Reed's removal of plaintiff

constituted a violation of the separation of powers because a Member of Congress may not

"reach[] into the executive branch in order to remove an executive branch employee."  *Id.* at 7

(citing *Bowsher v. Synar*, 478 U.S. 714 (1986)).

This new claim fares no better than the one asserted in his complaint.  As *Bowsher v.

Synar* – the case plaintiff relies on for his separation of powers claim – demonstrates, separation-

of-powers analysis turns on what functions government officials or employees carry out, that is,

what powers they exercise, and not on how their position is designated for administrative

purposes.  *See* 478 U.S. at 726-34; *cf. Department of Transportation v. Ass'n of Am. Railroads*,

575 U.S. 43, 51 (2015) ("Congressional pronouncements . . . are not dispositive of [an entity]'s

status as a governmental entity for purposes of separation of powers analysis under the

Constitution.").  Thus, in *Bowsher*, which involved a challenge to the powers granted by the

Balanced Budget and Emergency Deficit Control Act of 1985 to an official removable by

Congress, the Comptroller General, the Supreme Court's analysis focused not on which branch

the Comptroller was nominally located in, but, rather, whether the *functions* assigned by statute

to the Comptroller General were executive powers.  *See Bowsher*, 478 U.S. at 732 (having found

that "Congress has retained removal authority over the Comptroller General, . . . [t]he remaining

question is whether the Comptroller General has been assigned [executive] powers in the

[Act].").  That question depended on whether the duties assigned to the Comptroller General

constituted "execution of the law," *id.* at 732-33, and the Court concluded that the budget

sequestration authority granted to the Comptroller General constituted "functions . . . plainly

entailing execution of the law in constitutional terms."  *Id.*  As the Court explained:

> The executive nature of the Comptroller General's functions under the Act is
> revealed in § 252(a)(3) which gives the Comptroller General the ultimate
> authority to determine the budget cuts to be made. Indeed, the Comptroller
> General commands the President himself to carry out, without the slightest
> variation (with exceptions not relevant to the constitutional issues presented), the
> directive of the Comptroller General as to the budget reductions[.]

*Id.* at 733.  Because the Act gave the Comptroller General – an officer subject to congressional

removal – executive powers, it ran afoul of the separation of powers.

Under *Bowsher*, then, the question is whether the functions assigned to an official or

employee removable by Congress are "executive powers" entailing "execution of the law."  Under

the NDAA, the Commission's sole duty is to "undertake a comprehensive study of United States

military aviation mishaps that occurred between fiscal years 2013 and 2018," NDAA § 1087(h)(1),

and to submit a report to the President and to the Senate and House Armed Services Committees

that sets forth "a detailed statement of the findings and conclusions of the Commission . . . with

recommendations . . . for such legislative and administrative actions as the Commission considers

appropriate in light of the results of the study."  *Id.* § 1087(h)(2).  The Commission neither executes

any laws of the United States nor promulgates any regulations.  Put simply, its duties do not involve

"execution of the law," and the Commission thus exercises no "executive powers."  Accordingly,

plaintiff's removal from the Commission by Senator Reed does not violate the separation of

powers.  *See Mistretta v. United States*, 488 U.S. 361, 411 n.35 (1989) ("Our paramount concern

in *Bowsher* that Congress was accreting to itself the power to control the functions of another

Branch is not implicated by a removal provision, like the one at issue here, which provides no

control in one Branch over the constitutionally assigned mission of another Branch.").[7]

---

[7]  The Commission is far from unique in its structure.  Congress has created other study
commissions administratively designated as establishments in the executive branch with

(continued...)

The Supreme Court's decision in *Buckley v. Valeo*, 424 U.S. 1 (1976) (per curiam),

supports the conclusion that the activities undertaken by the Commission do not fall within the

executive sphere, and may accordingly be performed by officials subject to congressional

removal.  In *Buckley*, the Court considered a challenge to the composition of the newly-created

Federal Election Commission, which had some members appointed by congressional leaders.[8]  In

considering whether congressional appointment of commissioners presented a constitutional

problem, the Court examined the duties assigned to the FEC.  The Court noted that having

congressional appointees exercise some of the duties assigned to the FEC would not present a

constitutional problem.  In particular, "[i]nsofar as the powers confided in the Commission are

essentially of an *investigative and informative nature*, falling in the same general category as

those powers which Congress might delegate to one of its own committees, there can be no

question that the Commission as presently constituted may exercise them."  *Buckley*, 424 U.S. at

