UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER B. MAPES,<br><br>    Plaintiff,<br><br>       v.<br><br>SENATOR JACK REED,<br>RICHARD CODY, Chairman,<br>National Commission on Military<br>Aviation Safety<br><br>    Defendants. | Civ. A. No. 20-0223 (JEB) |

**REPLY IN SUPPORT OF DEFENDANT
<u>CHAIRMAN CODY'S MOTION TO DISMISS</u>**

       This Court should grant the Commission's motion to dismiss. Rather than defending the claims stated in his Complaint, Plaintiff instead seeks to substitute new, unpled claims in his opposition. Indeed, Plaintiff fails to offer *any* viable arguments to refute the Commission's multiple grounds for dismissal.

**INTRODUCTION**

       Plaintiff is a federal employee who lost his job and seeks redress, but does so in an improper forum and with an insufficient complaint. His claims to the contrary are unavailing.

       First, despite bearing the burden, Plaintiff fails to adequately explain why this Court has jurisdiction in light of the Civil Service Reform Act ("CSRA"). Instead, Plaintiff erroneously posits that he was not in the civil service (without providing an alternate explanation), cites inapplicable statutes, and ignores relevant precedent.

1

Second, rather than defending it, Plaintiff abandons his statutory claim that the National Defense Authorization Act for Fiscal Year 2019 ("NDAA") prohibited his removal. *See* Pub. L. No. 115-232, § 1087, 132 Stat. 1636, 1992-96 (2018). Plaintiff now claims that his removal violated the separation of powers doctrine instead of the NDAA. This Court need not address this new, unpled claim. But even with indulgence, this unpled claim fails.

Third, Plaintiff still has not properly pled a due process claim. Among other infirmities, Plaintiff has yet to allege what process he was wrongfully denied. His attempts to defend this claim only magnify – rather than minimize – its fatal flaws.

Fourth, Plaintiff concedes his status as a reemployed annuitant under 5 U.S.C. § 3323. On this basis alone, this Court can and should grant summary judgment.

Finally, having submitted money claims in excess of this Court's jurisdictional ceiling, Plaintiff proposes inapt remedies, none of which satisfy his burden to establish jurisdiction.

**ARGUMENT**

**I.    This Court Lacks Subject-Matter Jurisdiction, As Plaintiff's Suit Is Precluded By The Civil Service Reform Act (CSRA)**

As Plaintiff correctly states, it is his burden to establish this Court's jurisdiction over his employment claim. *See* Plaintiff's Opposition to Chairman Cody's Motion to Dismiss, ECF No. 16, at 2 ["Pl.'s Opp. to Chairman Cody's MTD"]. To meet his burden, Plaintiff asserts that: (1) he was not in the civil service; (2) he was not in the excepted service; (3) the CSRA did not cover his removal; and (4) this Court has jurisdiction under the Administrative Procedure Act. *Id*. at 4-8. Each of these is clearly wrong.

**A.    Plaintiff Was A Civil Servant**

First, Plaintiff claims that he was "not a Civil Service employee" and "not appointed in the civil service." *Id*. at 4, 5. The CSRA, however, defines the "civil service" as "*all appointive*

*positions in the executive, judicial, and legislative branches* of the Government of the United States, except positions in the uniformed services." 5 U.S.C. § 2101(1) (emphasis added). In his opposition, Plaintiff admits he "is an executive branch employee" who was appointed into his position. Pl.'s Opp. to Chairman Cody's MTD, ECF No. 16, at 1, 10. Therefore, by his own admission, Plaintiff fell within the "civil service."

      **B.**     <u>**Plaintiff Was A Member Of The Excepted Service**</u>

Second, Plaintiff argues that he was not a member of the excepted service. *Id*. at 5-6. Again, the CSRA contradicts his argument: "For the purpose of this title, the 'excepted service' consists of those civil service positions which are not in the competitive service or the Senior Executive Service." 5 U.S.C. § 2103. Thus, Plaintiff must be in the excepted service.

To support his contrary argument, Plaintiff badly misconstrues 5 U.S.C. § 3161(b). Pl.'s Opp. to Chairman Cody's MTD, ECF No. 16, at 5-6. Subsection (b) has two relevant paragraphs. The first states that the head of a temporary organization (such as the Commission) may appoint employees. 5 U.S.C. § 3161(b)(1). The other states that members of temporary organizations are in the excepted service. 5 U.S.C. § 3161(b)(3). In interpreting these sections, Plaintiff argues that only employees appointed by the head of the agency under paragraph (1) are in the excepted service under paragraph (3).

