# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER B. MAPES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 1:20-cv-00223-JEB |
| v. | ) |
| | ) |
| SENATOR JACK REED, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT SENATOR REED'S MOTION TO DISMISS
## PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendant Senator Jack Reed, through undersigned counsel, hereby respectfully moves the Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss Plaintiff's Second Amended Complaint against him.  In support of the motion, Defendant Senator Reed respectfully refers the Court to the accompanying Memorandum of Points and Authorities.

Respectfully submitted,

 /s/ *Patricia Mack Bryan*
Patricia Mack Bryan, Bar #335463
Senate Legal Counsel

Morgan J. Frankel, Bar #342022
Deputy Senate Legal Counsel

Grant R. Vinik, Bar #459848
Assistant Senate Legal Counsel

Thomas E. Caballero
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building

Washington, D.C. 20510-7250
(202) 224-4435 (tel)
(202) 224-3391 (fax)

Dated: July 22, 2020                    Attorneys for Defendant Senator Jack Reed

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| PETER B. MAPES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:20-cv-00223-JEB |
| v. ) | |
| ) | |
| SENATOR JACK REED, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT SENATOR REED'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

Patricia Mack Bryan, Bar #335463
Senate Legal Counsel

Morgan J. Frankel, Bar #342022
Deputy Senate Legal Counsel

Grant R. Vinik, Bar #459848
Assistant Senate Legal Counsel

Thomas E. Caballero
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250

(202) 224-4435 (tel)
(202) 224-3391 (fax)

Dated: July 22, 2020          Attorneys for Defendant Senator Jack Reed

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.    National Commission on Military Aviation Safety . . . . . . . . . . . . . . . . . . . . . . 4

      B.    Plaintiff's Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.     THE COURT LACKS JURISDICTION OVER PLAINTIFF'S SUIT AGAINST
      SENATOR REED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A.    Plaintiff's Suit Is Precluded By The Civil Service Reform Act.. . . . . . . . . . . . . 7

      B.    Senator Reed Is Protected From Plaintiff's Suit By Sovereign Immunity. . . . . . 13

      C.    Plaintiff Lacks Standing To Bring His Claims Against Senator Reed
            As His Injury Cannot Be Redressed Against The Senator.. . . . . . . . . . . . . . . . . 16

II.    PLAINTIFF FAILS TO STATE A CLAIM AS SENATOR REED'S
      TERMINATION OF PLAINTIFF DID NOT VIOLATE NDAA § 1087,
      THE SEPARATION OF POWERS, OR THE DUE PROCESS CLAUSE. . . . . . . . . . 18

      A.    Plaintiff Fails To State a Claim that His Termination Violated
            NDAA § 1087. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

           1.    Plaintiff identifies no statutory cause of action that allows
                him to bring suit against Senator Reed for violating the NDAA. . . . . . . 18

           2.    Senator Reed has unrestricted authority to remove plaintiff from
                the Commission and that removal did not violate NDAA § 1087. . . . . . . 18

      B.    Senator Reed's Removal of Plaintiff Did Not Violate the Separation
            of Powers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

      C.    Plaintiff's Removal Did Not Violate Due Process. . . . . . . . . . . . . . . . . . . . . . 29

      D.    No APA Claim Can Be Brought Against Senator Reed. . . . . . . . . . . . . . . . . . 30

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

## TABLE OF AUTHORITIES

**Cases**

*Am. Federation of Gov't Employees v. Secretary of the Air Force*, 841 F. Supp. 2d 233 (D.D.C. 2012), *aff'd*, 716 F.3d 633 (D.C. Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . 9

*Am. Road and Transp. Builders Ass'n v. EPA*, 865 F. Supp. 2d 72 (D.D.C. 2012), *aff'd*, No. 12-5244, 2013 WL 599474 (D.C. Cir. Jan. 28, 2013) . . . . . . . . . . . . . . . . . . 14

*Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Ass'n of Civilian Technicians, Inc. v. Federal Labor Relations Authority*, 283 F.3d 339 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Barth v. United States,* 737 F. App'x 540 (Fed. Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Bowsher v. Synar*, 478 U.S. 714 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 25, 26

*Buckley v. Valeo*, 424 U.S. 1 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 27, 28

*Carlucci v. Doe*, 488 U.S. 93 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Clark v. Library of Congress*, 750 F.2d 89 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . 14, 30

*Coggeshall Development Corp. v. Diamond*, 884 F.2d 1 (1st Cir. 1989). . . . . . . . . . . . . . . . . 14

*Davis v. Billington*, 681 F.3d 377 (D.C. Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*deLeon v. Wilkie*, No. 19-1250 (JEB), 2020 WL 210089 (D.D.C. Jan. 14, 2020) . . . . . . . . . . . . 9

*Department of Transportation v. Ass'n of Am. Railroads*, 575 U.S. 43, 51 (2015) . . . . . . . . . . 25

*Dotson v. Griesa*, 398 F.3d 156 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Ekwem v. Fenty*, 666 F. Supp. 2d 71 (D.D.C. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

* *Elgin v. Department of the Treasury*, 567 U.S. 1 (2012) . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 11

*Ex parte Hennen*, 38 U.S. (13 Pet.) 230 (1839) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*FDIC v. Meyer*, 510 U.S. 471 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

* *Filebark v. U.S. Department of Transportation*, 555 F.3d 1009 (D.C. Cir. 2009) . . . . . 8, 9, 11, 12

*Fornaro v. James*, 416 F.3d 63 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Franklin v. Massachusetts*, 505 U.S. 788 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*,
    561 U.S. 477 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Graham v. Ashcroft*, 358 F.3d 931 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 12

\* *Grosdidier v. Chairman, Broadcasting Bd. of Governors*, 560 F.3d 495
    (D.C. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 11, 12

\* *Hall v. Ford*, 856 F.2d 255 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 29

*Hearst v. Black*, 87 F.2d 68 (D.C. Cir. 1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Humphrey's Executor v. United States*, 295 U.S. 602 (1935) . . . . . . . . . . . . . . . . . . . . . 22, 23, 25

*Ivey v. Fenty*, 789 F. Supp. 2d 65 (D.D.C. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Johnson v. Peterson*, 996 F.2d 397 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

*Kalaris v. Donovan*, 697 F.2d 376 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 24

*Keener v. Congress*, 467 F.2d 952 (5th Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Kentucky v. Graham*, 473 U.S. 159 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kokkonen v. Guardian Life Builders Ass'n v. EPA,* 511 U.S. 375 (1994) . . . . . . . . . . . . . . . . . 14

*Lacson v. U.S. Department of Homeland Security*, 726 F.3d 170 (D.C. Cir. 2013) . . . . . . . . . . . 9

*Leedom v. Kyne*, 358 U.S. 184 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Liberatore v. Melville Corp.*, 168 F.3d 1326 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Maarawi v. U.S. Congress*, 24 F. App'x 43 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Marciano v. Shulman*, 795 F. Supp. 2d 35 (D.D.C. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*McKoy v. Spencer*, 271 F. Supp. 3d 25 (D.D.C. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*McLean v. United States*, 566 F.3d 391 (4th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Mills v. D.C. Dept. of Mental Health, St. Elizabeth's Hosp. Managers*,
    756 F. Supp. 2d 55 (D.D.C. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475 (1866) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mistretta v. United States*, 488 U.S. 361 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*,
341 U.S. 246 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Myers v. United States*, 272 U.S. 52 (1926) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

*National Air Traffic Controllers Ass'n AFL-CIO v. Federal Service Impasses
Panel*, 437 F.3d 1256 (D.C. Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

* *Nyunt v. Chairman, Broadcasting Bd. of Governors*, 589 F.3d 445
(D.C. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 11, 12

*Orr v. IDAWY*, No. 4:11-CV-150, 2012 WL 1454988 (D. Idaho Apr. 26, 2012) . . . . . . . . . . .  15

*Parsons v. United States*, 167 U.S. 324 (1897) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 24

*PHH Corp. v. Consumer Financial Protection Bureau,* 881 F.3d 75
(D.C. Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Price v. Panetta*, 674 F.3d 1335 (Fed. Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Randall v. United States*, 95 F.3d 339 (4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Rivera v. United States*, 924 F.2d 948 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Rockefeller v. Bingaman*, 234 F. App'x 852 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . 13, 15, 30

*Rodriguez v. District of Columbia*, 118 F. Supp. 3d 132 (D.D.C. 2015) . . . . . . . . . . . . . . . . . . 29

*Saints v. Winter*, No. 05-CV-0806, 2007 WL 2481514 (S.D. Cal. Aug. 29, 2007) . . . . . . . . . . 15

*Saunders v. District of Columbia*, 711 F. Supp. 2d 42 (D.D.C. 2010) . . . . . . . . . . . . . . . . . . . . 30

*Selia Law LLC v. Consumer Financial Protection Bureau,* No. 19-7,
— S. Ct. —, 2020 WL 3492641 (June 29, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Semper v. United States*, 694 F.3d 90 (Fed. Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Steadman v. Governor*, 918 F.2d 963 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Stone v. Department of Housing and Urban Development*,
859 F. Supp. 2d 59 (D.D.C. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

*Sykes v. Dudas*, 573 F. Supp. 2d 191 (D.D.C. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Tapp v. WMATA*, 306 F. Supp. 3d 383 (D.D.C. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Tri-State Hosp. Supply Corp. v. United States,* 341 F.3d 571 (D.C. Cir. 2003) . . . . . . . . . . . . . 15

