UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
PETER B. MAPES,                                     )
                        *Plaintiff*,                )
                                                    )
            v.                                      )
                                                    )      Civ. A. No.  20-0223 (JEB)
SENATOR JACK REED,                                  )
RICHARD CODY, Chairman,                             )
National Commission on Military                     )
Aviation Safety                                     )
                        *Defendants*.               )
_____)

## DEFENDANT CHAIRMAN RICHARD CODY'S MOTION TO DISMISS
## PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendant, National Commission on Military Aviation Safety Chairman Richard Cody,

through undersigned counsel, hereby respectfully moves the Court, pursuant to Federal Rules of

Civil Procedure 12(b)(1) and 12(b)(6), to dismiss Plaintiff's Second Amended Complaint against

him. In support of the motion, Defendant Chairman Cody respectfully refers the Court to the

Memorandum of Points and Authorities filed in connection with his Motion.

Dated:  July 22, 2020                    Respectfully submitted,

Stefan R. Wolfe                          MICHAEL R. SHERWIN
General Counsel                          Acting United States Attorney
National Commission on
Military Aviation Safety                 DANIEL F. VAN HORN, D.C. Bar # 924092
                                         Chief, Civil Division
Cody Cheek
Attorney                      By:        */s/ John Moustakas*
National Commission on                   John Moustakas, D.C. Bar #442076
Military Aviation Safety                  Assistant U.S. Attorney
2900 Crystal Drive                       555 Fourth Street, N.W.
Arlington, VA 22202                      Washington, D.C. 20530
                                         (202) 252-2518
*Of Counsel*                             john.moustakas@usdoj.gov
                                         *Counsel for Defendant Chairman Richard Cody*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                        )
PETER B. MAPES,                                          )
                          *Plaintiff*,                   )
                                                        )
              v.                                         )
                                                        )   Civ. A. No.  20-0223 (JEB)
SENATOR JACK REED,                                       )
RICHARD CODY, Chairman,                                  )
National Commission on Military                          )
Aviation Safety                                          )
                          *Defendants*.                  )
_____)

**MEMORANDUM OF POINTS ANDUTHORITIES IN SUPPORT OF
DEFENDANT CHAIRMAN RICHARD CODY'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

                              MICHAEL R. SHERWIN
                              Acting United States Attorney

                              DANIEL F. VAN HORN, DC Bar #924092
                              Chief, Civil Division

                              JOHN MOUSTAKAS, DC Bar #442076
                              Assistant United States Attorney
                              555 4th Street, N.W.
                              Washington, D.C. 20530
                              Tel: (202) 252-2518
                              john.moustakas@usdoj.gov

                              *Counsel for Defendant*

                              Stefan R. Wolfe, General Counsel
                              Cody Cheek, Attorney
                              National Commission on Military
                              Aviation Safety
                              2900 Crystal Drive
                              Arlington, VA 22202
                              *Of Counsel*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ………..……….......…………………………..…..iii

I.      INTRODUCTION …………………………………………………………....2

II.     BACKGROUND ………………………………………………………….....3

        A.    Plaintiff's appointment to the National Commission on Military Aviation
              Safety ……………………………………………………………………....3

        B.    Plaintiff's status as a reemployed annuitant ……………………………….4

        C.    Plaintiff's removal from the Commission ………………………………….5

        D.    Plaintiff's post-removal claims for pay ……………………………….........6

        E.    Plaintiff's complaint, amended complaint, and second amended complaint ....6

III.    LEGAL STANDARDS ……………………………………………………….7

        A.    Dismissal pursuant to Rule 12(b)(1)for lack of subject matter jurisdiction …..7

        B.    Dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which
              relief can be granted ………………………………………………………8

        C.    Dismissal pursuant to Rule 56 (Summary Judgment)……..……………….... 9

IV.     ARGUMENT……………………………………………………………….... 10

        A.    This Court lacks subject matter jurisdiction, as Plaintiff's suit is precluded
              by the CSRA ……………………………………………………………..10

              1. Commission members are federal employees in the excepted service …….11

              2. Plaintiff is required to seek relief under the CSRA…………………….11

              3. The APA does not save Plaintiff's complaint …………………………13

              4. *Leedom's* "Hail Mary" does not save Plaintiff's complaint ………………14

        B.    Plaintiff's removal did not violate NDAA § 1087 ……………………….....15

**1. Plaintiff's claim that he cannot be removed by anyone – ever – is wrong…15**

**2. *Wiener* is both distinguishable and insufficient to support Plaintiff's claim....17**

**C.    Plaintiff's removal does not violate the separation of powers doctrine……….21**

**1.*Bowsher* does not support Plaintiff's claim ……………………………....21**

**2. *PHH Corp* does not support Plaintiff's claim …………………………….23**

**D.    Plaintiff's removal did not violate due process ………………………….25**

**1. Plaintiff had no property interest in his continued employment …………... 25**

**2.Plaintiff fails to allege sufficient facts to support his claim ..………...............25**

**E.    This case presents a non-justiciable political question…………………………27**

**F.    As a reemployed annuitant, Plaintiff served at the will of Senator Reed …….29**

**G.    Plaintiff's APA claim does nothing more than restate his other flawed claims...30**

**H.    Plaintiff's pay claim should be dismissed………………………………...30**

**V.CONCLUSION ……………………………………………………… ...............…..…31**

# TABLE OF AUTHORITIES

Page(s)

Cases

*Abhe & Svoboda, Inc. v. Chao,*
    508 F.3d 1052 (D.C. Cir. 2007) ................................................................ 9
*AFGE v. Secretary of the Air Force,*
    841 F. Supp. 2d 233 (D.D.C. 2012) ........................................................ 12
*AFGE v. Sec'y of the Air Force,*
    716 F.3d 633 (D.C. Cir. 2013) .............................................................. 13
*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ...................................................................... 9, 10
*Arthrex, Inc. v. Smith & Nephew, Inc.,*
    941 F.3d 1320 (Fed. Cir. 2019) ............................................................ 21
*Ashbourne v. Hansberry,*
    245 F. Supp. 3d 99 (D.D.C. 2017) ...................................................... 9, 26
*Asbourne v. Hansberry,*
    894 F.3d 298 (D.C. Cir. 2018) ............................................................. 9
*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ....................................................................... 8, 9
*Baker v. Carr,*
    369 U.S. 186 (1962) ........................................................................ 27
*Bancoult v. McNamara,*
    445 F.3d 427 (D.C. Cir. 2006) .............................................................. 27
*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ....................................................................... 8, 9
*Benoit v. USDA,*
    608 F.3d 17 (D.C. Cir. 2010) .............................................................. 30
*Bowsher v. Synar,*
    478 U.S. 714 (1986) ................................................................. 20, 21, 22
*Buckley v. Valeo,*
    424 U.S. 1 (1976) ................................................................. 20, 21, 22, 23
*Cafeteria & Restaurant Workers Union, Local 473 v. McElroy,*
    367 U.S. 886 (1961) ...................................................................... 15, 19
*Carlucci v. Doe,*
    488 U.S. 93 (1988) ....................................................................... 15, 19
*Coleman v. Napolitano,*
    65 F. Supp. 3d 99 (D.D.C. 2014) ........................................................... 7
*Coulibaly v. Kerry,*
    130 F. Supp. 3d 140 (D.D.C. 2015) ........................................................ 30
*Delalat v. Dep't of the Air Force,*
    557 F.3d 1342 (Fed. Cir. 2009) ............................................................ 28

