UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PETER B. MAPES,

    Plaintiff,

        v.

JACK REED,

    and

RICHARD CODY,

    Defendants.

Civil Action No. 20-223 (JEB)

## MEMORANDUM OPINION

In late 2018, United States Senator Jack Reed appointed Plaintiff Peter Mapes to the newly created National Commission on Military Aviation Safety. Upon a recommendation from the Air Force, the Senator removed Mapes from that position approximately fourteen months later. Plaintiff believes that his discharge was unlawful, and that, in firing him, Reed and Commission Chairman General Richard Cody violated both the statute establishing the Commission and the United States Constitution. Mapes thus brought this action against those two parties, asserting claims under that statute, the Administrative Procedure Act, and the Constitution. He asks this Court to reinstate him and order compensation for work he performed after being removed.

Defendants now move separately to dismiss Plaintiff's Second Amended Complaint on both procedural and substantive grounds. The Court agrees with them that it lacks subject-matter jurisdiction over Mapes's claims, which Congress required to be pursued through the exclusive

review scheme established by the Civil Service Reform Act, rather than in federal district court. The Court will therefore grant Defendants' Motions without considering their substantive points.

**I.      Background**

Two years ago, Congress established a "National Commission on Military Aviation Safety" as part of the John S. McCain National Defense Authorization Act for Fiscal Year 2019 (2019 NDAA).  See Pub. L. No. 115-232, § 1087, 132 Stat. 1636, 1992 (2018).  The Commission's purpose, evident from its title, was "to examine and make recommendations with respect to certain United States military aviation mishaps."  Id. § 1087(a)(2).  More specifically, Congress charged the Commission with "undertak[ing] a comprehensive study of United States military aviation mishaps that occurred between fiscal years 2013 and 2018."  Id. § 1087(h)(1). After completing this study, the Commission — which is classified as a "temporary," "independent establishment of the Federal Government," id. § 1087(a)(1) — was required to submit a "detailed" report to the President and to the Senate and House Armed Services Committees by March 1, 2020.  Id. § 1087(h)(2).  Congress later extended the deadline to December 1, 2020.  See National Defense Authorization Act for Fiscal Year 2020, Pub. L. No. 116-92, § 1738(a), 133 Stat. 1198, 1820 (2019).

This case concerns neither aviation nor the Commission's work product, but rather its membership.  The entity comprises eight people, four appointed by the President and one apiece by four different members of Congress, including one by the Ranking Member of the Senate Committee on Armed Services.  See 2019 NDAA § 1087(b)(1).  The Act specifically states that Commissioners are "deemed to be Federal employees" and are "appointed for the life of the Commission," id. § 1087(b)(5), (7), which ceases to exist ninety days after the submission of the required report.  Id. § 1087(k).  In his capacity as Ranking Member, Senator Reed appointed

Plaintiff to the Commission on November 13, 2018. See 164 Cong. Rec. S6929-03 (Nov. 13, 2018); see also ECF No. 29 (Second Amended Complaint), ¶ 13.

Mapes's tenure on this aviation-safety body was apparently turbulent. In late 2019, representatives from the Air Force sent the Commission's Chairman, General Richard Cody, several communications raising complaints about Plaintiff's behavior. See SAC, ¶¶ 20–21. Mapes suggests that these concerns arose because of his "suggestions with regard to ensuring that statistical data was reliable and properly analyzed," id., ¶ 19, and asserts that he and "various military services' [members] have been at odds over aviation safety issues for several years." Id., ¶ 22. Whatever the underlying facts — and the current Motion does not oblige the Court to inquire into them — the Air Force's account appears to have persuaded Reed. On January 7, 2020, he wrote to Plaintiff terminating his status as a Commissioner. See id., ¶ 23. In doing so, he explained that Mapes's service was "no longer compatible with the service of the other members of the Commission." Id., ¶ 24.

Not interested in a quiet departure, on January 28, 2020, Mapes filed this suit against Reed and Cody. See ECF No. 1 (Complaint). Both Defendants separately filed Motions to Dismiss, and Cody additionally moved for summary judgment. See ECF Nos. 12 & 13. Plaintiff opposed those Motions and cross-moved for summary judgment in his favor. See ECF Nos. 18 & 19. He then sought leave to amend his Complaint, which the Court granted. See Minute Order (06/24/2020). Mapes followed up with the now-operative Second Amended Complaint.

In that Complaint, Plaintiff insists that Defendants did not have the authority to fire him under the 2019 NDAA. He asserts a cause of action for relief on that theory under both the NDAA itself and the APA. See SAC, ¶¶ 25–28, 45–50. He also asserts that his removal both "violated the separation of powers" (on the theory that he was an executive-branch employee

3

removed by a legislator) and "violated his federal rights to due process." SAC, ¶¶ 37, 39. Plaintiff "requests that his removal be declared void, the Defendants be enjoined from attempting to terminate [him] in the future, and that he immediately have returned to him all powers incident to his position as Commissioner." Id., ¶ 8. He also seeks money damages in the form of payment for work he performed for the Commission after his removal on January 7, 2020, as well as attorney fees. Id. at 9.