---

[7](...continued)
members appointed by both Members of Congress and the President.  *See, e.g.*, National Security
Commission on Artificial Intelligence, Pub. L. No. 115-232, § 1051, 132 Stat. 1962-65 (2018)
(commission formed as independent establishment in the executive branch, whose members are
federal employees, with 12 members appointed by Members of Congress, 2 by Secretary of
Defense, and 1 by Secretary of Commerce); National Commission on Military, National, and
Public Service, Pub. L. No. 115-232, § 553, 132 Stat. 2134-37 (2018) (commission formed as
independent establishment in the executive branch, whose members are federal employees, with
8 members appointed by Members of Congress and 3 by the President); Alyce Spotted Bear and
Walter Soboleff Commission on Native Children, Pub. L. No. 114-244, § 3, 130 Stat. 981-82
(2016) (commission established in Office of Tribal Justice of Department of Justice, with 8
members appointed by congressional leaders and 3 by the President); Evidence-Based Policy-
making Commission, Pub. L. No. 114-140, 130 Stat. 317-21 (2016) (commission established in the
executive branch with 12 members appointed by congressional leaders and 3 by the President).

[8]  Federal Election Campaign Act Amendments, Pub. L. No. 93-443, 88 Stat. 1280-81,
§ 310(a)(1) (1974) (commission composed of 6 members: 2 appointed by Senate President pro
tempore on recommendations of Senate Majority and Minority Leaders; 2 by Speaker of the
House upon recommendation of House Majority and Minority Leaders; and 2 by the President.
All six appointments subject to "the confirmation of a majority of both Houses of the Congress.")

137 (emphasis added).  In contrast, the Court found that "the Commission's enforcement power" constituted executing the law, and, "it is to the President, and not to the Congress, that the Constitution entrusts the responsibility to 'take Care that the Laws be faithfully executed.'"  *Id.* at 138 (quoting U.S. Const. art. II, § 3).  *Buckley* held that officials carrying out such executive duties must be appointed in accordance with the Appointments Clause of the Constitution, which does not permit appointment by Members of Congress.  *Id.* at 140.

The duties assigned to the Commission on Military Aviation Safety—to study and report to Congress and the President on a particular problem related to government policy—are the very functions that the Supreme Court described in *Buckley* as "investigative and informative in nature," and, accordingly, are powers that Congress could delegate to itself.  Therefore, Congress may provide for such activities to be undertaken by employees subject to congressional appointment and removal.[9]  Under *Buckley*'s reasoning, therefore, the appointment and removal of a member of the Commission by a Member of Congress raises no constitutional problem.[10]

---

[9]  DOJ's Office of Legal Counsel came to a similar conclusion regarding the duties of a study commission composed of appointees by the President and congressional leaders:

> [T]he Commission exists solely to conduct a study and to report its findings and recommendations to Congress, the President, and State and tribal governments. Its responsibilities are "essentially of an investigative and informative nature, falling in the same general category as those powers which Congress might delegate to one of its own committees."

*Applicability of 18 U.S.C. § 208 to National Gambling Impact Study Comm'n*, 23 Op. O.L.C. at 35 (internal footnote omitted) (quoting *Buckley*, 424 U.S. at 137).

[10]  While *Buckley* addressed the power of appointment, the power of removal is incident thereto and subject to the same analysis.  Indeed, perhaps the most striking aspect of plaintiff's argument is that if Senator Reed's authority to remove plaintiff violates the separation of powers because plaintiff was an employee of an independent establishment "in the executive branch," then it would be equally true that Senator Reed's appointment of plaintiff to such a position would likewise have violated the separation of powers.  Hence, to accept plaintiff's argument

(continued...)

In sum, as members of the Commission do not exercise any "executive powers," Senator

Reed's removal of plaintiff did not violate the Constitution's separation of powers, and plaintiff's

complaint fails to state a separation of powers claim as a matter of law.

### B.      Plaintiff Has Not Alleged Facts Sufficient To State a Due Process Claim.

As explained in Senator Reed's opening memorandum, at-will employees, such as

plaintiff, have no protected property interest for due process purposes.  *See* Sen. Reed's MTD at

24-25 (citing cases); *Hall*, 856 F.2d at 265 ("Those who are terminable at will have no property

interest because there is no objective basis for believing that they will continue to be employed

indefinitely."); *Tapp v. Washington Metro. Area Transit Auth.*, 306 F. Supp. 3d 383, 393 (D.D.C.