This interpretation is deeply flawed – the paragraphs are not conjunctive, each paragraph is a stand-alone sentence, and there is no textual support that paragraph (3) only applies to employees appointed under paragraph (1). Furthermore, this interpretation contradicts both the definition of "excepted service" in 5 U.S.C. § 2103, and the clear explanation in 5 U.S.C. §

3

Case 1:20-cv-00223-JEB   Document 23   Filed 05/29/20   Page 4 of 19

3161(b)(3) that "[t]he positions of employment in a temporary organization are in the excepted service of the civil service."[1]

---

[1] Notably, while Plaintiff admits he was a federal employee, he never tells this Court what type of employee he was, nor what rules and procedures supposedly governed his employment. Pl.'s Opp. to Chairman Cody's MTD, ECF No. 16, at 5, 7, 9-10.

### C. The CSRA Covers Plaintiff's Removal

Without addressing or distinguishing settled precedent, Plaintiff next argues that his removal is not subject to the CSRA.  Pl.'s Opp. to Chairman Cody's MTD, ECF No. 16, at 6-8.  As stated in the Commission's motion to dismiss, "the CSRA provides 'a comprehensive system for reviewing personnel action taken against federal employees.'"  Defendant Chairman Cody's Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 13, at 10 ["Def. Chairman Cody's MTD"] (quoting *United States v. Fausto*, 484 U.S. 439, 455 (1988)).  Reviewable actions include "removal, suspension for more than 14 days, reduction in grade or pay, or furlough for 30 days or less."  *Elgin v. Department of the Treasury*, 567 U.S. 1, 5-6 (2012) (citing 5 U.S.C. § 7512).

To support his argument, Plaintiff cites two cases involving actions other than removal.  Pl.'s Opp. to Chairman Cody's MTD, ECF No. 16, at 6.  While Plaintiff is correct that the CSRA does not cover every adverse action against a federal employee, *id.*, it *does* cover removal.  *See* 5 U.S.C. § 7512 ("Actions Covered") (stating without qualification that "[t]his subchapter applies to – removal . . .").  Furthermore, "[w]hen Congress intends to preserve remedies for federal employees outside the CSRA, 'it does so expressly.'"  *AFGE v. Secretary of the Air Force*, 841 F. Supp. 2d 233, 237 (D.D.C. 2012) (quoting *Nyunt v. Chairman, Broadcasting Bd. of Governors*, 589 F.3d 445, 448 (D.C. Cir. 2009), *aff'd*, 716 F.3d 633 (D.C. Cir. 2013).  Plaintiff points to no express statutory provision that permits him to challenge his removal outside the CSRA.

Plaintiff separately claims that "[b]ecause the CSRA does not, by its terms, cover the attempted removal of an Executive Branch employee by someone not within an Executive branch agency, and therefore has no authority to do so, [he] is entitled to judicial review . . ."

Pl.'s Opp. to Chairman Cody's MTD, ECF No. 16, at 7.  However, as this Court recently stated, it is well settled that the CSRA is expansive, comprehensive, and covers all manner of legal arguments, including constitutional claims.  *deLeon v. Wilkie*, 2020 U.S. Dist. LEXIS 5908, *9-10 (D.D.C. 2020).[2]

### D. The Administrative Procedure Act (APA) Does Not Confer Jurisdiction Here

Finally, Plaintiff mistakenly claims that "[he] is entitled to judicial review in accordance with 5 U.S.C. [§§] 705 and 706."  Pl.'s Opp. to Chairman Cody's MTD, ECF No. 16, at 7.  By their plain language, §§ 705, 706 do not confer jurisdiction as Plaintiff suggests.  While Section 702 of the APA could be read to allow judicial review over the Commission's actions, this Circuit has repeatedly rejected using the APA to circumvent CSRA preclusion.  "We have long held that federal employees may not use the Administrative Procedure Act to challenge agency employment actions."  *Filebark v. Dep't of Transportation*, 555 F.3d 1009, 1010 (D.C. Cir. 2009).