* *United States v. Fausto*, 484 U.S. 439 (1988)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 11, 18

*United States v. Sherwood*, 312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Wiener v. United States*, 357 U.S. 349 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23, 24

*Worthington v. United States*, 168 F.3d 24 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18


**Constitution and Federal Statutes**

U.S. Const. art. II, § 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Alyce Spotted Bear and Walter Soboleff Commission on Native Children,
    Pub. L. No. 114-244, § 3, 130 Stat. 981-82 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Evidence-Based Policy-making Commission,
    Pub. L. No. 114-140, 130 Stat. 317-20 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Federal Election Campaign Act Amendments,
    Pub. L. No. 93-443, 88 Stat. 1281, § 310(a)(1) (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . 27

* John S. McCain National Defense Authorization Act for Fiscal Year 2019,
    Pub. L. No. 115-232, Div. A, Title X, Subtitle F, § 1087,
    132 Stat. 1636, 1992-96 (2018) ["NDAA § 1087"]
        § 1087(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 24
        § 1087(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 10, 16, 20, 21, 23
        § 1087(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 26
        § 1087(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

National Commission on Military, National, and Public Service,
    Pub. L. No. 115-232, § 553, 132 Stat. 2134-37 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . 26

National Defense Authorization Act for Fiscal Year 2020, Pub. L. No. 116-92,
    Div. A, Title XVII, Subtitle B, § 1738, 133 Stat. 1198, 1820 (2019) . . . . . . . . . . . . . . . 5

National Gambling Impact Study Commission Act of 1996,
    Pub. L. No. 104-169, § 3(b)(1), 110 Stat. 1482 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

War Claims Act of 1948, Pub. L. No. 80-896, § 2(a), 62 Stat. 1240-41 (1948) . . . . . . . . . . . . . 22

5 U.S.C. § 104. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 24

5 U.S.C. § 701(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 14, 18, 30

5 U.S.C. § 702. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 14, 30

5 U.S.C. § 704. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

5 U.S.C. § 706. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 30

5 U.S.C. § 2101. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

5 U.S.C. § 3323(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 18

28 U.S.C. § 1346(a)(2) ("Little Tucker Act"). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

**Miscellaneous**

164 Cong. Rec. S6929 (daily ed. Nov. 13, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Removal of Members of the Commission on the Federal Laws for the N. Mariana
    Islands*, 7 Op. O.L.C. 95 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Power of the President to Remove Presidential Appointees from the National
    Capital Planning Commission*, 6 Op. O.L.C. 191 (1982). . . . . . . . . . . . . . . . . . . . 20, 21

*Applicability of 18 U.S.C. § 208 to National Gambling Impact Study Commission*,
    23 Op. O.L.C. 29 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 28

## INTRODUCTION

In 2018, Congress created a study commission, the National Commission on Military Aviation Safety (the "Commission"), to conduct a comprehensive review of recent military aviation mishaps and report its findings to the Congress and the President along with recommendations for improving military aviation safety.  *See* John S. McCain National Defense Authorization Act for Fiscal Year 2019, Pub. L. No. 115-232, Div. A, Title X, Subtitle F, § 1087, 132 Stat. 1636, 1992-96 (2018) [hereinafter "NDAA § 1087"].  The Commission is composed of eight members – four appointed by the President and four by the leadership of the Congressional armed services committees.  In November 2018, Defendant Senator Jack Reed, the Ranking Member of the Senate Armed Services Committee, appointed Plaintiff Peter B. Mapes to the Commission.  On January 7, 2020, Senator Reed sent a letter to plaintiff informing plaintiff that the Senator was accepting the unanimous recommendation of the other seven members of the Commission and terminating plaintiff's status as a member of the Commission.

Plaintiff brings this action to challenge his removal from the Commission.  Plaintiff claims that his removal violated NDAA § 1087, the Constitution's separation of powers, and the Due Process Clause, and constituted unlawful agency action in violation of the Administrative Procedure Act ("APA").  He asks the Court to declare his termination void and order that he be returned to the Commission and paid for any work he has performed subsequent to his termination.

Plaintiff's complaint against Senator Reed should be dismissed because the Court lacks jurisdiction over his claim against Senator Reed and because plaintiff's complaint does not state a claim as his removal did not violate the NDAA, the Constitution, or the APA.  The Court lacks jurisdiction because plaintiff, as a federal employee, *see* NDAA § 1807(b)(7) ("the members of the Commission shall be deemed to be federal employees"), is precluded by the Civil Service Reform Act from challenging his dismissal from the Commission before this Court.  It is well

1

established that federal employees may not challenge adverse employment actions in the federal district courts, but may pursue remedies only under the procedures established by the Civil Service Reform Act, regardless of whether that statutory scheme grants them any relief.  The Court also lacks jurisdiction over plaintiff's claim against Senator Reed because the Senator is protected from plaintiff's suit by sovereign immunity, and because plaintiff lacks standing to sue the Senator because his alleged injury is not redressable against Senator Reed as a court cannot order the Senator to reappoint plaintiff and the Senator does not pay plaintiff's salary.

On the merits, none of the four counts asserted in plaintiff's second amended complaint states a claim for relief.  First, plaintiff's claim that Senator Reed violated NDAA § 1087 by removing him fails to state a claim as he cannot point to any statute that provides him a cause of action against the Senator for violating the NDAA.  Plaintiff's Second Amended Complaint ¶¶ 25-28 (Count I), ECF No. 29 [hereinafter "Second Am. Compl."]  In addition, this count fails to state a claim because Senator Reed, as the official who appointed plaintiff, had authority to remove plaintiff pursuant to NDAA § 1087, and nothing in that statute limits the Senator's removal authority.  Senator Reed's termination of plaintiff, therefore, did not violate the NDAA.

Plaintiff's second count, violation of the separation of powers, also fails to state a claim. Plaintiff argues that, because the NDAA establishes the Commission as an independent establishment in the executive branch, pursuant to 5 U.S.C. § 104, *see* NDAA § 1087(a)(1), members of the Commission are executive branch employees, and a Member of Congress may not remove employees of the executive branch.  Second Am. Compl. ¶¶ 29-37.  This argument misconceives the separation of powers inquiry as a simplistic examination of statutory labels.  As the Supreme Court's analysis in *Bowsher v. Synar*, 478 U.S. 714 (1986), demonstrates, the constitutional question regarding who may remove a federal official or employee depends not on administrative designations but on the particular functions assigned to the position.  Thus,

congressional authority to remove a government official intrudes upon the executive branch only if the duties assigned to the official are "executive powers" that entail "execution of the law." *See id.* at 732-33.  As the Commission's sole duty is to "undertake a comprehensive study of United States military aviation mishaps that occurred between fiscal years 2013 and 2018," NDAA § 1087(h)(1), and to submit a recommendatory report to the President and to the Senate and House Armed Services Committees, *see* NDAA § 1087(h)(2), the Commission neither administers or executes any laws of the United States nor promulgates any regulations. Accordingly, members of the Commission do not wield any executive power, *see Buckley v. Valeo*, 424 U.S. 1, 137-38 (1976) (per curiam), and Senator Reed's termination of plaintiff did not violate the separation of powers.

Third, plaintiff's second amended complaint fails to state a claim that his termination deprived him of due process as plaintiff cannot establish a protected property interest in his employment that triggers due process protections.  Under the NDAA, and also pursuant to the CSRA's provisions on re-employed annuitants like plaintiff, plaintiff served in his position "at will," subject to removal at the Senator's discretion.  At-will employees have no protected property interest in their employment, *see Hall v. Ford*, 856 F.2d 255, 265 (D.C. Cir. 1988), and, therefore, plaintiff cannot state a due process claim arising from his termination.

Finally, the fourth count in plaintiff's second amended complaint, that his termination constituted unlawful agency action in violation of the APA, 5 U.S.C. § 706, *see* Second Am. Compl. ¶¶ 45-50, fails to state any claim against Senator Reed, as the APA provides for review of "*agency* action," 5 U.S.C. § 702 (emphasis added), and "agency" under the APA's judicial review provisions does not include Congress.  *See* 5 U.S.C. § 701(b)(1)(A).

Accordingly, the Court should grant Senator Reed's motion and dismiss plaintiff's second amended complaint against him for lack of jurisdiction and failure to state a claim.

**BACKGROUND**

**A.    National Commission on Military Aviation Safety**

NDAA § 1087 established a National Commission on Military Aviation Safety "to examine and make recommendations with respect to certain United States military aviation mishaps."  NDAA § 1087(a)(2).  The Commission is composed of eight members, four appointed by the President and four by Members of Congress.  NDAA § 1087(b)(1).  Of the congressionally appointed members, one is appointed by the Chairman of the Senate Committee on Armed Services, one by that Committee's Ranking Member, and one each by the Chairman and Ranking Member of the House Armed Services Committee.  NDAA § 1087(b)(1)(B)-(E).[1]  The Commissioners "shall be appointed for the life of the Commission," and any vacancy "shall be filled in the same manner as the original appointment."  NDAA § 1087(b)(5).  Section 1087(b)(7) provides that "the members of the Commission shall be deemed to be Federal employees."  No provision was made related to or otherwise restricting the removal of commissioners.