*Dep't of Transportation v. Ass'n of American Railroads,*
   575 U.S. 43 (2015) ................................................................................................ 22
*Eagle Trust Fund v. United States Postal Serv.,*
   365 F. Supp. 3d 57 (D.D.C. 2019) ......................................................................... 24
*Elgin v. Department of the Treasury,*
   567 U.S. 1 (2012) ................................................................................... 12, 13, 19
*Filebark v. U.S. Dep't of Transp.,*
   555 F.3d 1009 (D.C. Cir. 2009) ....................................................................... 13, 14
*Fisher v. United States,*
   402 F.3d 1167 (Fed. Cir. 2005) .............................................................................. 30
*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.,*
   561 U.S. 477 (2010) .......................................................................................... 15, 19
*Grand Lodge of Fraternal Order of Police v. Ashcroft,*
   185 F. Supp. 2d 9 (D.D.C. 2001) ........................................................................ 7, 8
*Grosdidier v. Chairman, Broadcasting Bd. of Governors,*
   560 F.3d 495 (D.C. Cir. 2009) .......................................................................... 11, 13
*Gunn v. Minton,*
   568 U.S. 251 (2013) ............................................................................................... 7
*Hall v. Ford,*
   856 F.2d 255 (D.C. Cir. 1988) ............................................................................... 25
*Hennen,*
   38 U.S. 230 (1839) ................................................................................................ 15
*Holcomb v. Powell,*
   433 F.3d 889 (D.C. Cir. 2006) ................................................................................. 9
*Jefferson v. Harris,*
   170 F. Supp. 3d 194 (D.D.C. 2016) ....................................................................... 27
*Jerome Stevens Pharms., Inc. v. FDA,*
   402 F.3d 1249 (D.C. Cir. 2005) ............................................................................... 8
*Kalaris v. Donovan,*
   697 F.2d 376 (D.C. Cir. 1983) .......................................................................... 15, 17
*Kenley v. District of Columbia,*
   83 F. Supp. 3d 20 (D.D.C. 2015) ........................................................................... 26
*Kokkonen v. Guardian Life Ins. Co. of Am.,*
   511 U.S. 375 (1994) ................................................................................................ 7
*Kowal v. MCI Communications Corp.,*
   16 F.3d 1271 (D.C. Cir. 1994) ................................................................................. 8
*Kreis v. Sec'y of Air Force,*
   866 F.2d 1508 (D.C. Cir. 1989) .............................................................................. 27
*Leedom v. Kyne,*
   358 U.S. 184 (1958) ............................................................................................... 14
*Lucia v. SEC,*
   138 S. Ct. 2044 (2018) ........................................................................................... 16

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................................... 7

*Mahoney v. Donovan*,
  824 F. Supp. 2d 49 (D.D.C. 2011) ................................................. 14

*Mistretta v. United States*,
  488 U.S. 361 (1989) ......................................................................... 22

*Morrison v. Olson*
  487 U.S. 654 (1988) ......................................................................... 19

*Myers v. United States*,
  272 U.S. 52 (1926) ........................................................................... 18

*Nyunt v. Chairman, Broadcasting Bd. of Governors*,
  589 F.3d 445 (D.C. Cir. 2009) .............................................. 12, 13, 14

*Orloff v. Willoughby*,
  345 U.S. 83 (1953) ........................................................................... 27

*Palacios v. Spencer*,
  906 F.3d. 124 (D.C. Cir. 2018) ...................................................... 30

*Papasan v. Allain*,
  478 U.S. 265 (1986) ........................................................................... 8

*Parsons v. United States*,
  167 U.S. 324 (1897) .............................................................. 15, 18, 20

*PHH Corp v. Consumer Financial Protection Bureau*,
  881 F.3d 75 (D.C. Cir. 2018) .......................................................... 20

*Powers-Bunce v. District of Columbia*,
  479 F. Supp. 2d 146 (D.D.C. 2007) ............................................... 24

*Proctor v. District of Columbia*,
  74 F. Supp. 3d 436 (D.D.C. 2014) ................................................. 10

*Removal of Members of the Comm'n on Federal Laws for the Northern Mariana Islands*,
  7 Op. O.L.C. 95 (1983) .................................................................... 18

*Sagar v. Lew*,
  211 F. Supp. 3d 262 (D.D.C. 2016) ............................................... 13

*Steadman v. Governor*,
  918 F.2d 963 (D.C. Cir. 1990) ........................................................ 13

*Talavera v. Shah*,
  638 F.3d 303 (D.C. Cir. 2011) ........................................................ 10

*Terrill v. Merit Sys. Prot. Bd.*,
  610 Fed. Appx. 982 (Fed. Cir. 2015) .............................................. 28

*United States v. Fausto*,
  484 U.S. 439 (1988) .............................................................. 11, 12, 13

*Vesser v. Office of Personnel Management*,
  29 F.3d 600 (Fed. Cir. 1994) .......................................................... 28

*Ward v. D.C. Dep't of Youth Rehab Servs.*,
  768 F. Supp. 2d 117 (D.D.C. 2011) ................................................. 9

*Wiener v. United States*,
   357 U.S. 349 (1958) ............................................................................ 16, 17, 18, 19

Statutes

5 U.S.C. 3323............................................................................................................. 5, 29
5 U.S.C. 3323(b)(1) ............................................................................................. 3, 10, 28
5 U.S.C. § 2103 ................................................................................................................ 11
5 U.S.C. § 3161(b)(3) ..................................................................................................... 11
5 U.S.C. § 7511(b)(4) ..................................................................................................... 12
5 U.S.C. § 7703(a)(1)...................................................................................................... 13
5 U.S.C. §§ 7512 ............................................................................................................. 12
*18 U.S.C. § 208* ............................................................................................................. 18
28 U.S.C. § 1295(a)(9).................................................................................................... 13
28 U.S.C. § 1346(a)(2).................................................................................................... 30
Pub. L. No. 104-169........................................................................................................ 18
Pub. L. No. 115-232......................................................................................................... 3

Rules

Fed. R. Civ. P. 56(a) ......................................................................................................... 9
Fed. R. Civ. P. 56(b) ....................................................................................................... 10
Federal Rule of Civil Procedure 12(b)(6) ........................................................ 3, 8, 9, 25
Federal Rules of Civil Procedure 12(b)(1)................................................................. 1, 3

Other Authorities

164 Cong. Rec. S6929 ...................................................................................................... 4
*Gore v. Wilkie*,
   2020 U.S. Dist. LEXIS 94792, *14 ........................................................................ 30
*Henry v. Bureau of Prisons*,
   2006 U.S. Dist. LEXIS 3108, at *2 ........................................................................ 30
*Wilkie*,
   2020 U.S. Dist. LEXIS 5908, *8-12........................................................................ 12

Most federal employment cases do not involve a Senator and the President of the United States.  This one does.  However, despite its unusual cast, the script is the same.  Plaintiff is a federal employee who lost his job and seeks redress, but does so in an improper forum and with an insufficient complaint.  This Court should dismiss this lawsuit.

## I. INTRODUCTION

Plaintiff, formerly a member of the National Commission on Military Aviation Safety ("the Commission"), contends his removal was "illegal and unconstitutional."  Second Amended Complaint ["Second Am. Compl."], ECF No. 29, at Intro.  It was neither.  In actuality, Plaintiff served as an "at-will" employee, subject to removal by the appointing authority.  For several reasons, this status is fatal to Plaintiff's complaint.

First, if Plaintiff has an employment right to assert, it is not here.  As a federal employee in the excepted service, Plaintiff is precluded by the Civil Service Reform Act ("CSRA") from

[*remainder of page left intentionally blank*]

challenging his dismissal before this Court. Accordingly, this Court should dismiss Plaintiff's complaint for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

Second, Plaintiff fails to state a proper claim for relief because Senator Reed, who appointed him to the Commission, also had the authority to remove him. The statute that gave the power of appointment neither limited this power nor prohibited its revocation. As such, dismissal is warranted under Federal Rule of Civil Procedure 12(b)(6).

Third, contrary to his assertion, Plaintiff's removal did not violate separation of powers. However, if it did, such an infirmity would have precluded his lawful appointment. Plaintiff is not entitled to relief under any scenario, and this claim should be dismissed under Rule 12(b)(6).

Fourth, Plaintiff's at-will employment defeats the due process claim that he, in any case, inadequately pleads. It, too, fails under Rule 12(b)(6).

Fifth, through his requested relief, Plaintiff asks this Court to address a non-justiciable political question. The authority to appoint and remove political appointees is vested in the political branches, and this Court should decline Plaintiff's invitation to hold otherwise.