Both Defendants have again separately moved to dismiss on several grounds (some overlapping, some not). See ECF Nos. 30 (Reed MTD) & 33 (Cody MTD).

## II.     Legal Standards

Defendants' Motions invoke the legal standards for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). As the Court does not venture beyond jurisdiction, it sets out only the former standard.

When a defendant brings a Rule 12(b)(1) motion to dismiss, the plaintiff must demonstrate that the Court indeed has subject-matter jurisdiction to hear his claims. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). "Absent subject matter jurisdiction over a case, the court must dismiss it." Bell v. U.S. Dep't of Health & Human Servs., 67 F. Supp. 3d 320, 322 (D.D.C. 2014). In policing its jurisdictional borders, a court must scrutinize the complaint, treating its factual allegations as true and granting the plaintiff the benefit of all reasonable inferences that can be derived from the alleged facts. See Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The court need not rely "on the complaint standing alone," Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992), however, but "may consider such materials outside the pleadings as it deems appropriate to resolve the question [of]

whether it has jurisdiction to hear the case." Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing cases).

## III. Analysis

While Defendants' respective Motions differ in several ways, both assert that the Court lacks subject-matter jurisdiction over Plaintiff's claims. As it must, the Court will therefore begin — and, as it happens, end — there. "Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." Jarkesy v. SEC, 803 F.3d 9, 15 (D.C. Cir. 2015) (quoting Bowles v. Russell, 551 U.S. 205, 212 (2007)). Where Congress has established a "special statutory review scheme," courts assume that it "'intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies.'" Id. (quoting City of Rochester v. Bond, 603 F.2d 927, 931 (D.C. Cir. 1979)). Defendants argue here that the Civil Service Reform Act of 1978 (CSRA) provides such a review scheme, precluding this Court from exercising jurisdiction over Plaintiff's claims. They are correct.

The CSRA "establishes a framework for evaluating personnel actions taken against federal employees." Kloeckner v. Solis, 568 U.S. 41, 44 (2012). Aiming to reform the "outdated patchwork of statutes and rules" governing federal personnel claims that had "built up over almost a century," Congress started afresh and created "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." Grosdidier v. Chairman, Broad. Bd. of Governors, 560 F.3d 495, 497 (D.C. Cir. 2009) (quoting United States v. Fausto, 484 U.S. 439, 444–45 (1988)). To that end, the CSRA "supplies a variety of causes of action and remedies to employees when their rights under the statute are violated." Id. As the Supreme Court has explained, "Given the painstaking detail with which

the CSRA sets out the method for covered employees to obtain review of adverse employment actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court." Elgin v. Dep't of Treasury, 567 U.S. 1, 11–12 (2012). Courts have thus consistently held that the CSRA review scheme is "exclusive," as the Act "constitutes the remedial regime for federal employment and personnel complaints." Nyunt v. Chairman, Broad. Bd. of Governors, 589 F.3d 445, 448 (D.C. Cir. 2009) (citing cases).

The question here, accordingly, is whether Mapes's claims regarding his removal from the National Commission on Military Aviation Safety are subject to the CSRA's exclusive review scheme. The statute creating the Commission specifies that its members are "Federal employees," 2019 NDAA § 1087(b)(7), and that it is a "temporary organization under section 3161 of [title 5]." Id. § 1087(a)(1). Per title 5, employees of temporary organizations "are in the excepted service of the civil service." 5 U.S.C. § 3161(b)(3). Plaintiff is thus "an individual in the excepted service" under Chapter 75 of the CSRA, which makes him an "employee" for purposes of that Chapter. See id. § 7511(a)(1)(C). And per that Chapter, "An employee against whom an action is taken under this section" (which includes a "removal," id. § 7512(1)) "is entitled to appeal [that action] to the Merit Systems Protection Board," id. § 7513(d), followed by further appeal to the Court of Appeals for the Federal Circuit. See id. § 7703. In sum, Plaintiff is an "[e]mployee[] entitled to review" under the CSRA's "comprehensive system" because he is a member of the "excepted service" and because he was subject to "removal." See Elgin, 567 U.S. at 5–6.

That resolves this case. As discussed above, the Supreme Court and D.C. Circuit have repeatedly held that an employee who has recourse to CSRA procedures is not permitted to "end-run" the Act by filing suit directly in federal court. Grosdidier, 560 F.3d at 497. That implied

preclusion of review encompasses both Plaintiff's statutory claims (under the APA and 2019 NDAA) and his constitutional claims, leaving this Court without jurisdiction to consider them. See Nyunt, 589 F.3d at 448–49 ("[E]xcept where Congress specifies otherwise, the Civil Service Reform Act is the proper statutory vehicle for covered federal employees to challenge personnel actions by their employers. Federal employees may not circumvent the [CSRA]'s requirements and limitations by resorting to the catchall APA to challenge agency employment actions.") (quoting Grosdidier, 560 F.3d at 495–97); Elgin, 567 U.S. at 12–13 (CSRA equally precludes district-court jurisdiction over constitutional challenges to covered employment actions).