2016) (plaintiff's at-will employment "did not constitute a property right that triggers the

procedural protections of the Due Process Clause").  Plaintiff's opposition does not offer any

legal ground for finding his service as a commissioner to be anything other than at-will, and so he

has no due process property interest.[11]

Plaintiff's opposition to Chairman Cody's motion suggests for the first time a protected

liberty interest for due process purposes.  The D.C. Circuit has recognized two theories for

stating a due process claim of deprivation of a reputation-based liberty interest by a government

employee – generally referred to respectively as "reputation-plus" and "stigma-plus."  *Jefferson*,

---

[10](...continued)
would not return him to his seat on the Commission, but rather would lead to the conclusion that
he was never lawfully appointed in the first place.

[11]  Although Senator Reed's motion to dismiss specifically argued that plaintiff's
conclusory allegation that he "was never provided due process before his illegal removal,"
Compl. at 1, failed to state a claim, *see* Def. Sen. Reed's MTD at 24-25, plaintiff only addresses
his due process claim in his opposition to Chairman Cody's motion to dismiss or for summary
judgment.  *See* Pl.'s Opp. to Chairman Cody's MTD at 11-12, ECF No. 16.  This reply
memorandum therefore addresses plaintiff's due process arguments made in opposition to
Chairman Cody's motion.

170 F. Supp. 3d at 205; *see also DeSousa v. Department of* State, 840 F. Supp. 2d 92, 109 (D.D.C. 2012)  "To state a reputation-plus claim, a plaintiff must allege defamation that is accompanied by a discharge from government employment or at least a demotion in rank and pay." *Evans v. District of Columbia*, 391 F. Supp. 2d 160, 167 (D.D.C. 2005) (quoting *Mosrie v. Barry*, 718 F.2d 1151, 1161 (D.C. Cir. 1983)).  In addition, "he must 'allege that the government has actually stigmatized his or her reputation'"; and "[t]hird, he must plead facts indicating 'that the stigma has hampered future employment prospects.'" *Jefferson*, 170 F. Supp. 3d at 205 (quoting *Doe v. U.S. Department of Justice*, 753 F.2d 1092, 1111 (D.C. Cir. 2005)).

Plaintiff's complaint does not allege any public statements by Senator Reed that defamed plaintiff or that injured his reputation.  Indeed, he specifically alleges that "[n]o one, including Senator Reed, has accused [Plaintiff] of malfeasance or misfeasance."  Compl. ¶ 27  As no defamatory reason for his discharge was disseminated by Senator Reed, plaintiff's attempt to state a reputation-plus due process claim fails as a matter of law.  *See Orange*, 59 F.3d at 275 ("As we have held, injury to reputation cannot occur in the absence of public disclosure of the allegedly damaging statements."); *Doe v. Cheney*, 885 F.2d 898, 910 (D.C. Cir. 1989) (finding that reputation-plus theory fails as agency's actions "do not . . . appear to be stigmatizing because [agency] did not make public accusations that will damage [plaintiff's] standing and associations in the community" (citing *Bishop v. Wood*, 426 U.S. 341, 348 (1976) and *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972)); *DeSousa*, 840 F. Supp. 2d at 110 (reputation-plus liberty interest due process claim fails as "there is no allegation that the State Department has ever publicized that information to any third party, which is also a requisite element of defamation"); *Dave v. D.C. Metropolitan Police Department*, 926 F. Supp. 2d 247, 251 (D.D.C. 2013) ("Because in this case plaintiff has failed to identify any public disclosures and has not articulated

20

any non-speculative likelihood that information in his personnel files will be disclosed to

prospective future employers without his consent, his reputation plus liberty interest claim fails.").[12]

Plaintiff also fails to state a stigma-plus claim.  In order to state such a claim, "a

[plaintiff] must show that her termination 'has worked a change in [her] status under law, either

by (a) automatically excluding her from a definite range of employment opportunities . . . or (b)

broadly precluding her from continuing in her chosen career.'"  *McGinnis v. District of*

*Columbia*, 65 F. Supp. 3d 203, 215 (D.D.C. 2014) (quoting *Kartseva v. Department of State*, 37

F.3d 1524, 1527 (D.C. Cir. 1994)); *see also Jefferson*, 170 F. Supp. 3d at 205.  Plaintiff alleges

no "automatic" exclusion or disbarment from any employment opportunities, as his removal

clearly triggered none.  Nor has plaintiff sufficiently alleged that any stigma from his removal

from the Commission has had the "broad effect of largely precluding [him] from pursuing [his]

chosen career," *Kartseva*, 37 F.3d at 1528, or that "his ability to pursue his chosen profession has

been 'seriously affected, if not destroyed.'"  *deLeon*, 2020 WL 210089, at *6 (quoting *O'Donnell*

*v. Barry*, 148 F.3d 1126, 1141–42 (D.C. Cir. 1998)).