In sum, the Commission made a detailed argument as to why this Court lacks jurisdiction, including citing multiple statutes and precedent from this Court, the D.C. Circuit, and the Supreme Court.  Plaintiff, who carries the burden to establish jurisdiction, responded by citing inapplicable statutes and ignoring binding precedent.  As Plaintiff failed to identify any basis that allows him to circumvent the CSRA, this Court should dismiss his lawsuit.

---

[2] Indeed, like Plaintiff, Elgin argued that he was not subject to the CSRA because his claim involved a constitutional issue that was not covered by the CSRA.  *Elgin*, 567 U.S. at 13.  The Court rejected this argument and found "[t]he purpose of the CSRA also supports our conclusion that the statutory review scheme is exclusive, *even for employees who bring constitutional challenges to federal statutes*."  *Id.* (emphasis added).  In any case, no such constitutional claim was properly pled here.  *See infra* Sections II and III.

## II.     Plaintiff Fails To State A Claim, As His Removal Did Not Violate NDAA § 1087

### A.     Plaintiff Abandoned His Statutory-Based Claim Regarding His Removal

In his complaint, Plaintiff repeatedly asserted that his removal violated NDAA § 1087. Compl. ¶¶ 1, 11, 13, 21-28.  However, in responding to the motion to dismiss, Plaintiff does not defend this statutory claim and instead asserts an unpled constitutional claim.  Pl.'s Opp. to Chairman Cody's MTD, ECF No. 16, at 8-11.  Plaintiff abandoning this claim in response to the motion to dismiss is a powerful concession that it cannot bear the weight placed upon it.[3]

Federal Rule of Civil Procedure 8(a)(2) only requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief," but it must still "give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977) (citations omitted).

Here, Plaintiff's Complaint, "brought to enforce the provisions of [the NDAA]," asserts two claims: (1) that he was "illegally removed" from the Commission, and (2) that he was "never provided due process" before removal.  Compl. at Intro.  Had Plaintiff failed to include the reason his removal was "illegal," he would have failed to state a claim.  *See, e.g.*, *Pyne v. District of Columbia*, 298 F. Supp. 2d. 7, 12 (D.D.C. 2002) (dismissing claims because plaintiff failed to identify the specific law or statute her claims were based upon).  But Plaintiff *did* specify the law that was allegedly violated for this claim: NDAA § 1087.  Compl. ¶¶ 1, 11, 13, 21-28.  Plaintiff

---

[3] Also, Plaintiff's standard of review section exclusively cites cases that predate the Supreme Court's seminal decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Pl.'s Opp. to Chairman Cody's MTD, ECF No. 16, at 3-4.

did not assert, at any point in his complaint, that Senator Reed was constitutionally barred from removing him.[4]

In his complaint, Plaintiff even framed the key question as "whether a person with the power of appointment can remove an appointee absent any *statutory* authority to do so." *Id*. ¶ 24. (emphasis added). He also cited two cases "for the proposition that an appointee . . . can only be removed *based on the removal tenants of a statute*, not simply based on the whim of the appointing official." *Id*. ¶ 26 (emphasis added). Plaintiff argued that the logic of these cases, which addressed the President's removal power, were "equally applicable to the appointing power of any government official." *Id*.

Plaintiff's complaint further asserted that, under NDAA § 1087, "only malfeasance or misfeasance would form the basis of removal." *Id*. ¶ 27. The complaint added, "If a Commissioner feels his or her continued participation on the Commission depends on the pleasure of an appointing official . . . then neither the Commissioner nor the Commission can fully serve their valuable purpose." *Id*. ¶ 28. Simply put, at every juncture, Plaintiff asserted a statutory-based claim that the appointing official was required to find "malfeasance or misfeasance" before removal.