The Commission's duties are to "undertake a comprehensive study of United States military aviation mishaps that occurred between fiscal years 2013 and 2018," including:

(A) to assess the rates of military aviation mishaps between fiscal years  2013 and 2018 compared to historic aviation mishap rates;

(B) to make an assessment of the underlying causes contributing to the unexplained physiological effects;

(C) to make an assessment of causes contributing to delays in aviation maintenance and limiting operational availability of aircraft;

(D) to make an assessment of the causes contributing to military aviation mishaps; and

---

[1] Appointments were required to be made within 90 days after enactment of the NDAA. NDAA § 1087(b)(2).

4

(E) to make recommendations on the modifications, if any, of safety, training, maintenance, personnel, or other policies related to military aviation safety.

NDAA § 1087(h)(1).  At the conclusion of its study, the Commission is required to submit a report to the President and to the Senate and House Armed Services Committees that sets forth "a detailed statement of the findings and conclusions of the Commission . . . with recommendations . . . for such legislative and administrative actions as the Commission considers appropriate in light of the results of the study."  NDAA § 1087(h)(2).  That report is due December 1, 2020.[2]  The Commission terminates 90 days after submitting the report.  NDAA § 1087(k).

On November 13, 2018, Senator Reed, as the Ranking Member of the Senate Armed Services Committee, appointed plaintiff to the Commission.  *See* 164 Cong. Rec. S6929 (daily ed. Nov. 13, 2018).  On January 7, 2020, the Senator, acting on the unanimous recommendation of the other seven members of the Commission, sent plaintiff a letter terminating him from the Commission, explaining that plaintiff's service on the Commission was "no longer compatible with the service of the other members of the Commission."  Second Am. Compl. ¶ 24 (quoting Jan. 7, 2020 letter from Sen. Reed to Dr. Mapes).  The President informed the Commission on January 10 that he concurred in the decision to terminate plaintiff's appointment.[3]

---

[2] Originally, the Commission was required to submit its report by March 1, 2020.  *See* NDAA § 1087(h)(2).  That provision was amended to extend the report's submission deadline to December 1, 2020.  *See* National Defense Authorization Act for Fiscal Year 2020, Pub. L. No. 116-92, Div. A, Title XVII, Subtitle B, § 1738, 133 Stat. 1198, 1820 (2019).  The amendment also provided that within 120 days of receiving the Commission's report, the Secretary of Defense shall submit a report to the Congressional armed services committees assessing the findings and conclusions of the Commission's report and detailing plans for implementing the Commission's recommendations and for taking other actions to improve military aviation safety.  *Id.*

[3] The Senator's January 7, 2020 letter terminating plaintiff and the January 10 letter from the Director of Presidential Personnel to the Commission expressing the concurrence of the President with Senator Reed's decision are included as exhibits D and E of co-defendant Chairman Cody's Motion to Dismiss or, in the Alternative, for Summary Judgment, filed Mar. 16, 2020, ECF No. 13-1.

### B.    Plaintiff's Allegations

Plaintiff alleges that during his service on the Commission, he "made suggestions with regard to ensuring that statistical data was reliable and properly analyzed."  Second Am. Compl. ¶ 19.  According to his allegations, on November 19, 2019, "the Air Force Safety Center sent the Chairman of the Commission a letter with a non-specific complaint about Dr. Mapes' interaction with Air Force personnel," *id.* ¶ 20, and on November 20, "the Army Safety Center sent the Chairman an e-mail with a similar non-specific complaint."  *Id.* ¶ 21.  Plaintiff claims that he "and the various military services' Safety Centers have been at odds over aviation safety issues for several years."  *Id.* ¶ 22.  On January 7, 2020, Senator Reed sent plaintiff a letter terminating his service as a commissioner, on the grounds that "[plaintiff's] service as a member of the National Commission on Military Aviation Safety is no longer compatible with the service of the other members of the Commission."  *Id.* ¶¶ 23-24.

On January 28, 2020, plaintiff filed this suit against Senator Reed and the Chairman of the Commission, General Richard Cody.[4]  In March, defendants moved to dismiss plaintiff's complaint, ECF Nos. 12 (Senator Reed's Motion to Dismiss) and 13 (Chairman Cody's Motion to Dismiss, or, Alternatively, for Summary Judgment), and plaintiff cross moved for summary judgment.  ECF Nos. 18 (Plaintiff's Motion for Summary Judgment) and 19 (Plaintiff's Cross Motion for Summary Judgment).  After the completion of briefing on those motions, plaintiff requested leave to file an amended complaint.  Pl.'s Mot. For Leave to Amend the Complaint, ECF No. 28 (filed June 18, 2019).  After a status conference with the parties, the Court granted plaintiff leave to submit a second amended complaint.  Minute Order, Jun. 24, 2020.

---

[4]  At the time plaintiff filed suit, he also moved for a temporary restraining order and a preliminary injunction to bar Senator Reed from appointing, and the Commission from seating, a replacement to plaintiff's seat on the Commission.  ECF Nos. 2, 3.  As Senator Reed committed to making no appointment during the pendency of this suit, those motions were denied without prejudice after a conference call with the parties and the Court.  Minute Order, Feb. 11, 2020.

On July 1, plaintiff submitted the instant Second Amended Complaint alleging that Senator Reed "illegally removed" plaintiff from the Commission, Second Am. Compl. ¶ 1, and that Chairman Cody "directed the administrative actions that removed Dr. Mapes from the Commission's records." *Id.* ¶ 7. Plaintiff's complaint asserts four counts against defendants, alleging that his removal: (1) violated NDAA § 1087 because the statute provides that members are appointed to serve for the life of the Commission and does not mention removal, *id.* ¶¶ 25-28; (2) violated the Constitution's separation of powers because a Member of Congress cannot remove an employee of the executive branch, *id.* ¶¶ 29-37; (3) violated the Due Process Clause because he was not provided with a hearing "to plead his case" before "his protected property interest in his employment" was taken from him, *id.* ¶¶ 38-44; and (4) was unlawful agency action under the Administrative Procedure Act, 5 U.S.C. § 706, *id.* ¶¶ 45-50. Plaintiff requests that the Court "hold unlawful and set aside" his removal, order that he be returned to his position on the Commission and receive "payment for Commission work he performed after January 7, 2020," and award him attorney's fees and costs. *Id.* at 8-9 (Prayer for Relief).

## ARGUMENT

Plaintiff's complaint against Senator Reed should be dismissed for lack of jurisdiction and for failure to state a claim on which relief may be granted.

## I.   THE COURT LACKS JURISDICTION OVER PLAINTIFF'S SUIT AGAINST SENATOR REED.

### A.   Plaintiff's Suit Is Precluded By The Civil Service Reform Act.

Plaintiff's challenge to his termination is subject to dismissal for lack of jurisdiction because it is precluded by the Civil Service Reform Act of 1978 ("CSRA"). In the CSRA, Congress created an "integrated scheme of administrative and judicial review" for aggrieved federal employees to replace an "outdated patchwork of statutes and rules" that afforded employees the right to challenge employing agency actions in district courts across the country.

7

*United States v. Fausto,* 484 U.S. 439, 444-45 (1988) (internal citation omitted).  "Congress'

purpose in enacting the CSRA was to channel grievances and disputes arising out of government

employment into a single system of administrative procedures and remedies, subject to judicial

review."  *Rivera v. United States*, 924 F.2d 948, 951 (9th Cir. 1991); *see also Elgin v.*

*Department of the Treasury*, 567 U.S. 1, 13-14 (2012).  The CSRA "regulates virtually every

aspect of federal employment,"  *Nyunt v. Chairman, Broadcasting Bd. of Governors*, 589 F.3d

445, 448 (D.C. Cir. 2009), and "prescribes in great detail the protections and remedies"

applicable to adverse personnel actions, "including the availability of administrative and judicial

review."  *Fausto,* 484 U.S. at 443.

The Supreme Court has explained that, "[g]iven the painstaking detail with which the

CSRA sets out the method for covered employees to obtain review of adverse employment

actions, it is fairly discernible that Congress intended to deny such employees an additional

avenue of review in district court."  *Elgin,* 567 U.S. at 11-12.  As this Circuit repeatedly has

made clear, the CSRA is "*exclusive*: It constitutes *the* remedial regime for federal employment

and personnel complaints."  *Nyunt,* 589 F.3d at 448 (first emphasis added); *see also Grosdidier v.*

*Chairman, Broadcasting Bd. of Governors,* 560 F.3d 495, 497 (D.C. Cir. 2009) ("As our Court

has emphasized, the CSRA is comprehensive and exclusive."); *Filebark v. U.S. Department of*

*Transportation*, 555 F.3d 1009, 1010 (D.C. Cir. 2009); *Fornaro v. James*, 416 F.3d 63, 67 (D.C.

Cir. 2005); *Graham v. Ashcroft,* 358 F.3d 931, 933–35 (D.C. Cir. 2004).  Indeed, "the statutory

review scheme is exclusive," the Supreme Court has explained, "even for employees who bring

constitutional challenges to federal statutes."  *Elgin*, 567 U.S. at 13.