Sixth, Plaintiff was a reemployed annuitant who, under 5 U.S.C. 3323(b)(1), "serve[d] at the will of [his] appointing authority," Senator Reed. As such, Plaintiff's removal was lawful, and summary judgment is appropriate under Rule 56.

Finally, if this Court reaches the issue, Plaintiff has not stated a cause of action that would entitle him to monetary damages.

## II. BACKGROUND

### A. Plaintiff's appointment to the National Commission on Military Aviation Safety

Congress created the National Commission on Military Aviation Safety in the John S. McCain National Defense Authorization Act for Fiscal Year 2019 ("NDAA"). *See* Pub. L. No.

115-232, § 1087, 132 Stat. 1636, 1992-96 (2018).  The Commission's mandate is "to examine and make recommendations with respect to certain United States military aviation mishaps."  *Id.* § 1087(a)(2).  The Commission is required to submit a report "to the President and the congressional defense committees."  *Id.* § 1087(h)(2).

The Commission is comprised of eight members, all of whom are federal employees.  *Id.* § 1087(b)(1), (b)(7).  Four members are appointed by the President and four by members of Congress serving enumerated roles.  *Id.* at § 1087(b)(1).  One appointment is made by the Ranking Member of the Senate Armed Services Committee.  *Id.* § 1087(b)(1)(C).  In this capacity, Senator Jack Reed appointed Plaintiff to the Commission on November 13, 2018.  *See* 164 Cong. Rec. S6929 (daily ed. Nov. 13, 2018).

**B. <u>Plaintiff's status as a reemployed annuitant</u>**

Although the Commission previously met and selected a Chairman, the Commission members were sworn into their positions on April 22, 2019.  *See* Exhibit A of Enclosure 1 to Defendant Chairman Cody's Motion to Dismiss or, in the Alternative, for Summary Judgment ["Def. Chairman Cody's MTD"], ECF No. 13-1, ¶ 3.  That same day, the Commission members were enrolled into the pay system.  *Id.*  Based on their annuity payments for prior civil service, four Commission members, including Plaintiff, were subject to a salary offset.  *See* Exhibit F of Enclosure 1 to Def. Chairman Cody's MTD, ECF No. 13-1, ¶ 3.

On April 29, 2019, the Commission Budget Analyst contacted these four Commission members to request their annuity numbers.  *Id.*  The Budget Analyst explained this information would help "complete waivers so your federal service annuity payments will not be offset by your [Commission] employment."  *Id.*; *see also* Exhibit G of Enclosure 1 to Def. Chairman

Cody's MTD, ECF No. 13-1.  In response, Plaintiff submitted his annuity number.  Exhibit F of Enclosure 1 to Def. Chairman Cody's MTD, ECF No. 13-1, ¶ 4.

On June 20, 2019, OPM approved the Commission's "request to waive the dual compensation reduction (salary off-set)" for the four Commission members.  Exhibit I of Enclosure 1 to Def. Chairman Cody's MTD, ECF No. 13-1.  In approving the request, OPM noted that "[r]eemployed annuitants *serve at the will of the appointing official*, per 5 U.S.C. 3323."  *Id.* (emphasis added).  A copy of OPM's letter was sent to Plaintiff on June 26, 2019. Exhibits H, J of Enclosure 1 to Def. Chairman Cody's MTD, ECF No. 13-1.

### C. Plaintiff's removal from the Commission

On October 22, 2019, the Commission held a meeting attended by multiple military services.  *See* Exhibits B, C of Enclosure 1 to Def. Chairman Cody's MTD, ECF No. 13-1.  In November 2019, the Commission received complaints from the U.S. Army and U.S. Air Force regarding Plaintiff's conduct during this meeting.  *Id.*

In fact, the Director of Army Safety said he received "multiple" reports of Plaintiff's "disrespectful" and "badgering" conduct towards one of the Army's senior officers.  Exhibit C of Enclosure 1 to Def. Chairman Cody's MTD, ECF No. 13-1.  The Director noted this officer "reported Dr. Mapes' behavior to me, as did multiple other participants present at the 22 October meeting."  *Id.*  The Director added that such behavior "tarnish[es] the reputation of the commission."  *Id.*  Based on Plaintiff's actions, the Director said, "I feel it is in the best interest of [the Commission] and the Army that Dr. Mapes not visit Army units and cease further interaction with my staff."  *Id.*

The Air Force Chief of Safety expressed similar sentiments, describing Plaintiff as "extremely unprofessional in his interactions to the point that communications in the forum were

impacted." Exhibit B of Enclosure 1 to Def. Chairman Cody's MTD, ECF No. 13-1.  He also

stated his concern "about the impact [Plaintiff] might have at an installation if he were to

continue to display similar behavior while interacting with local personnel." *Id*.

      Following these complaints, the Commission formally recommended to remove Plaintiff

from the Commission; on January 7, 2020, Senator Reed agreed.  Exhibit D of Enclosure 1 to

Def. Chairman Cody's MTD, ECF No. 13-1.  Three days later, President Trump concurred with

the decision.  Exhibit E of Enclosure 1 to Def. Chairman Cody's MTD, ECF No. 13-1.

      **D. <u>Plaintiff's post-removal claims for pay</u>**

      Notwithstanding his removal, Plaintiff continued submitting claims for pay.  Exhibit K of

Enclosure 1 to Def. Chairman Cody's MTD, ECF No. 13-1, ¶¶ 6, 8, 9.  Commission members

determine their own hours, and submit claims to the Budget Analyst to receive pay. *Id*. ¶ 4.  In

January 2020, Plaintiff claimed he worked 16 days for the Commission after his removal. *Id*. ¶¶

6, 8.  In February 2020, Plaintiff claimed an additional 10 days of work. *Id*. ¶ 9.  As Plaintiff is

paid at the rate of $638.24 per day, his post-removal claims for these two months exceed

$16,000. *Id*. ¶ 10.

      **E. <u>Plaintiff's complaint, amended complaint, and second amended complaint</u>**

      On January 28, 2020, Plaintiff filed this suit against Senator Reed and the Chairman of

the Commission, Richard Cody.[1]  ECF No. 1.  Following initial briefing on several dispositive

motions, Plaintiff moved for leave to file an amended complaint.  ECF No. 28.  This Court

---

[1] At the same time Plaintiff filed suit, he also filed motions for a temporary restraining order and
for a preliminary injunction to bar Senator Reed from appointing, and the Commission from
seating, a replacement member.  ECF Nos. 2, 3.  As Senator Reed has committed to making no
such appointment during the pendency of this litigation, these motions were dismissed without
prejudice after a conference call with the parties and the Court.  Minute Order, Feb. 11, 2020.

granted the motion.  Minute Order, June 24, 2020.  Pursuant to this Court's order, Plaintiff was

authorized to file a second amended complaint by July 1, 2020, which he did.

Plaintiff's second amended complaint asserts that: (1) he is not removable from office

under the NDAA; (2) his removal violated the separation of powers doctrine; (3) his removal

violated the due process clause; and (4) his removal was an unlawful agency action under the

Administrative Procedure Act (APA).  Second Am. Compl. at ¶¶ 25-50.  In his prayer for relief,

Plaintiff asks this Court to: (1) "hold unlawful and set aside" his removal from the Commission;

(2) "order payment for Commission work he performed after January 7, 2020"; (3) award

attorney's fees and other litigation costs; and (4) grant any other relief deemed "just and proper."

*Id*. at Prayer for Relief.  In another section, Plaintiff asks that "the Defendants be enjoined from

attempting to terminate [him] in the future."  *Id*. ¶ 8.

### III. LEGAL STANDARDS

#### A. Dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power

authorized by Constitution and statute.'"  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  A court has an

"affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."

*Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).

"Absent subject matter jurisdiction over a case, the court must dismiss it."  *Coleman v.

Napolitano*, 65 F. Supp. 3d 99, 102 (D.D.C. 2014) (citation omitted).

Following a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule

12(b)(1), the plaintiff bears the burden of proving that the court has subject matter jurisdiction.