Mapes's counterarguments fall short. He first posits that the CSRA "does not cover every adverse action against a federal employee." ECF No. 34 (Opp.) at 8 (quoting Worthington v. United States, 168 F.3d 24, 26 (Fed. Cir. 1999)); but see Nyunt, 589 F.3d at 448 n.1 (noting that D.C. Circuit and many other circuits disagree with Worthington). Even if that is so, the Act unambiguously covers a "removal," which is the action forming the basis of Plaintiff's claims in this suit. See 5 U.S.C. § 7512(1).

He next contends that the CSRA does not preclude his constitutional claims. Attempting to distinguish Elgin's seeming holding to the contrary, he notes that the petitioners there brought a constitutional challenge to a statute; meanwhile, he is not attacking the 2019 NDAA itself, but instead claiming that his removal violated the separation of powers and the Due Process Clause. See Opp. at 9–10. That is indeed a distinction, but it makes no difference here. As Elgin noted (and as the petitioners there conceded), it is well established that "claims that an agency took adverse employment action in violation of an employee's [constitutional] rights" — in other words, Mapes's claims — "must be brought within the CSRA scheme." 567 U.S. at 12. Elgin simply took the further step of holding that employees challenging the constitutionality of the

statute under which they were removed also may not sue in federal district court. Id. at 12–13. After all, "the availability of administrative and judicial review under the CSRA generally turns on the type of civil service employee and adverse employment action at issue," not the nature of the legal arguments underlying a plaintiff's claim. Id. at 12; see also deLeon v. Wilkie, No. 19-1250, 2020 WL 210089, at *4 (D.D.C. Jan. 14, 2020) (citing Elgin and quoting Steadman v. Governor, 918 F.2d 963, 967 (D.C. Cir. 1990)) ("[T]he public interest in upholding the statutory scheme created by Congress for addressing personnel-related matters is so strong that federal employees 'may not circumvent that structure even if their claim is based . . . on the Constitution.'").

In addition, Plaintiff cursorily argues that the CSRA cannot be construed to preclude his suit because the Act's administrative scheme will not provide him any relief. See Opp. at 8, 10. While he never explains why that would be so, even if he is right, that too is immaterial. The Circuit has made clear time and again that the CSRA provides "the exclusive avenue for suit even if the plaintiff cannot prevail in a claim under the [Act]." Grosdidier, 560 F.3d at 497; see also Nyunt, 589 F.3d at 449 (same). Quite simply, "what you get under the CSRA is what you get." Fornaro v. James, 416 F.3d 63, 67 (D.C. Cir. 2005). The answer is no different for a constitutional claim, per Elgin, as Mapes "can receive meaningful review within the CSRA scheme," including ultimate consideration of his arguments by a federal court (just not this one). See 567 U.S. at 21.

Finally, Plaintiff throws up a "Hail Mary pass," Nyunt, 589 F.3d at 449, urging the Court to exercise jurisdiction under the doctrine of Leedom v. Kyne, 358 U.S. 184 (1958). See Opp. at 10–12. That doctrine "permits, in certain limited circumstances, judicial review of agency action for alleged statutory violations even when a statute precludes review." Nyunt, 589 F.3d at 449.

Its scope, however, is quite narrow, requiring that (i) "the statutory preclusion of review is implied rather than express"; (ii) "there is no alternative procedure for review of the statutory claim"; and (iii) the agency has "plainly act[ed] 'in excess of its delegated powers and contrary to a specific prohibition in the' statute that is 'clear and mandatory.'" Id. (quoting Leedom, 358 U.S. at 188).

A careful reader will have noted that Mapes's constitutional claims are not eligible for the Leedom loophole, which pertains to actions allegedly in excess of an agency's statutory authority. The result is ultimately the same for Plaintiff's statutory claims as well. He cannot meet the second doctrinal prong, as the CSRA provides an alternative route of review. Nor can he meet the third, which requires an "extreme error," id., not a mere "garden-variety error[] of law or fact." Griffith v. FLRA, 842 F.2d 487, 493 (D.C. Cir. 1988); see also DCH Reg'l Med. Ctr. v. Azar, 925 F.3d 503, 509 (D.C. Cir. 2019) (requiring "obvious violation of a clear statutory command" and suggesting Leedom itself is likely no longer good law); Am. Fed'n of Gov't Emps. v. Sec'y of Air Force, 716 F.3d 633, 639 n.6 (D.C. Cir. 2013) (rejecting applicability of Leedom exception in CSRA case). Mapes points to no provision in the 2019 NDAA, let alone a clear statutory command, that renders his removal a violation of that statute; indeed, he recognizes that the "Act . . . is silent on removal authority." Opp. at 3; see also id. at 6.

### IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motions to Dismiss for lack of subject-matter jurisdiction. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: September 16, 2020