Plaintiff's opposition to Chairman Cody's motion to dismiss merely asserts that "[f]or Dr.

Mapes to be dismissed from his employment as a Commissioner would damage his reputation –

especially in light of the fact that the attempt to illegally dismiss him came as a result of

unwarranted complaints about him from within the military aviation community, the very

community in which his reputation would suffer."  Pl.'s Opp. to Chairman Cody's MTD at 12,

ECF No. 16.  That purely conclusory allegation is woefully insufficient to state a stigma-plus

---

[12]  Particularly as an at-will employee, plaintiff's failure to plead in his complaint – or
articulate in his opposition – any specific injury to his reputation beyond just the fact of his
termination undermines his attempt to assert a reputation-plus due process claim.  *See*
*McCormick v. District of Columbia*, 752 F.3d 980, 989 (D.C. Cir. 2014) ("The termination of an
at-will employee is not sufficient to establish the deprivation of protected liberty interests.").

claim.  *See, e.g.*, *Jefferson*, 170 F. Supp. 3d at 205-06 (finding plaintiff's allegations that he has

"found it very difficult to obtain a job," and that he has suffered "some 'hampering' of

employment prospects," including "episodic anecdotes of having had one job offer revoked,

having final negotiations terminated in another, and losing a handful of public-speaking

opportunities are insufficient to show broad preclusion from continuing [plaintiff's] career");

*deLeon*, 2020 WL 210089, at *6 ("Plaintiff's Complaint falls short [in attempting to allege a

stigma-plus claim].  He offers only the bare assertion that the agency's actions have 'prevented

him from obtaining employment in his chosen profession.'  Missing from his Complaint are

factual allegations that could support a finding that he was broadly precluded from continuing his

career.") (quoting Plaintiff deLeon's complaint).[13]  In short, plaintiff has failed to allege any facts

remotely sufficient to state a claim for deprivation of his liberty interest without due process

under either the reputation-plus or stigma-plus theories.[14]

---

[13]  In addition, factual assertions in opposition briefs to motions to dismiss are not
allegations formally pled in the complaint and should be disregarded in considering whether
plaintiff's complaint states a claim for relief.  *See Middlebrooks v. Godwin Corp.*, 722 F. Supp.
2d 82, 87 n.4 (D.D.C. 2010) ("[P]laintiff failed to include these allegations in her complaint, and
plaintiff may not amend her complaint by the briefs in opposition to a motion to dismiss.");
*Perkins v. Vance-Cooks*, 886 F. Supp. 2d 22, 29 n.5 (D.D.C. 2012) ("It is settled law in this
circuit that a plaintiff may not raise new allegations in this manner."); *Konah v. District of
Columbia*, 815 F. Supp. 2d 61, 71 (D.D.C. 2011) ("Because a motion to dismiss requires courts
to test the sufficiency of the factual allegations contained within the four corners of the
complaint, the court disregards any additional factual allegations contained within the plaintiff's
opposition to the defendants' motion.").

[14]  Plaintiff also fails to allege what process he was due and did not receive.  He simply
asserts that his "[due process] claim is that the process used to remove him must be legal," and that
"[t]he process by which he was removed was not legal," as "[h]e was removed based on a letter from
an individual, [Senator Reed,] who had no authority to remove him from the position."  Pl.'s Opp. to
Chairman Cody's MTD at 12-13, ECF No. 16.  In essence, plaintiff is claiming that he was denied
due process because his removal violated the separation of powers.  Such an assertion, beyond being
legally meritless as explained earlier, *supra* at 13-19, fails to identify any *process* that he claims
he was due and failed to receive, and is therefore insufficient for alleging a due process violation.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Memorandum of Points and Authorities in Support of Defendant Senator Jack Reed's Motion to Dismiss, the Court should grant the motion and dismiss plaintiff's complaint against Senator Reed with prejudice.

Respectfully submitted,

 /s/ *Patricia Mack Bryan*
Patricia Mack Bryan, Bar #335463
Senate Legal Counsel

Morgan J. Frankel, Bar #342022
Deputy Senate Legal Counsel

Grant R. Vinik, Bar #459848
Assistant Senate Legal Counsel

Thomas E. Caballero
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250
(202) 224-4435 (tel)
(202) 224-3391 (fax)

Dated: May 29, 2020                          Attorneys for Defendant Senator Jack Reed