In its motion to dismiss under Rule 12(b)(6), the Commission described why Plaintiff's claim is fatally flawed. *See* Def. Chairman Cody's MTD, ECF No. 13, at 12-18. This included explaining that Plaintiff misinterpreted the cited cases, failed to account for his employee status,

---

[4] That Senator Reed, on the other hand, raised *a defense* to Plaintiff's prayer for reinstatement (Compl. ¶ 29) – of which the separation of powers doctrine was a component – is entirely independent of any *affirmative claim* that Plaintiff's complaint failed to raise. *See* Memorandum of Points and Authorities in Support of Defendant Senator Jack Reed's Motion to Dismiss, ECF No. 12, at 14-16; Def. Chairman Cody's MTD, ECF No. 13, at 23 n.10. Neither the assertion of the Senator's defense nor the Commission's acknowledgement of it presaged the abandonment of Plaintiff's statutory removal claim nor signaled its replacement by a new constitutional claim raising a very different form of separation of powers issue.

and ignored the general rule that when a statute is silent on removal, the power of removal is incident to the power of appointment. *Id*. The Commission also noted that Plaintiff failed to identify anything in the statute – in either text or history – that limited Senator Reed's removal authority. *Id*. at 12-13.

Having drawn out the arguments and authorities set against him, Plaintiff now abandons his initial claim and invokes the Constitution's separation of powers to attack his removal. Not only is this significant pivot incorrect, it is unpled. And beyond unpled, it was unimplied. The demonstrable lack of fair notice which accompanies this radical shift should not be indulged. In this Circuit, a "[p]laintiff who is represented by counsel may not amend her pleadings through her opposition." *Xingru Li v. DC*, 265 F Supp. 3d 91, 1001 (D.D.C. 2017) (dismissing complaint). *See also Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 87 n.4 (D.D.C. 2010) ("[P]laintiff may not amend her complaint by the briefs in opposition to a motion to dismiss."); *Konah v. District of Colombia*, 815 F. Supp. 2d 61, 71 (D.D.C. 2011) (because motion to dismiss tests sufficiency from the ***complaint's***, not ***opposition's***, four corners, amendment opposition briefing forbidden).

Furthermore, this belated switch caused Plaintiff's opposition to raise arguments that are not responsive to the Commission's motion to dismiss, nor consistent with his own complaint. This Court should view Plaintiff's failure to defend his statutory claim as a concession that it should be dismissed. *See, e.g.*, *Singh v. District. of Columbia*, 55 F. Supp. 3d 55, 66 (D.D.C. 2014) ("The rule in this circuit is clear that when a plaintiff fails to respond to an issue raised in a dispositive motion, the Court may treat that argument as conceded."); *Iweala v. Operational Techs. Servs., Inc.*, 634 F. Supp. 2d 73, 80-81 (D.D.C. 2009).

### B. Senator Reed's Actions Were Not Unconstitutional

Plaintiff cites two cases for the proposition that his removal violated the Constitution's separation of powers doctrine: *Bowsher v. Synar*, 478 U.S. 714 (1986), and *PHH Corp v. Consumer Financial Protection Bureau*, 881 F.3d 75 (D.C. Cir. 2018). Pl.'s Opp. to Chairman Cody's MTD, ECF No. 16, at 9-10. For the reasons described above, this Court need not address this unpled claim. However, should this Court reach this claim, it is meritless.[5]

As outlined below, Plaintiff misinterprets these cases and fails to grasp the broader and adverse implications of his argument, as the alleged issue with his removal would have precluded his appointment. Simply put, if Plaintiff's removal violated separation of powers, then his appointment did as well. Therefore, even if Plaintiff is correct regarding separation of powers (and he is not), the remedy for an unlawful appointment is not reinstatement.

#### 1. *Bowsher* Does Not Support Plaintiff's Unpled Claim

First, *Bowsher* does not support Plaintiff's argument that his removal violated separation of powers, particularly when overlaid against *Buckley v. Valeo*, 424 U.S. 1 (1976). In *Bowsher*, the Court explained that "Congress cannot reserve for itself the power of removal *of an officer charged with the execution of the laws* except by impeachment." 478 U.S. at 726 (emphasis added). Put differently, Congress may not grant itself removal power over an officer "entrusted

---

[5] In light of what has already been a substantial pivot by Plaintiff that considerably multiplied the proceeding, the Commission finds itself on the horns of dilemma: pitting its legitimate right to stand on its good faith response to the only Complaint on file and, among other things, avoid an expansion of the expense and scope of the lawsuit against a self-protective interest that both demonstrates respect for the Court's time and resources and eliminates any possibility of waiver or concession as to any newly-minted facts, claims or theories being implied. For the most part, the Commission has attempted to respond both technically and substantively to all but the most remotely implied claims and arguments. The purpose of this margin note is to offer to submit supplemental briefing on any "new" matter that is permitted to proceed and for which a deeper analysis would be of assistance to the Court or, as a matter of fairness, would provide reasonable assurance of the Commission's right to be heard and not be penalized if the Commission's filings are seen with the benefit of hindsight out of alignment with Plaintiff's claims.

with executive powers." *Id*. at 732.  After concluding the Comptroller General was an officer who exercised such powers, the Court found that any attempt by Congress to retain removal authority represented an impermissible "intrusion" into executive functions.  *Id*. at 734.