Furthermore, this Circuit has "consistently read the CSRA narrowly, refusing to imply

remedies that cannot be found in the language of the statute[,]" because "[p]ersonnel

management is peculiarly within the ken and concern of Congress."  *Johnson v. Peterson,* 996

8

F.2d 397, 401 (D.C. Cir. 1993) (internal quotation marks and citation omitted).  "Congress,

through the [CSRA] and related employment statutes, has carefully constructed a system for

review and resolution of federal employment disputes, intentionally providing – and intentionally

not providing – particular forums and procedures for particular kinds of claims."  *Filebark,* 555

F.3d at 1010.  "When Congress intends to preserve remedies for federal employees outside the

CSRA, 'it does so expressly; for example, the CSRA maintains federal employees' rights to

bring suit under Title VII and other antidiscrimination laws.'"  *Am. Federation of Gov't*

*Employees v. Secretary of the Air Force*, 841 F. Supp. 2d 233, 237 (D.D.C. 2012) (quoting

*Nyunt*, 589 F.3d at 448), *aff'd*, 716 F.3d 633 (D.C. Cir. 2013).[5]  Accordingly, federal employees

are able to challenge adverse employment actions only through the remedies and procedures

provided by the CSRA, unless some separate, express statutory remedy is provided (*e.g.*, Title

VII's antidiscrimination protections).  Courts may not entertain attempts to use other general

causes of action (such as the APA[6]) to challenge personnel actions.  *See Filebark*, 555 F.3d at

1013 (citing *Fausto*, 484 U.S. at 448-49); *Grosdidier,* 560 F.3d at 497 ("Federal employees may

not circumvent the [CSRA]'s requirements and limitations by resorting to the catchall

[Administrative Procedure Act] to challenge agency employment actions."); *Lacson v. U.S.*

*Department of Homeland Security*, 726 F.3d 170, 175 (D.C. Cir. 2013).

_____

[5]  The Supreme Court in *Elgin* found that this preclusion applied even to challenges to adverse employment actions based on constitutional challenges to statutes.  The Court explained that the CSRA's express recognition of an alternate judicial forum for employee claims based on discrimination (*e.g.*, Title VII and the Age Discrimination in Employment Act) indicates "that Congress knew how to provide alternative forums for judicial review based on the nature of an employee's claim," and its declining to do so "for challenges to a statute's constitutionality indicates that Congress intended no such exception."  *Elgin*, 567 U.S. at 13-14.  *See also deLeon v. Wilkie*, No. 19-1250 (JEB), 2020 WL 210089, at *4 (D.D.C. Jan. 14, 2020) ("[T]he public interest in upholding the statutory scheme created by Congress for addressing personnel-related matters is so strong that federal employees 'may not circumvent that structure even if their claim is based . . . on the Constitution.'" (quoting *Steadman v. Governor*, 918 F.2d 963, 967 (D.C. Cir. 1990)).

[6]  *See* Second Am. Compl. ¶¶ 1, 45-50 (asserting claim under APA).

Employees in all three branches of government are subject to CSRA preclusion, even if the law affords them little or no remedy.  *See, e.g.*, *Semper v. United States*, 694 F.3d 90, 95-96 (Fed. Cir. 2012) ("Several other circuits have reached the same conclusion that we reach here: that Congress's withholding of CSRA review rights was not inadvertent, and that Congress did not intend for Judicial Branch employees who were not entitled to review under the CSRA to have alternative routes to judicial review for adverse agency actions such as termination.") (collecting cases); *Davis v. Billington*, 681 F.3d 377, 384 (D.C. Cir. 2012) (holding that plaintiff, who was appointed to his position as Library of Congress employee, was civil service employee precluded by CSRA from bringing a *Bivens* claim challenging his termination, stating "the CSRA defines the 'civil service' as 'all appointive positions' in all three branches of government, 5 U.S.C. § 2101," and plaintiff was an "excepted service" employee not afforded the remedy plaintiff sought).[7]  The fact that many of these employees may have no remedial protections under the CSRA does not remove them from its preclusive effect.  This Circuit explained:

> A review of the CSRA's remedial scheme as it relates to [plaintiff employee in the Congressional Research Service of the Library of Congress] and most other civil-service members not employed by an agency under the executive branch for purposes of the CSRA makes it clear that their general excision from the remedial protections available through that scheme was in fact conscious and "not inadvertent."

*Davis*, 681 F.3d at 384.

NDAA § 1087(b)(7) clearly provides that members of the Commission, such as plaintiff was, are "Federal employees."  Section 2101 of title 5 of the United States Code expressly provides that "all appointive positions in the executive, judicial, and legislative branches of the

---

[7]  *See also Dotson v. Griesa*, 398 F.3d 156, 173 n.10 (2d Cir. 2005) (stating that "Congressional employees, like their counterparts in the judicial branch, qualify as members of the excepted service under the CSRA.  Thus, absent a special statutory grant, legislative employees, like judicial employees, do not possess administrative or judicial review rights under the CSRA.").

Government of the United States, except positions in the uniformed services[,]" make up the "civil service." Members of the Commission are thus federal employees within the civil service and subject to the provisions of the CSRA, including the exclusive nature of its remedies for adverse personnel actions. As the courts have made clear, such remedies do not include bringing suit before the district courts to challenge a removal. *See Elgin*, 567 U.S. at 9-15; *Graham*, 358 F.3d at 935 (CSRA precluded review of personnel action and "district court therefore had no subject matter jurisdiction" over plaintiff's claim). Rather, the CSRA provides for review of personnel actions strictly before the Merit Systems Protection Board, with review in the Federal Circuit. *See Fausto*, 484 U.S. at 446-47. Accordingly, this Court lacks jurisdiction to hear plaintiff's suit.

Plaintiff may complain that the CSRA provides no remedy to persons in his position. Such a complaint, whether correct or not, has no bearing on the exclusiveness of the CSRA's remedial provisions. The Supreme Court has made clear that CSRA preclusion applies even where the CSRA scheme would provide no relief. *See Elgin*, 567 U.S. at 10-16; *Fausto*, 484 U.S. at 443-55. As this Circuit has "repeatedly said, 'what you get under the CSRA is what you get.'" *Nyunt*, 589 F.3d at 449 (quoting *Filebark*, 555 F.3d at 1010); *Grosdidier*, 560 F.3d at 497 (D.C. Circuit "ha[s] emphasized . . . that the CSRA is the exclusive avenue for suit even if the plaintiff cannot prevail in a claim under the CSRA"). That is the case because, "allowing direct judicial review of employment claims for employees with no rights under the CSRA would provide them a more substantial right to review than was available to personnel granted a right to judicial review under the CSRA," as such personnel "had to first seek administrative review by the MSPB before gaining judicial review in the Federal Circuit." *Graham*, 358 F.3d at 934 (citing *Fausto*, 484 U.S. at 448-50); *Grosdidier*, 560 F.3d at 497 ("As we have explained, Congress designed the CSRA's remedial scheme with care, 'intentionally providing – and

11

intentionally not providing – particular forums and procedures for particular kinds of claims.'")
(quoting *Filebark*, 555 F.3d at 1010).

Indeed, the CSRA precludes suit even when the claim concerns "a type of personnel action" the Act does not cover.  *See Filebark*, 555 F.3d at 1013 (stating that "the lack of any entitlement to judicial review in the CSRA precluded litigation of an employment matter under the APA even where the complaint did not concern 'a type of personnel action covered by the CSRA'") (quoting *Graham*, 358 F.3d at 934).  That is because, as this Circuit has explained, "[w]e treat the CSRA and Congress's related employment statutes as covering the field of federal employee claims, and so our cases expressly teach that those left out of this scheme are left out on purpose."  *Filebark*, 555 F.3d at 1014.  Accordingly, whether or not plaintiff may obtain relief under the CSRA, that scheme precludes him from seeking review of his termination before this Court.

Plaintiff's attempt to evade CSRA preclusion by asserting jurisdiction to review his dismissal under *Leedom v. Kyne*, 358 U.S. 184 (1958), *see* Second Am. Compl. ¶ 3, is unavailing. This Circuit has made clear that "*Leedom* jurisdiction is extremely narrow in scope," *National Air Traffic Controllers Ass'n AFL-CIO v. Federal Service Impasses Panel*, 437 F.3d 1256, 1263 (D.C. Cir. 2006), and invoking it is "extraordinary."  *Ass'n of Civilian Technicians, Inc. v. Federal Labor Relations Authority*, 283 F.3d 339, 344 (D.C. Cir. 2002); *see also Nyunt*, 589 F.3d at 449 ("[A] *Leedom v. Kyne* claim is essentially a Hail Mary pass – and in court as in football, the attempt rarely succeeds.").  *Leedom* allows for review only where "(i) the statutory preclusion of review is implied rather than express; (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory."  *Nyunt*, 589 F.3d at 449 (internal quotation marks and citations omitted).  Here, not only does the CSRA provide an alternative

review procedure established by Congress, but, as explained in Part II.A *infra*, there is no "clear and mandatory" prohibition in the NDAA on removal of a commissioner; to the contrary, the statute has no restriction on removal at all.  Accordingly, plaintiff cannot establish jurisdiction to review his removal by invoking the "extremely narrow" and "extraordinary" mechanism of review established by *Leedom*.

In sum, plaintiff's second amended complaint fails to identify any statutory cause of action that would allow him to circumvent the CSRA's exclusive remedial scheme and obtain judicial review of his removal from the Commission before this Court.  Therefore, as a federal employee, he is required to pursue his grievance and seek remedies, if any, under the CSRA.  Accordingly, this Court lacks subject matter jurisdiction over plaintiff's suit challenging his removal from the Commission.