*See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  As such, "'the plaintiff's factual

allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police*, 185 F. Supp. 2d at 13-14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)). In determining jurisdiction, "the district court may consider materials outside the pleadings." *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (citation omitted).

**B.  Dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted**

On a Rule 12(b)(6) motion, the court must dismiss a claim if plaintiff's complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) (third alteration in original). The focus is on the language in the complaint, and the requirement that the plain statement possess "enough heft" to demonstrate that the pleader is entitled to relief. *Twombly*, 550 U.S. at 557.

"[A] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court need not, however, "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Iqbal*, 556 U.S. at 678-79 (legal conclusions are "not entitled to the assumption of truth").

In other words, a pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Moreover, for a plaintiff to survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

For a Rule 12(b)(6) motion, a district court "may consider 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint,' or 'documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss.'" *Ashbourne v. Hansberry*, 245 F. Supp. 3d 99, 103 (D.D.C. 2017), *aff'd*, 894 F.3d 298 (D.C. Cir. 2018) (quoting *Ward v. D.C. Dep't of Youth Rehab Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011)) (internal quotation marks omitted). "The court may also consider documents in the public record of which the court may take judicial notice." *Id.* (citing *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007)).

## C. <u>Dismissal pursuant to Rule 56 (Summary Judgment)</u>

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. A fact is "material" if it is capable of affecting the substantive outcome of the litigation. *Id.*; *Holcomb*, 433 F.3d at 895.

When ruling on a motion for summary judgment, "the evidence is to be viewed in the light most favorable to the nonmoving party and the court must draw all reasonable inferences in favor of the nonmoving party." *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011) (citations omitted). But "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Liberty Lobby*, 477 U.S. at 248.

Although dismissal is warranted under both Rule 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim, this Court may also rule in the alternative for summary judgment, if the Court must resort to undisputed facts outside the four corners of the complaint. *See Proctor v. District of Columbia*, 74 F. Supp. 3d 436, 448 (D.D.C. 2014). A party may move for summary judgment at any time, from the pre-discovery stage until 30 days after the close of discovery, unless a local rule or court order provides otherwise. Fed. R. Civ. P. 56(b).

## IV. ARGUMENT

Because Plaintiff's removal was an adverse action governed by the CSRA, this Court lacks jurisdiction to hear it. Moreover, because Plaintiff was an at-will federal employee, subject to removal by Senator Reed, he fails to state a claim. Likewise, because Plaintiff was a reemployed annuitant, who therefore served "at the will of the appointing authority," his complaint is subject to dismissal on summary judgment. *See* 5 U.S.C. § 3323(b)(1).

### A. <u>This Court lacks subject matter jurisdiction, as Plaintiff's suit is precluded by the CSRA</u>

As a federal employee in the excepted service, Plaintiff's challenge to his termination is subject to dismissal on jurisdictional grounds because it is precluded by the CSRA.

1. __Commission Members are federal employees in the excepted service__

Plaintiff states that he was an "employee." Second Am. Compl. ¶ 33. He is correct. It is beyond dispute that the NDAA, which created the Commission, deems "members of the Commission" to be "employees." *See* NDAA, § 1087(b)(7).

Having established that Plaintiff was a federal employee, the next question is what *type* of employee. Here, again, the NDAA supplies the answer: members of the Commission are federal employees in the excepted service. Specifically, the Commission is "a temporary organization under section 3161 of [title 5]." NDAA § 1087(a)(1). Employees of temporary organizations "are in the excepted service of the civil service." 5 U.S.C. § 3161(b)(3); *see also* 5 U.S.C. § 2103 (stating that any civil service position that is not in the competitive service or senior executive service is, by default, in the excepted service).

As such, during his time on the Commission, Plaintiff served as a federal employee in the excepted service.

## 2. __Plaintiff is required to seek relief under the CSRA__

Plaintiff's complaint is no different than any other federal employee who demands review of the propriety of his termination. Therefore, as a federal employee in the excepted service, Plaintiff is precluded by the CSRA from challenging his dismissal before this Court.

The CSRA provides "a comprehensive system for reviewing personnel action taken against federal employees." *United States v. Fausto*, 484 U.S. 439, 455 (1988). "The CSRA protects covered federal employees against a broad range of personnel practices, and it supplies a variety of causes of action and remedies to employees when their rights under the statute are violated." *Grosdidier v. Chairman*, *Broadcasting Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009). In short, the CSRA "prescribes in great detail the protections and remedies

applicable to [adverse employment] action[s], including the availability of administrative and judicial review." *Fausto*, 484 U.S. at 443.

As this Circuit has made clear, the path for review through the CSRA is "*exclusive*: It constitutes *the* remedial regime for federal employment and personnel complaints." *Nyunt v. Chairman, Broadcasting Bd. of Governors*, 589 F.3d 445, 448 (D.C. Cir. 2009) (first emphasis added) (citations omitted). "Given the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court." *Elgin v. Department of the Treasury*, 567 U.S. 1, 11-12 (2012).

Furthermore, it is well settled that CSRA preclusion applies to constitutional claims. In *Elgin*, the plaintiff argued that he was not subject to the CSRA because his claim involved a constitutional issue that was not covered by the CSRA. 567 U.S. at 12-13. The Supreme Court rejected this argument, explaining the "[t]he purpose of the CSRA . . . supports our conclusion that the statutory review scheme is exclusive, *even for employees who bring constitutional challenges to federal statutes*." *Id.* at 13 (emphasis added); *see also deLeon v. Wilkie*, 2020 U.S. Dist. LEXIS 5908, *8-12 (D.D.C. 2020) ("Plaintiff, moreover, cannot escape this requirement by characterizing his disputes as constitutional.").

Thus, like all other federal employees, Plaintiff must seek review of his termination at the MSPB unless some separate, express statutory remedy is provided.[2] *See, e.g.*, 5 U.S.C. §§ 7512, 7513(d); *see also AFGE v. Secretary of the Air Force*, 841 F. Supp. 2d 233, 237 (D.D.C. 2012)

---

[2] It is Plaintiff's burden to inform the Court of the relevant facts establishing jurisdiction. Accordingly, it is Plaintiff's burden to allege what type of employee he was and what status he had under the CSRA. Of course, as explained *infra* in Section IV.F, Plaintiff is a reemployed annuitant, and such employees are categorically excluded from certain CSRA protections. *See* 5 U.S.C. § 7511(b)(4). As an annuitant, Plaintiff has no remedy under the CSRA or at this Court.

("When Congress intends to preserve remedies for federal employees outside the CSRA, it does so expressly.") (citation and internal quotation marks omitted); *Steadman v. Governor*, 918 F.2d 963, 967 (D.C. Cir. 1990).  And, if the MSPB rules against him, he may then seek judicial review in the Federal Circuit.  *See* 5 U.S.C. § 7703(a)(1), (b)(1); 28 U.S.C. § 1295(a)(9).

Plaintiff may complain that the CSRA provides no remedy to persons in his position. The Supreme Court, however, has made clear that CSRA preclusion applies even where the CSRA would provide no relief.  *See Elgin*, 567 U.S. at 10-15; *Fausto*, 484 U.S. at 447, 455. And, as this Circuit has "repeatedly said, 'what you get under the CSRA is what you get.'" *Nyunt*, 589 F.3d at 449 (quoting *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1010 (D.C. Cir. 2009)); *see also Grosdidier*, 560 F.3d at 497 ("[T]he CSRA is the exclusive avenue for suit even if the plaintiff cannot prevail in a claim under the CSRA."); *Sagar v. Lew*, 211 F. Supp. 3d 262, 268 (D.D.C. 2016) (acknowledging that "relief may not have been available" under the CSRA, but "this fact does not affect the Court's analysis.").

In sum, even if the CSRA provides no remedy, that does not alter Congress' choice to make the CSRA the exclusive means of judicial review for employee terminations.  "[T]he fact that [plaintiff] may not pursue a claim through the CSRA does not mean that [he] has access to the courts.  Rather, it means that [he] may not raise the claim at all."  *AFGE v. Sec'y of the Air Force*, 716 F.3d 633, 638 (D.C. Cir. 2013).  Accordingly, this Court lacks subject matter jurisdiction over Plaintiff's claims.