*Buckley* serves as the opposite bookend to *Bowsher*.  While *Bowsher* focused on removal, *Buckley* addressed, in part, whether Congress could *appoint* members of the Federal Election Commission.  424 U.S. at 124-137.  After concluding that Federal Election Commissioners are "officers" whose appointments by Congress violated the Appointments Clause, the Court considered "which, if any, of [the Commission's] powers" could still be exercised.  *Id*. at 137-141.

The Court concluded that because the Commission's powers were "essentially of an investigative and informative nature, falling in the same general category as those powers which Congress might delegate to one of its own committees, there can be no question that the Commission as presently constituted may exercise them." *Id*. at 137.  Such appointees may "properly perform duties only in aid of those functions that Congress may carry out by itself, or in an area sufficiently removed from the administration and enforcement of the public law as to permit their being performed by persons not 'Officers of the United States.'" *Id*. at 139.

In other words, resolving a separation of powers question turns on what *powers* the commissioners exercised, not the branch to which they were titularly assigned.  *See Bowsher*, 478 U.S. at 726-34; cf. *Dep't of Transportation v. Ass'n of American Railroads*, 575 U.S. 43, 51 (2015) ("Congressional pronouncements . . . are not dispositive of [an entity]'s status as a governmental entity for purposes of separation of powers analysis under the Constitution."). Thus, *Bowsher* and *Buckley*, together, stand for the straightforward proposition that Congress may not appoint or remove an officer exercising executive power.  As such, the Constitution

provides "a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other," *Buckley*, 424 U.S. at 122, and avoids the potential "dange[r] of congressional usurpation of Executive Branch functions." *Bowsher*, 478 U.S. at 727; *see also Morrison v. Olson*, 487 U.S. 654, 693-97 (1988); *Mistretta v. United States*, 488 U.S. 361, 411 n.35 (1989).

Such concerns are absent here. The Commission is not exercising executive powers, but rather is tasked with writing a non-binding report to the President and congressional defense committees. *See* NDAA, § 1087(h)(2). The Commission may not issue regulations, execute laws, or hear cases. The Commission's advisory report, given to two separate branches, does not raise concerns of "encroachment or aggrandizement," nor pose the risk of "congressional usurpation." *Buckley*, 424 U.S. at 122; *Bowsher*, 478 U.S. at 727. If anything, the NDAA adopts as its model those exact functions approved in *Buckley*. The Commission's tasks are "investigative and informative" and "sufficiently removed from the administration and enforcement of the public law as to permit their being performed by persons not 'Officers of the United States.'" 424 U.S. at 137, 139.

Plaintiff has conceded that he is a "mere employee" and not an Officer of the United States. Pl.'s Opp. to Chairman Cody's MTD, ECF No. 16, at 10. Consequently, the concerns identified in *Bowsher* and *Buckley* are even further removed from this case. Had the implication of Plaintiff's reference to *Bowsher* been accurate, he would have been an official wielding executive power who could not have been lawfully appointed by Senator Reed under *Buckley*. However, instead of creating such constitutional issues, the NDAA clearly *avoided* them by limiting the functions of the Commissioners to remaining "investigative and informative." [6]

---

[6] The Supreme Court's observations in *Mistretta* confirm as much. The Court stated its "paramount concern in *Bowsher*" involved Congress "accreting to itself the power to control the

*Buckley*, 424 U.S. at 137. And, if the NDAA was somehow "susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, [this Court's] duty is to adopt the latter." *Harris v. United States*, 536 U.S. 545, 555, 122 S. Ct. 2406, 2413 (2002) (citation omitted).

In sum, there can be no violation of separation of powers where, as here, the Commission wields no power, and certainly wields none of the powers exclusively vested in officers of the Executive Branch.