**B.      Senator Reed Is Protected From Plaintiff's Suit By Sovereign Immunity.**

Even were it not precluded by the CSRA, plaintiff's suit for reinstatement to the Commission with back pay cannot be maintained against Senator Reed because he is protected by sovereign immunity and plaintiff identifies no waiver of that immunity.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  This immunity protects government officials sued in their official capacity as "an official-capacity suit is, in all respects other than name, to be treated as a suit against the [government] entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Senator Reed, as a Member of Congress sued in his official capacity, is covered by sovereign immunity.  *See Rockefeller v. Bingaman*, 234 F. App'x 852, 855 (10th Cir. 2007) (unpublished) (affirming dismissal of suit against Senator and Representative in their official capacities on sovereign immunity grounds); *see also McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009) (holding that "sovereign immunity extends to the United States Congress when it

13

is sued as a branch of the government"); *Maarawi v. U.S. Congress*, 24 F. App'x 43, 44 (2d Cir.

2001) (holding Congress protected by sovereign immunity from suit claiming that Members

made derogatory remarks); *Keener v. Congress*, 467 F.2d 952, 953 (5th Cir. 1972) (per curiam)

(affirming dismissal because Congress "is protected from suit by sovereign immunity").  Because

"[s]overeign immunity is jurisdictional in nature," *Meyer*, 510 U.S. at 475, a plaintiff bears the

burden to establish affirmatively a waiver of that immunity to bring his claim.  *See Am. Road and

Transp. Builders Ass'n v. EPA*, 865 F. Supp. 2d 72, 80 (D.D.C. 2012) (citing *Kokkonen v.

Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) and *Tri–State Hosp. Supply Corp. v. United

States*, 341 F.3d 571, 575 (D.C. Cir. 2003)), *aff'd*, No. 12-5244, 2013 WL 599474 (D.C. Cir. Jan.

28, 2013).

      Plaintiff cites three statutes as the basis for asserting this Court's jurisdiction over his suit –

the general federal question provision, 28 U.S.C. § 1331, the Administrative Procedure Act, and

the Little Tucker Act, 28 U.S.C. § 1346(a)(2), *see* Second Am. Compl. ¶¶ 1-2; none of these

allows him to bring his claims against Senator Reed.  First, section 1331 is not a waiver of

sovereign immunity.  *See Stone v. Department of Housing and Urban Development.*, 859 F.

Supp. 2d 59, 63 (D.D.C. 2012); *Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996)

("[S]ection 1331 'is not a general waiver of sovereign immunity.  It merely establishes a subject

matter that is within the competence of federal courts to entertain.'" ) (quoting *Coggeshall

Development Corp. v. Diamond*, 884 F.2d 1, 4 (1st Cir. 1989)).

      Second, the Administrative Procedure Act, 5 U.S.C. § 702, waives sovereign immunity

only for claims for equitable relief against executive agencies; the APA's waiver is not applicable

to Senator Reed as he and the Senate are outside the coverage of the APA.  *See* 5 U.S.C.

§ 701(b)(1)(A) (agency for purposes of APA does not include Congress); *Clark v. Library of

Congress*, 750 F.2d 89, 102 (D.C. Cir.1984) ("[T]he Congress is not an 'agency' as defined

under the Administrative Procedure Act."); *Rockefeller*, 234 F. App'x at 856.[8]

  Finally, while the Little Tucker Act, under which this Court shares concurrent jurisdiction

with the Court of Federal Claims for certain actions not exceeding $10,000, does waive sovereign

immunity for certain damages claims, it does so *only* for monetary claims against the United States

and not against individual Members of Congress.  *See* 28 U.S.C. § 1346(a)(2) (limiting

jurisdiction to an "action or claim *against the United States*") (emphasis added); *cf. Barth v.

United States,* 737 F. App'x 540, 541 (Fed. Cir. 2018) ("Jurisdiction of the Claims Court is

established by the Tucker Act, which contains no provision extending jurisdiction of that court to

any individual or organization other than the United States[.]"); *United States v. Sherwood*, 312

U.S. 584, 588 (1941) ("[J]urisdiction [of the Court of Claims] is confined to the rendition of

money judgments in suits brought for that relief against the United States[.]").  Plaintiff's claim

for damages under the Little Tucker Act, therefore, may not be maintained against Senator Reed

as he is not a proper defendant under that statute. *See Sherwood*, 312 U.S. at 588 (stating, with

regard to Tucker Act claim, that "if the relief sought is against others than the United States the

suit as to them must be ignored as beyond the jurisdiction of the court"); *Saints v. Winter*, No.

05-CV-0806, 2007 WL 2481514, at *4 (S.D. Cal. Aug. 29, 2007) ("The Secretary of the Navy is

not a proper defendant under the Tucker Act, or even the Little Tucker Act, 28 U.S.C. § 1346(a)(2),

which give the district courts original jurisdiction concurrent with the United States Court of

Federal Claims to render judgments against the United States," as suits under those acts "are

permitted only against the United States, not its agencies."); *Orr v. IDAWY*, No. 4:11-CV-150,

2012 WL 1454988, at *1 (D. Idaho Apr. 26, 2012) ("Under the Tucker Act, the only proper

---

  [8]  In addition, even if the APA waiver applied to Senator Reed, which it clearly does not,
the APA does not waive immunity for claims for monetary relief, such as the back pay claim
plaintiff asserts here.  *See McKoy v. Spencer*, 271 F. Supp. 3d 25, 33-34 (D.D.C. 2017) (claim for
back pay is claim for "money damages" outside of APA's waiver of sovereign immunity for
equitable relief claims against an agency).

defendant is the United States; employees and specific government agencies are not proper defendants.").

     Accordingly, plaintiff has not identified any statute that waives sovereign immunity for his claims against Senator Reed, and, therefore, the Court is without jurisdiction to hear those claims.

> ### C.    Plaintiff Lacks Standing To Bring His Claims Against Senator Reed As His Injury Cannot Be Redressed Against The Senator.

     Plaintiff cannot establish Article III standing to sue Senator Reed because plaintiff's injury is not redressable by relief against the Senator.  The party seeking to invoke a federal court's jurisdiction bears the burden of establishing standing to sue.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).  To meet this burden, a plaintiff must satisfy the three elements that form the "irreducible constitutional minimum of standing" under Article III: (1) that the plaintiff "ha[s] suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical;" (2) that the injury was caused by, or is "fairly . . . trace[able] to the challenged action of the defendant"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan*, 504 U.S. at 560-61 (internal quotation marks and citations omitted); *accord Arpaio*, 797 F.3d at 19.

     Plaintiff's suit against Senator Reed fails to satisfy the last prong – redressability. Plaintiff can point to no authority for a court to enter an order requiring a Member of Congress to perform a discretionary act as part of his official duties – here, the appointment of a member of the Commission as provided for by statute.  *See* NDAA § 1087(b)(1)(C).  Such relief would raise serious separation of powers concerns.  *See Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 500 (1866) ("The Congress is the legislative department of the government; the President is the executive department.  Neither can be restrained in its action by the judicial department. . . .");

*Hearst v. Black*, 87 F.2d 68, 71 (D.C. Cir. 1936) ("[T]he universal rule, so far as we know it, is that the legislative discretion in discharge of its constitutional functions, whether rightfully or wrongfully exercised, is not a subject for judicial interference."); *see also Swan v. Clinton*, 100 F.3d 973, 978 (D.C. Cir. 1996) (explaining with regards to lawsuit seeking to require President to reinstate plaintiff to National Credit Union Administration Board: "The reasons why courts should be hesitant to grant such relief are painfully obvious; the President, like Congress, is a coequal branch of government, and for the President to 'be ordered to perform particular executive . . . acts at the behest of the Judiciary,' at best creates an unseemly appearance of constitutional tension and at worst risks a violation of the constitutional separation of powers.") (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 827 (1992) (Scalia, J., concurring in part and concurring in the judgment)).[9]

In addition, plaintiff's claim for monetary relief – in the form of backpay for work he has allegedly performed since his termination – is not redressable against the Senator as the Commission, and not the Senator, pays commissioners. There is no legal authority for the Senator to pay a commissioner's salary and, thus, his claim seeking monetary relief is not redressable by a suit against Senator Reed.

Accordingly, the Court should dismiss plaintiff's claim against Senator Reed for lack of standing.

---

[9] Apparently recognizing this problem, plaintiff in his second amended complaint alters the relief he seeks, no longer requesting "reinstatement" by the Senator as in his original complaint, but only to have his removal declared "void" and to have the Commission "return[] to him all powers" as a commissioner. Second Am. Compl. at 8 (Prayer for Relief 1). Indeed, as his amended complaint is written, it is unclear that he is seeking any redress from Senator Reed, a fact that further demonstrates that Senator Reed is not a proper defendant in this case.

## II.   PLAINTIFF FAILS TO STATE A CLAIM AS SENATOR REED'S TERMINATION OF PLAINTIFF DID NOT VIOLATE NDAA § 1087, THE SEPARATION OF POWERS, OR THE DUE PROCESS CLAUSE.