### 3. The APA does not save Plaintiff's complaint

Plaintiff also asserts that "Dr. Mapes's removal from the Commission was unlawful agency action under the Administrative Procedure Act."  Second Am. Compl. ¶ 50 (Count IV). This claim runs into the same barrier.  This Circuit has "long held that federal employees may

not use the [APA] to challenge agency employment actions." *Filebark*, 555 F.3d at 1010 (citations omitted). More specifically, this Circuit "has consistently held that the [CSRA] preempts personnel challenges brought under the APA." *Mahoney v. Donovan*, 824 F. Supp. 2d 49, 64 (D.D.C. 2011) (citations omitted). Again, put most simply, "what you get under the CSRA is what you get." *Nyunt*, 589 F.3d at 449 (citation omitted). Thus, although Plaintiff amended his complaint to add an APA claim, the end result is the same: he has not met his burden of establishing jurisdiction, and this Court should dismiss his complaint.

### 4. *Leedom's* "Hail Mary" does not save Plaintiff's complaint

Finally, Plaintiff cites *Leedom v. Kyne*, 358 U.S. 184 (1958), for the proposition that it "provides jurisdiction for constitutional claims that are not otherwise redressable." Second Am. Compl. ¶ 3. This Circuit, however, has stated that "a *Leedom v. Kyne* claim is essentially a Hail Mary pass – and in court as in football, the attempt rarely succeeds." *Nyunt*, 589 F.3d at 449. For example, the *Leedom* exception only applies where "the agency plainly acts 'in excess of its delegated powers and contrary to a specific prohibition in the' statute that is 'clear and mandatory.'" *Id.* (quoting *Leedom*, 358 U.S. at 188). Here, as Plaintiff admits, the NDAA is silent on the removal of a commissioner. Second Am. Compl. ¶¶ 27, 28. Therefore, as there is no specific, clear, mandatory prohibition that the Commission violated, Plaintiff has not pled facts establishing jurisdiction under *Leedom*.

In sum, Plaintiff's complaint is subject to the CSRA's exclusive remedial scheme for obtaining judicial review of his removal from this Court. Accordingly, this Court lacks subject matter jurisdiction over Plaintiff's claims.[3]

---

[3] Even if this Court reaches Plaintiff's constitutional claims, they should be dismissed pursuant to Rule 12(b)(6) or summary judgment. *See infra* Sections IV.C-G.

### B. __Plaintiff's removal did not violate NDAA § 1087__

Plaintiff seeks reinstatement to his position on the Commission, claiming he was "illegally removed" under the NDAA.  Second Am. Compl. ¶¶ 1, 8, 26-28 (Count I).  He was not.  As Plaintiff served at the will of Senator Reed, his removal was lawful, and this Court should dismiss his claim pursuant to Rule 12(b)(6).

### 1. __Plaintiff's claim that he cannot be removed – by anyone – ever – is wrong__

According to Plaintiff, because the NDAA is silent on the removal of commissioners, he cannot be removed from office, by anyone, ever: "The mere silence on removal authority does not imply there is an authority to remove a Commissioner under the Act."  Second Am. Compl. at ¶ 28.  This is incorrect.  Absent statutory guidance, an appointing officer may remove an appointee.

"It has become a settled principle that government employment, in the absence of legislation, can be revoked at the will of the appointing officer."  *Cafeteria & Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 896 (1961) (citations omitted); *see also Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 509 (2010) ("Under the traditional default rule, removal is incident to the power of appointment."); *Carlucci v. Doe*, 488 U.S. 93, 99 (1988) ("[A]bsent a specific provision to the contrary, the power of removal from office is incident to the power of appointment.") (citations and internal quotation marks omitted); *Parsons v. United States*, 167 U.S. 324, 331 (1897) ("In the absence of all constitutional provision, or statutory regulation, it would seem to be a sound and necessary rule to consider the power of removal as incident to the power of appointment.") (quoting *Ex parte Hennen*, 38 U.S. 230, 259 (1839)); *Kalaris v. Donovan*, 697 F.2d 376, 389 (D.C. Cir. 1983)

(explaining that "in the face of statutory silence," the general rule that "the power of removal presumptively is incident to the power of appointment" controls).

This case follows the general rule.  Given the power to appoint one of Congress' four slots on the Commission, Senator Reed also held the power to remove this appointee.  The NDAA expresses no contrary limitation, neither by its express terms, nor its legislative history.  As such, the powerful presumption in favor of an unfettered power to remove applies.

### 2. *Wiener* is both distinguishable and insufficient to support Plaintiff's claim

To support his bold proposition, Plaintiff, an *employee*, cites a single case involving an *officer* of the United States: *Wiener v. United States*, 357 U.S. 349 (1958).  Second Am. Compl. ¶¶ 27-28.  Such a comparison is constitutionally inapt.

Indeed, as Plaintiff was appointed by Senator Reed, he *cannot* be an officer of the United States.  The Constitution prohibits members of Congress from appointing "Officers" of the United States.  *See* U.S. Const. art. II, § 2, cl. 2 (stating that only the President, a court of law, or a head of department can appoint officers); *Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018) ("The Appointments Clause prescribes the exclusive means of appointing 'Officers.'").  This, by itself, is a critical distinction.  An analysis regarding the removal of officers is wholly inapplicable to whether Plaintiff, a federal employee, can be terminated from the Commission.  Plaintiff's case is instead governed by the statutes, authorities, and precedent related to federal employees.

However, even apart from the officer/employee distinction, *Wiener* is readily distinguishable on additional grounds.  For example, in finding an implied limitation on the President's removal power for members of the War Claims Commission, the *Wiener* Court relied on several factors not present here.  357 U.S. at 353-56.

First, the Court focused on "the most reliable factor for drawing an inference regarding the President's power of removal," namely, "the nature of the function that Congress vested in the [Commission]." *Id.* at 353. In its analysis, the Court explained that the War Claims Commission was a quasi-judicial body exercising a mix of executive and judicial functions, and thus needed to be "entirely free from the control or coercive influence, direct or indirect, of either the Executive or the Congress." *Id.* at 354-56 (internal quotations and citations omitted). Here, the Commission performs no similar functions. Instead, the Commission is a study commission tasked with writing a non-binding report to the President and congressional defense committees. *See* NDAA, § 1087(h)(2). The concerns that supported restrictions on the removal power in *Wiener* are simply absent here.

Second, the *Wiener* Court heavily relied on the legislative history of the relevant statute to infer a limitation on removal power. *Id.* at 354-55. At one point, the Court even wrote "[t]he history of this legislation *emphatically* underlines" the intent of Congress regarding the War Claims Commission. *Id.* at 354 (emphasis added). In this case, there is no such legislative history – emphatic or otherwise – and Plaintiff points to none.

Third, the *Wiener* Court examined whether Congress intended to bind the President (*i.e.*, the lone removal authority), despite its statutory silence. *Id.* at 353-56. In this case, several members of Congress themselves are removal authorities. Under such circumstances, and "in the face of statutory silence," Senator Reed had the authority to remove Plaintiff at his discretion. *Kalaris*, 697 F.2d at 389. To find otherwise would invert the long-standing rule that the power to appoint is the power to remove, and impose a limitation on Members of Congress that Congress itself never clearly intended, with silence, to convey.

Each of these points stand alone; but collectively they spotlight a more fundamental point about *Wiener's* insufficiency in supporting Plaintiff's claim. While the statute at issue in *Wiener* defined each commissioner's tenure through "the limit on the Commission's life," *id*. at 350, this language was barely a factor in the Court's analysis.[4]

If such language was insufficient to establish a removal limitation in *Wiener*, then Plaintiff cannot rely on that language here. Rather, as in *Wiener*, Plaintiff must point to affirmative and emphatic demonstrations that Congress intended to limit the removal authority of the appointing officials. Any other result would collapse the analytical weight of the Court's decision into irrelevancy.