### 2. *PHH Corp* Does Not Support Plaintiff's Unpled Claim

*PHH Corp* is similarly unhelpful to Plaintiff's argument. As Plaintiff concedes, *PHH Corp* involves an express for-cause limitation on the President's removal of an officer. Pl.'s Opp. to Chairman Cody's MTD, ECF No. 16, at 9-10. That said, even the case's limited language regarding Congressional removals undercuts Plaintiff's position. *PHH Corp* merely highlights that "the culprit violating the separation of powers in *Bowsher* was Congress's aggrandizement of its own control over executive officers." 881 F.3d at 88. Plainly, such "aggrandizement" is absent here.[7]

Summing up: Plaintiff's unpled claim should be ignored; but even if not, it should be deemed meritless. Neither *Bowsher* nor *PHH Corp* supports Plaintiff's conclusory and sweeping assertion that his removal by Senator Reed violated separation of powers. And if Plaintiff's

---

functions of another Branch." 488 U.S. at 411 n.35. "To permit Congress to remove *an officer performing executive functions* . . . would, in essence, give Congress veto power over executive action." *Id*. (emphasis added). The Court also clarified that "[n]othing in *Bowsher* . . . suggests that one Branch may never exercise removal power, however limited, over members of another Branch." *Id*.

[7] The Commission notes that the Supreme Court is currently considering a similar issue to *PHH Corp* in *CFPB v. Seila Law LLC*, 923 F.3d 680 (9th Cir. 2019), *cert. granted*, 140 S. Ct. 427, 205 L. Ed. 2d 244 (2019).

13

removal *did* somehow violate separation of powers, then his appointment did as well, and the remedy for an unconstitutional appointment is not reinstatement. Under no scenario is Plaintiff entitled to relief.[8]

## III. Plaintiff Fails To State A Due Process Claim

### A. Plaintiff Has Yet To Properly Allege A Lack Of Process

The Commission's motion to dismiss highlighted that Plaintiff failed to allege facts to support his due process claim. *See* Def. Chairman Cody's MTD, ECF No. 13, at 18-20. In response, Plaintiff asserts he "made a due process claim" because "[t]he process by which he was removed was not legal." *See* Pl.'s Opp. to Chairman Cody's MTD, ECF No. 16, at 12-13. This is insufficient, on multiple grounds.

First, Plaintiff stated there were "two aspects" to his complaint: "illegal removal" and a lack of "due process." Compl. at Intro. Plaintiff now concedes these two claims are, in fact, the same. Pl.'s Opp. to Chairman Cody's MTD, ECF No. 16, at 12-13. The alleged lack of due process *was* the alleged illegal removal.

Second, as Plaintiff did not substantively respond to the motion, this Court should treat the issue as conceded. *See, e.g.*, *Singh*, 55 F. Supp. 3d at 66 ("The rule in this circuit is clear that when a plaintiff fails to respond to an issue raised in a dispositive motion, the Court may treat that argument as conceded."); *Iweala*, 634 F. Supp. 2d at 80-81.

Finally, as noted in the Commission's motion to dismiss, the language of the complaint remains insufficient to state a proper claim. Def. Chairman Cody's MTD, ECF No. 13, at 18-20;

---

[8] One final, practical matter: Even assuming that Senator Reed could lawfully appoint Plaintiff but then not remove him, the removal authority must reside somewhere. To this extent, President Trump's concurrence in the decision to remove Plaintiff from the Commission would render any infirmity in the removal harmless. Exhibit E of Enclosure 1 to Def. Chairman Cody's MTD, ECF No. 13-1.

*see Koch v. White*, 967 F. Supp. 2d 326, 334-35 (D.D.C. 2013) ("To state a procedural due process claim, a complaint must suggest what sort of process is due.") (citations and internal quotation marks omitted); *Elkins v. District of Columbia*, 690 F.3d 554, 561 (D.C. Cir. 2012).