### A.   Plaintiff Fails To State a Claim that His Termination Violated NDAA § 1087.

#### 1.   Plaintiff identifies no statutory cause of action that allows him to bring suit against Senator Reed for violating the NDAA.

Plaintiff has not identified any cause of action that authorizes him to sue Senator Reed for violation of the NDAA.  The general federal question statute, 28 U.S.C. § 1331, provides subject matter jurisdiction for certain claims, but does not in itself create a cause of action.  *See Marciano v. Shulman*, 795 F. Supp. 2d 35, 38 (D.D.C. 2010) (citing *Montana–Dakota Utilities Co. v. Northwestern Public Service. Co.*, 341 U.S. 246, 249 (1951)); *Sykes v. Dudas*, 573 F. Supp. 2d 191, 200 (D.D.C. 2008).  While the APA provides a basis for seeking review of agency action, the APA, as explained in Part II.D *infra*, expressly excludes Congress from its scope, 5 U.S.C. § 701(b)(1)(A), and, thus, provides no cause of action against the Senator for violating the NDAA.

Finally, the Little Tucker Act does not supply a cause of action, because "[c]omplaints by civil service employees regarding personnel actions covered by the Civil Service Reform Act are subject to the jurisdiction of the Merit Systems Protection Board and do not give rise to actions under the Tucker Act or the Little Tucker Act."  *Price v. Panetta*, 674 F.3d 1335, 1339 (Fed. Cir. 2012) (citing *Fausto*, 484 U.S. at 449, 455, and *Worthington v. United States*, 168 F.3d 24, 26-27 (Fed. Cir. 1999)).  Accordingly, plaintiff can identify no statutory provision granting him a cause of action against Senator Reed for allegedly violating the NDAA.

#### 2.   Senator Reed has unrestricted authority to remove plaintiff from the Commission and that removal did not violate NDAA § 1087.

Even if plaintiff could identify a cause of action, his allegation that Senator Reed violated the NDAA fails to state a claim as a matter of law.  Plaintiff asserts that, because NDAA § 1087 provides that commissioners will serve for the "life of the Commission" and is silent on removal

of commissioners, Senator Reed lacked authority to remove him and, thus, violated NDAA § 1087 by doing so.  Second Am. Compl. ¶¶ 26-28.  Plaintiff's argument is incorrect and misunderstands the doctrine on removal of government officials.

It is the long-standing rule with regard to federal service that, "absent a specific provision to the contrary, the power of removal from office is incident to the power of appointment." *Carlucci v. Doe*, 488 U.S. 93, 99 (1988) (internal quotation marks omitted); *see also Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 509 (2010) ("Under the traditional default rule, removal is incident to the power of appointment."); *Parsons v. United States*, 167 U.S. 324, 331 (1897) ("In the absence of all constitutional provision or statutory regulation, it would seem to be a sound and necessary rule to consider the power of removal as incident to the power of appointment.") (quoting *Ex parte Hennen*, 38 U.S. (13 Pet.) 230, 259 (1839)); *Swan*, 100 F.3d at 979.

Plaintiff challenges this long-established principle, arguing that "[t]he Act did not provide for removal authority," and that "[t]he Act's silence on removal authority does not imply removal authority."  Second Am. Compl. ¶¶ 26-27.  This argument is directly contrary to precedent on this very question.  As this Circuit has stated, "in the face of statutory silence," the general and long-standing rule that "the power of removal presumptively is incident to the power of appointment" controls.  *Kalaris v. Donovan*, 697 F.2d 376, 389 (D.C. Cir. 1983).  In other words, the power to remove is implied by the power to appoint, and that presumption applies unless directly negated by the statute itself.  Accordingly, as the power to appoint Dr. Mapes to the Commission was vested in Senator Reed, as the Ranking Member of the Senate Armed Services Committee, Senator Reed has the plenary authority to remove him unless specifically limited by the statute.

Plaintiff can point to no limitation on the Senator's power to remove him in NDAA § 1087, *i.e.*, there is no limitation to removal for cause or otherwise, much less a complete abrogation of

removal power as plaintiff asserts.  The only language regarding the service of commissioners is that they shall be "appointed for the life of the Commission."  NDAA § 1087(b)(5).  The mere existence of a term of office, however, is not sufficient to infer a limitation on removal.  *See Parsons*, 167 U.S. at 327-28, 339-43 (finding no limit on President's removal power of U.S. Attorney despite statute providing for four-year term); *Myers v. United States*, 272 U.S. 52 (1926) (finding President had power to remove postmaster, who was appointed for a four-year term, at his discretion, and Congress could not constitutionally require consent of Senate); *see also Removal of Members of the Commission on the Federal Laws for the N. Mariana Islands*, 7 Op. O.L.C. 95, 100 (1983) (noting that "mere presence of a statutory provision for a specific term of service has not been deemed sufficient basis on which to infer a legislative purpose of restricting Presidential removal authority").  Rather, the provision for appointment for life of the Commission does not establish a limit on removal but merely establishes that an appointee may continue to serve to the conclusion of the Commission without reappointment, *unless* removed. *See id.*, 7 Op. O.L.C. at 100 n.7 (noting that term of office is not a limit on removal but is "interpreted as providing a limit on the period for which an appointee can serve without reappointment"); *Power of the President to Remove Presidential Appointees from the National Capital Planning Commission*, 6 Op. O.L.C. 191, 193 (1982) (" It has been established, since *Parsons v. United States*, 167 U.S. 324, 338 (1897), that a provision for a term merely means that the officer shall not serve beyond his term without a reappointment which would subject him to the scrutiny of the appointing authority. A term of office in itself therefore does not create a right to serve for its maximum duration; it constitutes a limitation on, rather than a grant of, the officer's tenure.").

The Office of Legal Counsel of the Department of Justice has specifically concluded that a statute similarly providing for appointment of members of a study commission "for the life of

the commission" did not create any tenure protection for the commissioners, much less preclude their removal completely.  *See Applicability of 18 U.S.C. § 208 to National Gambling Impact Study Commission*, 23 Op. O.L.C. 29, 35-38 (1999) (concluding that members of study commission appointed by President and Congress "for the life of the commission" (National Gambling Impact Study Commission Act of 1996, Pub. L. No. 104-169, § 3(b)(1), 110 Stat. 1482, 1482-83 (1996)) did not have removal protection: "Nothing in the Act creating the Commission states or implies that Commissioners are to enjoy any form of tenure protection."); *see also Power of the President to Remove Presidential Appointees from the National Capital Planning Commission*, 6 Op. O.L.C. at 193-96 (statutory provision for six-year term for commission members did not indicate congressional intent to restrict President's removal authority).

Plaintiff also alleges that the NDAA's requirement that Commission appointments "shall be made not later than 90 days" from the NDAA's enactment or the authority of the official to make an appointment expires (reducing the Commission's size), NDAA § 1087(b)(2) and (3), evinces a legislative intent "to restrict the ability to have revolving Commissioners" and imposes "a clear limitation on the ability to remove a Commissioner."  Second Am. Compl. ¶ 28.  Such an assertion is meritless.  The deadline for appointing commissioners was meant to ensure that the Commission would be staffed without unnecessary delay so that it could embark on its work and complete the required report in a timely fashion.  Contrary to plaintiff's assertion that this provision was meant to prevent "revolving appointments," the NDAA expressly provides for the filling of vacancies without any limit.  *See* NDAA § 1087(b)(5) ("Any vacancy in the Commission shall not affect its powers, but shall be filled in the same manner as the original appointment.").  Put simply, the 90-day deadline for making initial appointments to the Commission has nothing to do with the subsequent authority to remove commissioners and provides no support to plaintiff's claim that he may not be removed from his position for any reason.

Plaintiff's reliance on *Wiener v. United States,* 357 U.S. 349 (1958), *see* Second Am.

Compl. ¶ 27, to establish the absence of any removal authority over him is also misplaced.

Plaintiff claims that the Court in *Wiener* "determined that the power to remove was not

"'impliedly inferred [sic] by the statute simply because [C]ongress said nothing about it.'" *Id.*

¶ 27 (quoting *Wiener*, 357 U.S. at 356).  But *Wiener* made no such blanket conclusion.  That case

involved a challenge to the President's removal of a commissioner from the War Claims

Commission "merely because [the President] wanted his own appointees." *Wiener*, 357 U.S. at

356.[10]  Wiener (the removed commissioner) brought suit in the Claims Court for back pay

claiming he was unlawfully removed.  In reviewing the matter, the Supreme Court observed that

"the Congress provided for a tenure defined by" the period the War Claims Commission was to

operate, and "nothing was said in the Act about removal" of commissioners. *Id.* at 352.[11]  Noting

"the congressional failure of explicitness," *id.* at 352, the Court considered whether removal of a

member of the War Claims Commission was governed by *Myers v. United States*, 272 U.S. 52

(1926), which required the unfettered authority of the President to remove officers performing

solely executive functions, or *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), which

held that Congress may statutorily limit the President's ability to remove officers carrying out

quasi-judicial and quasi-legislative duties intended to function with independence from the

President. *See Wiener*, 357 U.S. at 351-54.  The Court found the War Claims Commission

---

[10]  The War Claims Commission was established by Congress in 1948 to adjudicate claims for compensation from "internees, prisoners of war, and religious organizations, . . . who suffered personal injury or property damage at the hands of the enemy in connection with World War II." *Wiener*, 357 U.S. at 349-50.  President Truman nominated Wiener to the commission, and he was confirmed by the Senate and took office in 1950.  Subsequently, President Eisenhower removed Wiener from the commission, because he considered it "in the national interest to complete the administration" of compensation claims "with personnel of my own selection." *Id.* at 350.