And yet, in seeking to make such a demonstration, Plaintiff can only point to a single clause that restricted the *initial* appointment authority after 90 days. Second Am. Compl. ¶ 28. This is clearly insufficient. The NDAA specifically provides that the appointment power continues and specifically provides that "[a]ny vacancy in the Commission shall not affect its powers but *shall be filled in the same manner as the original appointment*." NDAA, § 1087(b)(5) (emphasis added). Plaintiff himself argued to this Court that the appointment power is not extinguished. Indeed, Plaintiff filed motions for a preliminary injunction and a temporary

---

[4] This is hardly surprising. A reference to appointment for life of the Commission does not establish a limit on removal, but merely establishes that an appointee may serve to the conclusion of the Commission without reappointment, unless removed. *See, e.g.*, *Parsons*, 167 U.S. at 338-43 (finding no limit on President's removal power of U.S. Attorney despite four-year statutory term); *Myers v. United States*, 272 U.S. 52 (1926) (finding President had power to remove postmaster, who was appointed for four-year term, at his discretion); *see also Removal of Members of the Comm'n on Federal Laws for the Northern Mariana Islands*, 7 Op. O.L.C. 95, 100 n.7 (1983) (noting that a term of office is not a limit on removal but is "interpreted as providing a limit on the period for which an appointee can serve without reappointment"); *Applicability of 18 U.S.C. § 208 to National Gambling Impact Study Comm'n*, 23 Op. O.L.C. 29, 35-38 (1999) ("Nothing in the Act creating the [National Gambling Impact Study] Commission states or implies that Commissioners are to enjoy any form of tenure protection;" finding no removal protection for members appointed by President and Congress "for the life of the commission" in Pub. L. No. 104-169, § 3(b)(1) (1996)).

restraining order to prevent Senator Reed from using his continuing appointment power to fill the vacancy caused by Plaintiff's removal.  ECF Nos. 2, 3.  Rather than creating a removal limitation, the NDAA *retained* appointment powers for the authorities who made their original appointments.  Read in context, Plaintiff's reliance on this clause is misplaced.

Lastly, *Wiener* is distinguishable for at least three additional reasons.  First, *Wiener* must be read in light of the more recent Supreme Court guidance.  *See supra* at 13-14 (citing *Cafeteria Workers*, 367 U.S. at 896; *Free Enterprise Fund*, 561 U.S. at 509; *Carlucci*, 488 U.S. at 99).  Second, as *Wiener* recognized, the question of Congress's power to control the President's removal authority is long-standing: "[f]ew contests between Congress and the President have so recurringly had the attention of Congress as that pertaining to the power of removal."  357 U.S. at 353.  However, in this case, the legislative and executive branches are in harmony, as President Trump concurred with Senator Reed's decision.  Exhibit E of Enclosure 1 to Def. Chairman Cody's MTD, ECF No. 13-1.  In other words, *both* political branches agreed that Plaintiff should be removed from the Commission.[5]

Finally, even on its face, *Wiener* does not support Plaintiff's contention that he could not be removed from the Commission.  *See* Second Am. Compl. ¶¶ 26-28.  In *Wiener*, the Court did not find that the President could not remove members of the War Claims Commission.  357 U.S. at 356.  Instead, the Court found the President could not remove them "for no reason other than that he preferred to have on that Commission men of his own choosing."  *Id*.  In other words, the *Wiener* Court found an implied removal *limitation*, not a removal *prohibition*.  The Court even noted, "We have not a removal for cause involving the rectitude of a member."  *Id*.

_____

[5] In *Morrison v. Olson*, Justice Scalia noted that certain cases are tussles for power between the political branches, and they come to the Court as a wolf dressed in sheep's clothing.  487 U.S. 654, 697-99 (1988) (Scalia, J., dissenting).  This case, however, is *not* a case where the judiciary is being asked to resolve such a dispute.  This sheep comes as a sheep.

Here, Plaintiff badly misconstrues *Wiener* by asserting that he could not be removed from the Commission by anyone, ever.  *See* Second Am. Compl. ¶¶ 26-28.  This bold claim is not supported by the statute, long-standing precedent, or even the practical consideration that the power to remove must reside somewhere.  *See, e.g.*, *Parsons*, 167 U.S. at 343 (interpreting a statute "as granting an unconditional and absolute term" of office, not subject to removal by the appointing authority under any circumstances, "could never have been the intention of Congress"); *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320, 1332 n.3 (Fed. Cir. 2019) ("To be sure, *someone* must have the power to remove . . .") (emphasis in original).

In sum, Plaintiff identifies nothing in the NDAA that supports departing from the long-standing rule that the power to appoint includes the power to remove, and his citation to *Wiener* is both distinguishable and insufficient.  This Court should dismiss this claim.

C. **Plaintiff's removal does not violate the separation of powers doctrine**

Plaintiff next cites two cases for the proposition that his removal violated separation of powers: *Bowsher v. Synar*, 478 U.S. 714 (1986), and *PHH Corp v. Consumer Financial Protection Bureau*, 881 F.3d 75 (D.C. Cir. 2018).  Second Am. Compl. ¶¶ 34-36 (Count II).  Plaintiff misinterprets these cases and fails to grasp the broader and adverse implications of his argument.  Simply put, if Plaintiff's removal *did* violate separation of powers, then his appointment did as well.  Therefore, even if Plaintiff is correct regarding separation of powers (and he is not), the remedy for an unlawful appointment is not reinstatement.

1. ***Bowsher* does not support Plaintiff's claim**

Contrary to Plaintiff's contentions, *Bowsher* does not demonstrate that his removal violated separation of powers, particularly when overlaid against *Buckley v. Valeo*, 424 U.S. 1

(1976).  As outlined below, these two cases stand for the straightforward proposition that Congress may not appoint or remove an *officer* exercising *executive power*.

More specifically, in *Bowsher*, the Court concluded that "Congress cannot reserve for itself the power of removal *of an officer charged with the execution of the laws* except by impeachment."  478 U.S. at 726 (emphasis added).  Essentially, Congress may not grant itself removal power over an officer "entrusted with executive powers."  *Id*. at 732.  After concluding the Comptroller General was an officer who exercised such powers, the Court found that any attempt by Congress to retain removal authority represented an impermissible "intrusion" into executive functions.  *Id*. at 734.

*Buckley* serves as the opposite bookend to *Bowsher*.  While *Bowsher* focused on *removal*, *Buckley* focused on *appointment*, addressing, in part, whether Congress could appoint members of the Federal Election Commission.  424 U.S. at 124-137.  After concluding that Federal Election Commissioners are "officers" whose appointments by Congress violated the Appointments Clause, the Court considered "which, if any, of [the Commission's] powers" could be exercised.  *Id*. at 137-141.

The Court concluded that because some of the Commission's powers were "essentially of an investigative and informative nature, falling in the same general category as those powers which Congress might delegate to one of its own committees, there can be no question that the Commission as presently constituted may exercise them."  *Id*. at 137.  Put differently, such appointees could "perform duties only in aid of those functions that Congress may carry out by itself, or in an area sufficiently removed from the administration and enforcement of the public law as to permit their being performed by persons not 'Officers of the United States.'"  *Id*. at 139.

In other words, resolving a separation of powers question turns on what *powers* the commissioners exercised, not the branch to which they were titularly assigned. *See Bowsher*, 478 U.S. at 726-34; cf. *Dep't of Transportation v. Ass'n of American Railroads*, 575 U.S. 43, 51 (2015) ("Congressional pronouncements . . . are not dispositive of [an entity]'s status as a governmental entity for purposes of separation of powers analysis under the Constitution.").

This interpretation is supported by the Court's observations in *Mistretta v. United States*, 488 U.S. 361, 411 n.35 (1989). The Court noted that "[n]othing in *Bowsher* . . . suggests that one Branch may never exercise removal power, however limited, over members of another Branch." *Id*. The Court also explained its "paramount concern in *Bowsher*" involved Congress "accreting to itself the power to control the functions of another Branch." *Id*. "To permit Congress to remove an officer performing executive functions . . . would, in essence, give Congress veto power over executive action." *Id*.