### B.    **Plaintiff's Unpled Claim For Reputational Damage Fails**

For the first time in his Opposition, Plaintiff asserts an unpled claim related to "a protected interest in his reputation." Pl.'s Opp. to Chairman Cody's MTD, ECF No. 16, at 12. This eleventh-hour effort is too little, too late to count. In this Circuit, a plaintiff may avail himself of two legal theories to establish a reputation-based due-process violation: "reputation plus" and "stigma plus." *Jefferson v. Harris*, 285 F. Supp. 3d 173, 182 (D.D.C. 2018). Here, however, Plaintiff's complaint does not contain a reputational claim of *any* type, nor the facts to support such a claim. Thus, this Court should disregard Plaintiff's unpled claim regarding a reputational interest.

### IV.    **As A Reemployed Annuitant, Plaintiff Served At The Will Of Senator Reed**

This Court can also grant summary judgment because of Plaintiff's status as a reemployed annuitant. *See* 5 U.S.C. § 3323(b)(1) (stating that reemployed annuitants, with one inapplicable exception and "*notwithstanding other statutes*," serve "at the will of the appointing authority.") (emphasis added). While conceding this status, Plaintiff asserts it is "immaterial." Plaintiff's Cross Motion for Summary Judgment, ECF No. 19, at 3 ["Pl.'s Cross Mot. for S.J."]. On the contrary, it is fatal to his complaint.

First, as outlined in the Commission's motion to dismiss, the Federal Circuit has consistently applied the plain language of § 3323(b)(1) to hold that reemployed annuitants are removable at will. Def. Chairman Cody's MTD, ECF No. 13, at 21 (citing *Terrill v. Merit Sys. Prot. Bd.*, 610 Fed. Appx. 982, 983-84 (Fed. Cir. 2015) (per curiam); *Vesser v. Office of*

*Personnel Management,* 29 F.3d 600 (Fed. Cir. 1994); *Delalat v. Dep't of the Air Force*, 557 F.3d 1342, 1345 (Fed. Cir. 2009)).  Plaintiff cites no contrary authority.

Second, the plain language of § 3323(b)(1) should be viewed in its legislative context.  As the Sixth Circuit has explained, "[f]rom 1926 to 1948, annuitants were *absolutely* barred from reemployment.  In 1948, the bar was qualified to permit reemployment under restrictive circumstances."  *Davis v. Devine*, 736 F.2d 1108, 1112 n.2 (6th Cir. 1984).  Essentially, "[p]rior to the passage of the at-will provision of § 3323 in 1956, civil service annuitants were generally barred from federal reemployment after age 60."  *Id*. at 1111 n.1.  Put another way, since 1926, the law has restricted or conditioned the reemployment options for annuitants.  The plain language of § 3323(b)(1) supports this balance – it increases reemployment options for annuitants, but only on an "at will" basis.

Third, although Plaintiff could have waived his annuity, he did not.  In *Vesser*, the court stated, "Once Mr. Vesser waives his annuity, he will no longer be receiving an annuity.  By the very words of the statute then, he will no longer fall within § 3323(b)(1) which explicitly and unambiguously recites that an annuitant . . . serves at the will of the appointing authority."  29 F.3d at 604.  By contrast, in this case, Plaintiff continued receiving his annuity, even after being informed of his "at will" status.  *See* Exhibit I of Enclosure 1 to Def. Chairman Cody's MTD, ECF No. 13-1.  This Court should reject Plaintiff's attempt to keep both his employment and annuity, but then avoid the "explicit[] and unambiguous[]" effects.  29 F.3d at 604.

Fourth, Plaintiff's argument that his status was immaterial is rejected by *Davis*, the only reemployed annuitant case he cites.  Pl.'s Cross Mot. for S.J., ECF No. 19, at 6-7.  Davis, an annuitant, was rejected from certification as an administrative law judge because he could not

simultaneously be an "at will" reemployed annuitant and an administrative law judge with "for cause" protections.[9]  736 F.2d at 1110-11.

In challenging his rejection, Davis argued the "at will" provision should bend to the "for cause" language of the other statute.  *Id*. at 1112.  The court concluded otherwise, stating "Davis's attempt to . . . obviate the § 3323(b) limitation itself, is a perversion of the limited reemployment rights granted annuitants.  Accession to Davis's argument would be an unwarranted judicial expansion of an intentionally restricted congressional enactment." *Id*. at 1113.  The same logic applies here.  Plaintiff, like Davis, makes policy arguments in an attempt to convince the Court to avoid the plain meaning of § 3323(b).  Such arguments were rejected in *Davis*, and should be similarly rejected here.  Notably, Plaintiff seeks an even greater form of "judicial expansion" than was rejected in *Davis*.  Pl.'s Cross Mot. for S.J., ECF No. 19, at 7.