[11]  Specifically, the War Claims Act of 1948 provided: "The terms of office of the members of the Commission shall expire at the time fixed in subsection (d) for the winding up of the affairs of the Commission."  Pub. L. No. 80-896, § 2(a), 62 Stat. 1240-41.

undertook quasi-judicial duties comparable to the Federal Trade Commission, and held that

Wiener could not be removed from the commission merely so the President could appoint his

own person.  *See id.* at 355-56.

Contrary to plaintiff's assertion, the Supreme Court in *Wiener* did not hold that there was

*no* removal power over Wiener, but merely that the President's removal power was limited to

cause, as in *Humphrey's Executor*.  As the Court explained:

> Judging the matter in all the nakedness in which it is presented, namely, the claim
> that the President could remove a member of an adjudicatory body like the War
> Claims Commission *merely because he wanted his own appointees* on such a
> Commission, we are compelled to conclude that no such power is given to the
> President directly by the Constitution, and none is impliedly conferred upon him
> by statute simply because Congress said nothing about it.  The philosophy of
> *Humphrey's Executor*, in its explicit language as well as its implications,
> precludes such a claim.

*Wiener*, 357 U.S. at 356 (emphasis added).  The Court made clear that it was not addressing a

removal for cause, which was a different matter.  *Id.* ("We have not a removal for cause

involving the rectitude of a member of an adjudicatory body, nor even a suspensory removal until

the Senate could act upon it by confirming the appointment of a new Commissioner or otherwise

dealing with the matter.").[12]

---

[12]  In his original complaint, plaintiff did not assert that he could never be removed from
his position, but rather that he was removable only for cause, citing *Humphrey's Executor* and
*Wiener*, and that no cause had been shown.  ECF No. 4 (Corrected Complaint) ¶ 27.  However,
neither case supports that argument.  As an initial matter, *Humphrey's Executor* and *Wiener*
addressed the congressional power to limit the removal of *officers* of the United States appointed
by the President pursuant to the Appointments Clause of the Constitution, an issue wholly absent
here, as plaintiff is neither a principal nor an inferior officer of the United States, but an
employee.  *See* NDAA § 1087(b)(7) ("[T]he members of the Commission shall be deemed to be
Federal employees.").  Furthermore, unlike the War Crimes Commission in *Wiener*, the
Commission here exercises no authority of any kind.  Rather, the Commission's sole duty is to
conduct a study of military aviation safety and to report to the Congress and the President on this
subject.  Thus, the Commission here does not engage in any of the governmental functions that
*Wiener* relied on in finding a limitation on the President's removal authority.  *See Wiener*, 357
U.S. at 352-56 (key factor in deciding whether statute limits grounds for removal was "the nature
of the function that Congress vested" in the body, specifically whether the commission undertook

(continued...)

Indeed, to accept plaintiff's argument would mean that plaintiff was a government employee not subject to removal by *any* authority for *any* reason.  As the Supreme Court expressed in *Parsons*, interpreting a statute "as granting an unconditional and absolute term of office," not subject to removal by the appointing authority under any circumstances, "could never have been the intention of [C]ongress."  *Parsons*, 167 U.S. at 343.[13]

Plaintiff can point to no limitation on the Senator's removal authority over his appointee to the Commission, either in the NDAA or elsewhere.  So, "in the face of statutory silence," *Kalaris*, 697 F.2d at 389, the long-standing rule applies, and the appointing official, Senator Reed, had the authority to remove plaintiff at his discretion.  To find otherwise would be to impose an absolute restriction on removal of appointees by Members of Congress (or anyone else) that Congress itself never intended when establishing this Commission to study and advise on an important matter of public policy.

### B.   Senator Reed's Removal of Plaintiff Did Not Violate the Separation of Powers.

Plaintiff asserts that his removal by Senator Reed violated the Constitution's separation of powers because a Member of the legislative branch cannot terminate an employee of the executive branch.  Specifically, plaintiff argues that, because NDAA § 1087(a)(1) provides that "[t]he Commission shall be considered an independent establishment of the Federal Government as defined by section 104 of title 5, United States Code," and 5 U.S.C. § 104(1) provides that independent establishments are "in the executive branch," plaintiff, as a Member of the Commission, was an executive branch employee.  Second Am. Compl. ¶¶ 31-33.  Therefore,

---

[12](...continued)
quasi-adjudicative duties necessitating independence from the President).

[13]   Unlike the U.S. Attorneys at issue in *Parsons*, plaintiff, as an employee, would not be subject to removal even by impeachment.  Plaintiff has pointed to no other appointed officer or employee of the Federal Government who enjoys such absolute tenure – not the Cabinet, not federal judges, and not civil service employees of any branch.

plaintiff argues, Senator Reed's removal of plaintiff constituted a violation of the separation of powers because a Member of Congress may not remove an executive branch employee.  *Id.* ¶¶ 34-37 (citing *Bowsher v. Synar*, 478 U.S. 714 (1986)).[14]

Plaintiff's argument misconceives the separation of powers inquiry as a simplistic examination of statutory labels.  As the Supreme Court's analysis in *Bowsher v. Synar*, demonstrates, separation-of-powers analysis focuses on the functions assigned to government officials or employees, that is, what powers they exercise, and not on a position's designation for administrative purposes.  *See* 478 U.S. 714, 726-34 (1986); *cf. Department of Transportation v. Ass'n of Am. Railroads*, 575 U.S. 43, 51 (2015) ("Congressional pronouncements . . . are not dispositive of [an entity]'s status as a governmental entity for purposes of separation of powers analysis under the Constitution.").  Thus, in *Bowsher*, which involved a challenge to the powers granted by the Balanced Budget and Emergency Deficit Control Act of 1985 to an official removable by Congress, the Comptroller General, the Supreme Court's analysis focused not on which branch the Comptroller was nominally located in, but, rather, whether the *functions* assigned by statute to the Comptroller General were executive powers.  *See Bowsher*, 478 U.S. at 732 (having found that "Congress has retained removal authority over the Comptroller General, . . . [t]he remaining question is whether the Comptroller General has been assigned [executive] powers in the [Act]").  That question depended on whether the duties assigned to the Comptroller General constituted "execution of the law," *id.* at 732-33, and the Court concluded that the budget sequestration authority granted to the Comptroller General constituted "functions . . . plainly entailing execution of the law in constitutional terms."  *Id.*  As the Court explained:

---

14  Plaintiff also cites for support *PHH Corp. v. Consumer Financial Protection Bureau*, 881 F.3d 75 (D.C. Cir. 2018) (en banc).  However, that case was recently abrogated by the Supreme Court's decision in *Seila Law, LLC v. Consumer Financial Protection Bureau*, No. 19-7, — S. Ct. —, 2020 WL 3492641 (June 29, 2020).

The executive nature of the Comptroller General's functions under the Act is revealed in § 252(a)(3) which gives the Comptroller General the ultimate authority to determine the budget cuts to be made. Indeed, the Comptroller General commands the President himself to carry out, without the slightest variation (with exceptions not relevant to the constitutional issues presented), the directive of the Comptroller General as to the budget reductions[.]

*Id.* at 733. Because the Act gave the Comptroller General – an officer subject to congressional removal – executive power, it ran afoul of the separation of powers.

Under *Bowsher*, then, the question is whether the functions assigned to an official or employee removable by Congress are "executive powers" entailing "execution of the law." Under the NDAA, the Commission's sole duty is to "undertake a comprehensive study of United States military aviation mishaps that occurred between fiscal years 2013 and 2018," NDAA § 1087(h)(1), and to submit a report to the Senate and House Armed Services Committees and to the President that sets forth "a detailed statement of the findings and conclusions of the Commission . . . with recommendations . . . for such legislative and administrative actions as the Commission considers appropriate in light of the results of the study." *Id.* § 1087(h)(2). The Commission neither executes any laws of the United States nor promulgates any regulations. Put simply, its duties do not involve "execution of the law," and the Commission thus exercises no "executive powers." Accordingly, plaintiff's removal from the Commission by Senator Reed does not violate the separation of powers. *See Mistretta v. United States*, 488 U.S. 361, 411 n.35 (1989) ("Our paramount concern in *Bowsher* that Congress was accreting to itself the power to control the functions of another Branch is not implicated by a removal provision, like the one at issue here, which provides no control in one Branch over the constitutionally assigned mission of another Branch.").[15]

---

[15]   The Commission is far from unique in its structure. Congress has created other study commissions administratively designated as establishments in the executive branch with members appointed by both Members of Congress and the President. *See, e.g.*, National Commission on Military, National, and Public Service, Pub. L. No. 115-232, § 553, 132 Stat. 2134-37 (2018) (commission formed as independent establishment in the executive branch,

(continued...)