Such concerns are absent here. The Commission is a study commission tasked with writing an advisory report to the President and congressional defense committees. *See* NDAA, § 1087(h)(2). The Commission may not issue regulations, execute laws, or hear cases. The Commission's report, given to two branches, does not raise concerns of "encroachment or aggrandizement of one branch at the expense of the other," nor pose the risk of "congressional usurpation." *Buckley*, 424 U.S. at 122; *Bowsher*, 478 U.S. at 727. If anything, the NDAA adopts the functions approved in *Buckley*. The Commission's tasks are "investigative and informative" and "sufficiently removed from the administration and enforcement of the public law as to permit their being performed by persons not 'Officers of the United States.'" *Buckley*, 424 U.S. at 137, 139.

23

Moreover, Plaintiff concedes that he is an employee and not an officer of the United States.  Second Am. Compl. ¶ 33.  Consequently, the concerns identified in *Bowsher* and *Buckley* are even further removed from this case.  For *Bowsher* to apply, as Plaintiff claims, he would have needed to be an officer wielding executive power.  But, if Plaintiff did exercise executive power such that his removal violated *Bowsher*, he could not have been lawfully appointed by Senator Reed under *Buckley*.  However, instead of creating such constitutional issues, the NDAA clearly *avoided* them by limiting the functions of the Commissioners to being "investigative and informative."  *Buckley*, 424 U.S. at 137.

In sum, there can be no violation of separation of powers where, as here, the Commission is a study commission that wields no power, and certainly wields none of the powers exclusively vested in officers of the Executive Branch.

## 2. *PHH Corp* does not support Plaintiff's claim

*PHH Corp* is similarly unhelpful to Plaintiff's claim.  Notably, the Supreme Court recently overruled *PHH Corp* in *Seila Law LLC v. Consumer Financial Protection Bureau*, No. 19-7, 2020 U.S. LEXIS 3515 (2020).  Furthermore, as Plaintiff acknowledges, *PHH Corp* involved an express for-cause limitation on the President's removal of an officer.  Second Am. Compl. ¶ 35.  Here, by contrast, the NDAA is silent regarding removals, and Plaintiff has conceded that he was an employee.  *Id.* ¶ 33.

In sum, neither *Bowsher* nor *PHH Corp* supports Plaintiff's conclusory and sweeping assertion that his removal by Senator Reed violated separation of powers.  *See also* Defendant Senator Reed's Motion to Dismiss Plaintiff's Second Amended Complaint, ECF No. __, at Section II.B.  And if Plaintiff's removal *did* somehow violate separation of powers, then his appointment did as well, and the remedy for an unconstitutional appointment is not

reinstatement.  Under no scenario is Plaintiff entitled to relief, and this Court should dismiss his claim pursuant to Rule 12(b)(6).[6]

### D. **Plaintiff's removal did not violate due process**

Plaintiff next asserts that his removal violated his "rights under the Fourteenth Amendment's Due Process Clause."  Second Am. Compl. ¶ 44 (Count III).  It did not.

As an initial matter, Plaintiff's pleading is fatally flawed, as he cannot state a claim under the Fourteenth Amendment.  "[B]y its terms, the Fourteenth Amendment applies only to the States; it does not apply to the Federal Government or the District of Columbia."  *Powers-Bunce v. District of Columbia*, 479 F. Supp. 2d 146, 153 (D.D.C. 2007).  However, even assuming this Court infers that Plaintiff intended to plead a claim under the Fifth Amendment, it still fails.

To assess the sufficiency of a procedural due process claim, "this Court must apply a familiar two-part inquiry: it must determine whether the facts alleged, if true, would establish (1) that plaintiffs were deprived of a protected interest, and, if so, (2) that they failed to receive[] the process they were due."  *Eagle Trust Fund v. United States Postal Serv.,* 365 F. Supp. 3d 57, 69 (D.D.C. 2019) (citations and internal quotation marks omitted) (alteration in original).  Here, Plaintiff fails the first prong, and failed to properly plead the second.

### 1. **Plaintiff had no property interest in his continued employment**

In this Circuit, at-will employees have no property interest in their continued employment:

> Most cases involving government employees fall into one of two categories: terminable at will or terminable only for cause.  Those who are terminable at will have no property interest because there is

---

[6] One final, practical matter:  Even assuming that Senator Reed could lawfully appoint Plaintiff but then not remove him, the removal authority must reside somewhere.  To this extent, President Trump's concurrence in the decision to remove Plaintiff would render any infirmity in the removal harmless.  Exhibit E of Enclosure 1 to Def. Chairman Cody's MTD, ECF No. 13-1.

> no objective basis for believing that they will continue to be
> employed indefinitely.

*Hall v. Ford*, 856 F.2d 255, 265 (D.C. Cir. 1988).

Here, Plaintiff was terminable at will pursuant to two separate statutes. *See* Section IV.B, *supra* (establishing that Plaintiff was terminable at will under the NDAA); Section IV.F, *infra* (establishing that Plaintiff was terminable at will due to his status as a reemployed annuitant). Thus, based on his status, Plaintiff had no property interest in his employment.

### 2. **Plaintiff fails to allege sufficient facts to support his claim**

Even assuming that Plaintiff had a property interest in his employment, he has not alleged sufficient facts to support his claim. As this Court recently stated, "The Court need not accept as true, then, a legal conclusion couched as a factual allegation nor an inference unsupported by the facts set forth in the Complaint." *Hudson v. AFGE*, 2020 U.S. Dist. LEXIS 99028, *9 (D.D.C. 2020) (citations and internal quotation marks omitted).

In his complaint, Plaintiff merely pled that he received "no form of a hearing" and no "opportunity to plead his case or refute the allegations made against him before his protected property interest in his employment was stripped from him." Second Am. Compl. ¶ 43. These are legal conclusions dressed up as factual allegations. Plaintiff's complaint fails to address the circumstances that preceded his removal, even as framed by its incorporated documents.[7]

According to the complaint, in November 2019, the Commission received letters from the Army and Air Force that complained about Plaintiff's conduct. Second Am. Compl. ¶¶ 20-21.

---

[7] Plaintiff's amended complaint incorporates three documents: (1) the letter from by the Air Force Chief of Safety on November 19, 2019; (2) the email from the Director of Army Safety on November 20, 2019; and (3) the letter from Senator Reed on January 7, 2020. Second Am. Compl. ¶¶ 20-21, 23. As these documents are referenced in Plaintiff's complaint, they may properly be considered by this Court under a Rule 12(b)(6) motion. *See, e.g.*, *Ashbourne*, 245 F. Supp. 3d at 103.

The next relevant allegation is that Senator Reed signed a letter removing Plaintiff from the Commission on January 7, 2020.  *Id*. ¶ 23.  Missing from the complaint is any explanation of what happened between the receipt of the letters in November and Plaintiff's removal in January.

Notably, Senator Reed's letter explained that he was accepting the recommendation of the Commission that Plaintiff be removed.  Exhibit D of Enclosure 1 to Def. Chairman Cody's MTD, ECF No. 13-1.  The complaint, however, is starkly silent on the procedural steps taken prior to the Commission's recommendation for removal.  Plaintiff does not plead whether he was present when this recommendation was made, whether he voted on the recommendation, or whether he was allowed to be heard before the recommendation was adopted.  These omissions leave the limited language of the complaint as "nothing more than a legal conclusion couched as a factual allegation."  *Kenley v. District of Columbia*, 83 F. Supp. 3d 20, 35 (D.D.C. 2015) (citations and internal quotation marks omitted).

In sum, this Court should dismiss Plaintiff's claim of a procedural due process violation under Rule 12(b)(6) because: (1) Plaintiff has no property interest in his continued employment, and (2) Plaintiff failed to plead sufficient facts to support a lack of process.

**E.  This case presents a non-justiciable political question**

In addition to all of the other powerful reasons for dismissing Plaintiff's complaint, the Court should also do so because requested relief presents a non-justiciable political question.