Finally, and relatedly, even if Plaintiff *is* correct regarding his separation of powers argument (which he is not), it would have barred his original appointment.  *Id*. at 3-6.  As a reemployed annuitant, Plaintiff could only serve at the will of his appointing authority.  If this condition precedent cannot apply, because of separation of powers or any other reason, then the statute prohibits Plaintiff's appointment in the first place.  This interpretation – that Plaintiff cannot be appointed by someone who cannot remove him "at will" – was the approach taken by the Sixth Circuit.  *Davis*, 736 F.2d at 1110-13.

In sum, to the extent this Court finds that it has jurisdiction and that Plaintiff stated a proper claim, this Court should grant summary judgment.  Simply put, Plaintiff is exactly what

---

[9] When *Davis* was decided, § 3323(b) did not contain an exception for administrative law judges. Congress amended the statute to create the current exception for such judges in 1984.  The exclusive exception for administrative law judges leaves no doubt that no other annuitants may be excused from the "at will" employee status.

OPM said he was – a "reemployed annuitant" who "serve[d] at the will of the appointing official, per 5 U.S.C. 3323."  Exhibit I of Enclosure 1 to Def. Chairman Cody's MTD, ECF No. 13-1.

## V.     Plaintiff's Claim Under The Little Tucker Act Should Be Dismissed

The Commission submitted substantiating evidence and moved to dismiss Plaintiff's pay claim for lack of jurisdiction under the Little Tucker Act.  Def. Chairman Cody's MTD, ECF No. 13, at 21-22.  Plaintiff did not contest this evidence, and this Court should treat the facts as conceded.  *See e.g.*, *Rocha v. Brown & Gould, LLP*, 101 F. Supp. 3d 52, 61 n.5 (D.D.C. 2015).  For this issue, while Plaintiff impliedly recognizes the problem, he proposes inapt or inaccurate remedies, none of which satisfy his burden to establish jurisdiction.

First, Plaintiff argues that once the $10,000 jurisdictional limit under the Little Tucker Act is exceeded, the case should be transferred to the Court of Claims.  Pl.'s Cross Mot. for S.J., ECF No. 19, at 7.  It is true this Court "must" transfer the case "if it is in the interests of justice."  28 U.S.C. § 1631.  However, as Plaintiff's claims lack merit, it is not in the interests of justice that they be transferred.  And, either way, there is no remedy at this Court.

Second, Plaintiff argues that he only seeks "injunctive relief of restoration to his position with pay."  Pl.'s Cross Mot. for S.J., ECF No. 19, at 7-8.  This misunderstands injunctive relief.  As Plaintiff makes clear, he seeks retroactive "payment of salary as a matter of administrative course," *id.* at 8, which is actually a claim under the Back Pay Act.  *See* 5 U.S.C. § 5596 et seq.

Finally, and "alternatively," Plaintiff purports to dismiss any claim above $10,000.  Pl.'s Cross Mot. for S.J., ECF No. 19, at 8.  This is doubly flawed.  First, because Plaintiff initially seeks a transfer, there is no alternative argument to preserve jurisdiction by reducing the claim.  Second, and again, a request in an opposition to a motion to dismiss does not qualify as a Rule

18

15(a) motion in this Circuit. *See deLeon*, 2020 U.S. Dist. LEXIS 5908 at *11 (citing *Confederate Mem'l Ass'n v. Hines*, 995 F.2d 296, 299 (D.C. Cir. 1993)).

## CONCLUSION

For the reasons set forth, this Court should dismiss Plaintiff's complaint against Chairman Cody with prejudice.

Dated: May 29, 2020

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

DANIEL F. VAN HORN, D.C. Bar # 924092
Chief, Civil Division

By: /s/ *John Moustakas*
John Moustakas, D.C. Bar #442076
Assistant U.S. Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2518
john.moustakas@usdoj.gov

*Counsel for Chairman Richard Cody*

Stefan R. Wolfe
General Counsel

Cody Cheek
Attorney
National Commission on Military Aviation Safety
2900 Crystal Drive
Arlington, VA 22202

*Of Counsel*