26

The Supreme Court's decision in *Buckley v. Valeo*, 424 U.S. 1 (1976) (per curiam), supports the conclusion that the activities undertaken by the Commission do not fall within the executive sphere, and may accordingly be performed by officials subject to congressional removal.  In *Buckley*, the Court considered a challenge to the composition of the newly-created Federal Election Commission, which had some members appointed by congressional leaders.[16] In considering whether congressional appointment of commissioners presented a constitutional problem, the Court examined the duties assigned to the FEC.  The Court noted that having congressional appointees exercise some of the duties assigned to the FEC would not present a constitutional problem.  In particular, "[i]nsofar as the powers confided in the Commission are essentially of an *investigative and informative nature*, falling in the same general category as those powers which Congress might delegate to one of its own committees, there can be no question that the Commission as presently constituted may exercise them."  *Buckley*, 424 U.S. at 137 (emphasis added).  In contrast, the Court found that "the Commission's enforcement power" constituted executing the law, and, "it is to the President, and not to the Congress, that the Constitution entrusts the responsibility to 'take Care that the Laws be faithfully executed.'"  *Id.* at 138 (quoting U.S. Const. art. II, § 3).  *Buckley* held that officials carrying out such executive

---

[15](...continued)
whose members are federal employees, with 8 members appointed by Members of Congress and 3 by the President); Alyce Spotted Bear and Walter Soboleff Commission on Native Children, Pub. L. No. 114-244, § 3, 130 Stat. 981-82 (2016) (commission established in Office of Tribal Justice of Department of Justice, with 8 members appointed by congressional leaders and 3 by the President); Evidence-Based Policy-making Commission, Pub. L. No. 114-140, 130 Stat. 317-21 (2016) (commission established in the executive branch with 12 members appointed by congressional leaders and 3 by the President).

[16]  Federal Election Campaign Act Amendments, Pub. L. No. 93-443,  § 310(a)(1), 88 Stat. 1280-81 (1974) (commission composed of 6 members: 2 appointed by Senate President pro tempore on recommendations of Senate Majority and Minority Leaders; 2 by Speaker of the House upon recommendation of House Majority and Minority Leaders; and 2 by the President; all six appointments subject to "the confirmation of a majority of both Houses of the Congress").

duties must be appointed in accordance with the Appointments Clause of the Constitution, which does not permit appointment by Members of Congress.  *See Buckley*, 424 U.S. at 140.

The duties assigned to the Commission on Military Aviation Safety—to study and report to Congress and the President on a particular problem related to government policy—are the very functions that the Supreme Court described in *Buckley* as "investigative and informative in nature," and, accordingly, are powers that Congress could delegate to itself.  Therefore, Congress may provide for such activities to be undertaken by employees subject to congressional appointment and removal.[17]  Under *Buckley*'s reasoning, therefore, the appointment and removal of a member of the Commission by a Member of Congress raises no constitutional problem.[18]

In sum, as members of the Commission do not exercise any "executive powers," Senator Reed's removal of plaintiff did not violate the Constitution's separation of powers, and plaintiff's second amended complaint fails to state a separation of powers claim as a matter of law.

---

[17]  Citing *Buckley*, DOJ's Office of Legal Counsel came to a similar conclusion regarding the duties of a study commission composed of appointees by the President and congressional leaders:

> [T]he Commission exists solely to conduct a study and to report its findings and recommendations to Congress, the President, and State and tribal governments. Its responsibilities are "essentially of an investigative and informative nature, falling in the same general category as those powers which Congress might delegate to one of its own committees."

*Applicability of 18 U.S.C. § 208 to National Gambling Impact Study Commission*, 23 Op. O.L.C. at 35 (internal footnote omitted) (quoting *Buckley*, 424 U.S. at 137).

[18]  While *Buckley* addressed the power of appointment, the power of removal is incident thereto and subject to the same analysis.  Indeed, perhaps the most striking aspect of plaintiff's argument is that if Senator Reed's removal of  plaintiff violated the separation of powers because plaintiff was an employee of an independent establishment "in the executive branch," then it would be equally true that Senator Reed's appointment of plaintiff to such a position would likewise have violated the separation of powers.  Hence, to accept plaintiff's argument would not return him to his seat on the Commission, but rather would lead to the conclusion that he was never lawfully appointed in the first place.

### C.    Plaintiff's Removal Did Not Violate Due Process.

In order to state a claim for denial of constitutional due process, "a plaintiff must allege a deprivation of interests protected by the Fifth Amendment." *Ivey v. Fenty*, 789 F. Supp. 2d 65, 69 (D.D.C. 2011).[19]   Plaintiff alleges that his termination from the Commission deprived him of his "protected property interest in his employment."  Second Am. Compl. ¶ 39.  As a matter of law, however, plaintiff's employment does not constitute a protected property interest because, as explained above, under the NDAA, plaintiff served in his position "at will," subject to removal at the Senator's discretion.  In addition, plaintiff's service was "at will" also because he was a reemployed annuitant, as explained in co-defendant Chairman Cody's motion to dismiss plaintiff's second amended complaint, at 3, 26-27, and, under the CSRA, a reemployed annuitant "serves at the will of the appointing authority."  5 U.S.C. § 3323(b)(1).

It is well established that "[a]t-will employees (as opposed to those terminable only for cause) have no property interest in their employment" that triggers due process procedural protections, "because there is no objective basis for believing that they will continue to be employed indefinitely."  *Rodriguez v. District of Columbia*, 118 F. Supp. 3d 132, 140 (D.D.C. 2015) (internal quotation marks and citation omitted); *see also Hall v. Ford*, 856 F.2d 255, 265 (D.C. Cir. 1988) ("Those who are terminable at will have no property interest because there is no objective basis for believing that they will continue to be employed indefinitely."); *Tapp v. WMATA*, 306 F. Supp. 3d 383, 393 (D.D.C. 2016) (plaintiff's at-will employment "did not constitute a property right that triggers the procedural protections of the Due Process Clause"); *Ivey*, 789 F. Supp. 2d at 69 (same); *Mills v. D.C. Dept. of Mental Health, St. Elizabeth's Hosp. Managers*, 756 F. Supp. 2d 55, 59 (D.D.C. 2010) ("As a general rule, an at-will employee 'may be

---

[19]   While plaintiff asserts a violation of his due process rights under the Fourteenth Amendment, *see* Second Am. Compl. ¶ 44, that clause applies only to the states.  The Fifth Amendment's Due Process Clause is applicable to the Federal Government.

discharged at any time and for any reason, or for no reason at all,' and hence has no protected

property interest triggering due process concerns.") (quoting *Liberatore v. Melville Corp.*, 168 F.3d

1326, 1329 (D.C. Cir. 1999) and citations omitted); *Saunders v. District of Columbia,* 711 F. Supp.

2d 42, 57 (D.D.C. 2010) (at-will employee cannot succeed on claim that dismissal deprived her of

due process as she has no property interest in continued employment); *Ekwem v. Fenty*, 666 F.

Supp. 2d 71, 78 (D.D.C. 2009) ("government employees who are terminable at will have no

property interest" for due process purposes) (internal quotation marks and citation omitted).

Accordingly, because he had no protected property interest in his employment, plaintiff cannot

state a due process claim arising from his termination.

### D.      No APA Claim Can Be Brought Against Senator Reed.

Plaintiff's final claim is that Senator Reed's termination of his service on the

Commission was "unlawful agency action" in violation of the APA.  Yet, the APA provides

judicial review only of claims challenging *agency* action, 5 U.S.C. § 706, and specifically

excludes Congress from the definition of "agency."  *See* 5 U.S.C. §§ 701(b)(1)(A) (agency for

APA judicial review provisions does not mean Congress), 702 ("A person suffering legal wrong

because of *agency* action, or adversely affected or aggrieved by *agency* action within the meaning

of a relevant statute, is entitled to judicial review thereof.") (emphasis added), 704 (actions made

judicially reviewable under the APA are "*agency* actions") (emphasis added); *see also Clark*, 750

F.2d at 102 ("[T]he Congress is not an 'agency' as defined under the Administrative Procedure

Act."); *Rockefeller*, 234 F. App'x at 856.  Therefore, plaintiff's termination did not constitute

agency action, and no APA claim can be brought against Senator Reed.

Even if plaintiff could assert his APA claim against Senator Reed, it would fail as a matter

of law because his termination did not constitute "unlawful agency action."  Plaintiff alleges the

termination was unlawful under the APA because it violated the NDAA, the separation of powers,

and the Due Process Clause, *see* Second Am. Compl. ¶¶ 47-49; in other words, plaintiff's APA

claim is nothing more than a vehicle for asserting his other three claims in this suit.  As those fail

to state a claim as a matter of law, *see supra* at 19-32 (Argument Parts II.A, B, and C), his APA

claim, even if he could raise such a claim against the Senator, would equally fail to state a claim.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiff's Second Amended

Complaint against Senator Reed with prejudice.

> Respectfully submitted,
>
>  /s/ *Patricia Mack Bryan*
> Patricia Mack Bryan, Bar #335463
> Senate Legal Counsel
>
> Morgan J. Frankel, Bar #342022
> Deputy Senate Legal Counsel
>
> Grant R. Vinik, Bar #459848
> Assistant Senate Legal Counsel
>
> Thomas E. Caballero
> Assistant Senate Legal Counsel
>
> Office of Senate Legal Counsel
> 642 Hart Senate Office Building
> Washington, D.C. 20510-7250
> (202) 224-4435 (tel)
> (202) 224-3391 (fax)

Dated: July 22, 2020                    Attorneys for Defendant Senator Jack Reed