Under the political question doctrine, "courts lack jurisdiction over political decisions that are by their nature committed to the political branches to the exclusion of the judiciary." *Bancoult v. McNamara*, 445 F.3d 427, 432 (D.C. Cir. 2006) (citations and internal quotation marks omitted); *see also Baker v. Carr*, 369 U.S. 186, 217 (1962) (establishing six factors as indicating the presence of a political question).  For example, due to the discretionary nature of

appointments, the Supreme Court has declined to resolve certain disputes concerning appointment and removal powers. *See Orloff v. Willoughby*, 345 U.S. 83, 90 (1953) (finding that it would be an intolerable intrusion for the judiciary to order the commission of a military officer); *see also Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989).

In *Jefferson v. Harris*, this Court faced a related issue when a political appointee was removed from office and claimed that he was deprived of due process when the government allegedly made statements tarnishing his reputation. 170 F. Supp. 3d 194 (D.D.C. 2016). While Jefferson sought both damages and equitable relief, this Court was able to avoid the political question doctrine because Jefferson did not seek reinstatement:

> Were Jefferson simply complaining of his separation in the form of a wrongful-termination suit and seeking reinstatement as a remedy, Defendants' position would merit greater analysis, as it would be plain that he desired judicial review of DOL's political decision to remove a Presidential appointee. That is not the case here, where Plaintiff instead demands an opportunity to clear his name.

*Id.* at 210 (internal citation omitted).

Here, in contrast to *Jefferson*, Plaintiff asks this Court to: (1) "hold unlawful and set aside Defendant Reed's removal of [Plaintiff];" (2) hold that Plaintiff "immediately have returned to him all powers;" and (3) order that "the Defendants be enjoined from attempting to terminate [Plaintiff] in the future." Second Am. Compl. ¶ 8; Prayer for Relief.

These are extraordinary demands. Plaintiff essentially seeks reinstatement of a political appointment and injunctive relief to enforce his belief that he cannot be removed by anyone, ever. The authority to appoint and remove political appointees is clearly vested in the political branches, and Plaintiff's requested relief presents a non-justiciable question that this Court should avoid.

**F. As a reemployed annuitant, Plaintiff served at the will of Senator Reed**

This Court should also grant summary judgment due to Plaintiff's status as a reemployed annuitant under 5 U.S.C. § 3323(b)(1).  *See* Exhibits F, G, H, I, J, L of Enclosure 1 to Def. Chairman Cody's MTD, ECF No. 13-1.

The plain language of § 3323(b)(1) could not be any clearer: reemployed annuitants, with one inapplicable exception related to administrative law judges, serve "at the will of the appointing authority."  Indeed, in analyzing this language, the Federal Circuit has repeatedly explained that reemployed annuitants are removable at will.  *See, e.g.*, *Vesser v. Office of Personnel Management*, 29 F.3d 600, 604 (Fed. Cir. 1994); *Delalat v. Dep't of the Air Force*, 557 F.3d 1342, 1345 (Fed. Cir. 2009); *Terrill v. Merit Sys. Prot. Bd.*, 610 Fed. Appx. 982, 983-84 (Fed. Cir. 2015) (per curiam).  This conclusion accounts for the "plain words of the statute" and covers all employees who continue to receive an annuity upon reemployment.  *Terrill*, 610 Fed. Appx. at 983-84.

Here, Plaintiff has twice conceded his status as a reemployed annuitant.  *See* Plaintiff's Reply to Defendant Cody's Opposition to Summary Judgment, ECF No. 26, at 14 ("Dr. Mapes concedes that he is a reemployed annuitant under [5 U.S.C. § 3323(b)(1)]."); Plaintiff's Cross Motion for Summary Judgment, ECF No. 19, at 3.  Based on his acknowledged status and continued receipt of an annuity upon reemployment, Plaintiff cannot avoid the statute's "explicit[] and unambiguous[]" effects.  *Vesser*, 29 F.3d at 604; Exhibits F, G, H, I, J, L of Enclosure 1 to Def. Chairman Cody's MTD, ECF No. 13-1.

In sum, to the extent this Court finds that it has jurisdiction and that Plaintiff has stated a proper claim, this Court should grant summary judgment.  In this case, Plaintiff is exactly what OPM said he was: a "reemployed annuitant" who "serve[d] at the will of the appointing official,

per 5 U.S.C. 3323." Exhibit I of Enclosure 1 to Def. Chairman Cody's MTD, ECF No. 13-1. As such, his claims fail.

### G. Plaintiff's APA claim does nothing more than restate his other flawed claims

Plaintiff's final claim is that his removal from the Commission was "unlawful agency action" in violation of § 706 of the APA. Second Am. Compl. ¶ 50 (Count IV). This claim fails for two separate reasons. First, Plaintiff's complaint fails to allege any agency actions. Plaintiff's claim that "Dr. Mapes's removal from the Commission was unlawful agency action under the [APA], and [he] has suffered a legal wrong and has been adversely affected and aggrieved by said agency action" is a legal conclusion with no attempt to dress it up as a factual allegation. *Id.* at ¶ 50. Second, upon review, this claim is nothing more than a vehicle for restating Plaintiff's other claims related to the NDAA, separation of powers, and due process clause. *Id.* ¶¶ 47-49. The multiple infirmities of these claims were addressed in previous sections. *See supra*, Sections IV.B-F. Thus, as Plaintiff's APA claim solely relies on other failing claims, it similarly fails.[8]

### H. Plaintiff's pay claim should be dismissed

Plaintiff also "requests that this Court order payment for Commission work he performed after January 7, 2020." Second Am. Compl. at Prayer for Relief. Even without all of the other infirmities identified, Plaintiff's pay claim is not a proper cause of action.

It is beyond dispute that "suits for damages against the United States under . . . the Constitution are barred by sovereign immunity." *Benoit v. USDA*, 608 F.3d 17, 20 (D.C. Cir. 2010). Notably, sovereign immunity protects not only federal government agencies, but also

---

[8] Nor does this APA claim allow Plaintiff to avoid CSRA preclusion. *See supra*, Section IV.A.3.

government employees sued in their official capacity.  *See Henry v. Bureau of Prisons*, 2006 U.S. Dist. LEXIS 3108, at *2 (D.D.C. 2006).

Outside the CSRA, the United States has not waived sovereign immunity for this type of employment-related pay claim.  *See Coulibaly v. Kerry*, 130 F. Supp. 3d 140, 146 (D.D.C. 2015). While the Little Tucker Act provides jurisdiction over small claims, "a plaintiff must identify a separate source of substantive law that creates the right to money damages."  *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (citations omitted).  Plaintiff has not done so, as "the APA's waiver of sovereign immunity does not reach claims for back pay."  *Gore v. Wilkie*, 2020 U.S. Dist. LEXIS 94792, *14 (D.D.C. 2020) (citations omitted).

However, even if Plaintiff *did* state a valid cause of action, his requested amount exceeds this Court's jurisdiction.  *See* Exhibit K of Enclosure 1 to Def. Chairman Cody's MTD, ECF No. 13-1; 28 U.S.C. § 1346(a)(2); *Palacios v. Spencer*, 906 F.3d. 124, 126-27 (D.C. Cir. 2018) (the Court of Federal Claims has "exclusive jurisdiction" over back pay claims exceeding $10,000).[9]

## V. CONCLUSION

For the reasons set forth, this Court should dismiss Plaintiff's Second Amended Complaint against Chairman Cody with prejudice.

---

[9] Plaintiff bases his entitlement to pay on a claim that he has continued working after his removal.  Second Am. Compl. at Prayer for Relief.  But nowhere in the complaint does Plaintiff plead facts stating that he continued to work after his removal.  While the Commission has submitted exhibits showing that Plaintiff intended to claim more than $10,000 and will exceed the jurisdiction of this Court, to the extent that it is relevant to anything this Court must decide, the Commission does not concede that Plaintiff has, in fact, been working.

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

Stefan R. Wolfe, General Counsel
Cody Cheek, Attorney
National Commission on Military
Aviation Safety
2900 Crystal Drive
Arlington, VA 22202

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

*Of Counsel*

*/s/   JohnMoustakas*
JOHN MOUSTAKAS, D.C. Bar #442076
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2518
john.moustakas@usdoj.gov

*Counsel for Chairman Richard Cody*